ROBERT EMERT

2351 VISTA LAGO TERRACE

ESCONDIDO, CA 92029

760-612-9328

robemert@msn.com



**FILED**

Apr 12 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ GloriaVocal          DEPUTY

# FEDERAL DISTRICT COURT OF SOUTHERN
# CALIFORNIA

**ROB EMERT**

      **PETITIONER**


**vs.**

**SAN DIEGO BOARD OF SUPERVISORS,**

**COUNTY OF SAN DIEGO, DDA DAWN**

**BALERIO ACTING IN HER OFFICIAL**

**CAPACITY, DAI LUIS PENA ACTING IN**

**HIS OFFICIAL CAPACITY**

'24CV0671 JO   MSB

**42 U.S.C. § 1983 CIVIL RIGHTS
ACTION**

Seeking damages for the violation of Plaintiff Robert
Emert's Eighth Amendment right against excessive bail.

Rule 26(f) - case management conference to expedite
discover;
Rule 38(b) - Jury demand;
28 U.S.C 2284 - 3 Judge Panel


**RELATED CASE: SCD297230 - SAN DIEGO
SUPERIOR COURT**


**RELATED CASE: 19FL010852N - SAN
DIEGO FAMILY COURT**

## Contents

I. Introduction ..................................................................................................... 2

II. Statement of jurisdiction and venue ........................................................ 8

III. Parties .......................................................................................................... 8

IV. Factual Allegations ..................................................................................... 9

A. Chronology of Events Leading to Unconstitutional Pre-Trial Detention ................... 9

B. Lack of Credible Threat and Defendants' Knowledge of Innocence ....................... 11

C. Efforts to Inform Board of Supervisors and City of San Diego ................................. 12

Chronological exhibit summary ..................................................................... 13

AFFIDAVIT OF BRYCE EMERT ....................................................................... 14

DAI LUIS PENA EXACT QUOTES THAT THE DA NEVER HAD A CASE ........... 23

No Malice ........................................................................................................ 54

V. Municipal Liability Under Monell ............................................................... 56

A. Legal Standard for Municipal Liability ....................................................... 56

B. Specific Policies, Practices, or Customs Causing Constitutional Violations .......... 57

C. Deliberate Indifference to Constitutional Violations ................................. 57

D. Relevant Case Law Supporting Municipal Liability .................................... 58

Attribution of Balerio and Pena's Actions to Municipal Defendants .......... 59

VI. Causes of Action ......................................................................................... 60

A. Violation of Eighth Amendment Right Against Excessive Bail ................... 60

B. Violation of Fourteenth Amendment Right to Due Process ...................... 61

C. Violation of First Amendment Right to Free Speech and Petition ............ 63

VII. Damages .................................................................................................... 66

VIII. Prayer for Relief ....................................................................................... 67

VII. Jury Demand and Special Requests ........................................................ 68

VERIFICATION ................................................................................................ 69

ELECTRONIC SERVICE .................................................................................... 69

X. Filing of Exhibits Under Separate Cover ................................................... 70

# I. Introduction

A. Brief summary of the unconstitutional "no bail" and illegal pre-trial detention

This is a civil rights action brought under 42 U.S.C. § 1983 seeking damages for the violation of Plaintiff Robert Emert's Eighth Amendment right against excessive bail and Fourteenth Amendment right to due process, **specifically focusing on his illegal 90-day pre-trial detention for which he was never charged.** The constitutional violations stem from an unconstitutional pre-trial detention imposed by the San Diego County District Attorney's Office, the County of San Diego, and the San Diego County Board of Supervisors. (Exhibit AA)

While this will be elaborated on further in, it is important to note that while I ultimately pled guilty under duress to California Penal Code § 278.5(a) after 90 days of coercion under threat of not getting out of jail and being told my son could come home as part of the guilty plea, the focus of this lawsuit is solely on the unconstitutional pre-trial detention based on a fabricated threat. (exhibit I) Under Heck v. Humphrey, 512 U.S. 477 (1994) and Leather v. Ten Eyck, 180 F.3d 420, 423-24 (9th Cir. 1999), my claim does not challenge the validity of my guilty plea, but rather the constitutionality of my pre-trial detention, a matter separate and distinct from the plea itself.  In short, I was maliciously retaliated against and illegally incarcerated as punishment for being a whistleblower and legally protecting my child under PC 278.7.  (exhibit's A, B, E, Q). The illegal incarceration was used to shut me down and shut me up.

To incarcerate someone without bail for making threats in California, the prosecution must prove beyond a reasonable doubt:

1. The defendant made a credible threat of imminent violence that would put a reasonable person in fear of harm.
2. The defendant had specific intent to carry out the threat.
3. The threat was not protected speech under the First Amendment.(California Penal Code Sections 422, 1270.1)

Based on the transcript, (exhibit I) the penal code for a prosecutable threat and a few AI analysis of the transcript, the caller's statements _**do not**_ contain the required elements and intentionality to be considered prosecutable threat rising to the level of denying bail under California law. Per DAI Pena's own words, DDA Balerio and DAI Luis Pena knew they could not win a case of PC

278.5(a) due to PC 278.7 (exhibit I) and is why they did nothing for a year; withheld the transcript of the "threat" for 90 days; withheld the interview DDA Balerio had with my son who was 15 at the time (exhibit F); withheld the interview I had with DAI Pena (exhibit E); and withheld the findings of the meeting I had with the FBI that of course determined I was not a threat.

Following is a brief AI analysis of the "threat" call (exhibit I) that DDA Balerio illegally used to incarcerate me for 90 days to coerce a guilty plea while withholding the full transcript and only providing an out of context line to the court from the transcript and further took the call itself out of the context that I was calling to follow up on my public corruption complaint (exhibits S,Q):

The caller repeatedly reaches out for assistance to prevent the situation from escalating:

 "I've called, you know, a dozen times... And I I can't get anybody over there to call me back?" (00:01:31, 00:02:23)

The caller seeks intervention from the FBI to resolve the issue with the DA's office:

"I need somebody to call me and then to call somebody over at the district Attorney's office because the DA investigator over there has generally indicated if we get a call that says there is a legitimate investigation going on over at the FBI, they'll that'll that'll pause things." (00:04:56)

"I need for you to call me... and then to call Luis Pena and say that there is an investigation that's going on. So they put the pause button on this thing." (00:07:52)

The caller explicitly denies making threats multiple times:

"I'm not making any threats whatsoever." (00:04:37)

"I am not making any threats. I need to make that perfectly clear." (00:06:33)

The caller's statements **do not convey specific intent** to carry out imminent violence:

"There's going to be a huge...problem." (00:04:37) - Vague statement about a "problem" without threatening specific harm.

The caller frames his statements as assertions of legal rights, not threats:

"I know my Second Amendment right." (00:06:44)

"Federal law...says any kid that's over 14 gets to choose where they're going to live." (00:07:03)

Throughout the call, the caller portrays himself as a "law-abiding citizen" (00:03:31) and "good person" (00:08:42) who is being victimized by judicial fraud and corruption, not someone with criminal intent:

"I'm the victim, me and my kids are the victim of some...massive judicial fraud." (00:01:52)

"I've done nothing wrong. I'm...a law abiding citizen. Always have been." (00:03:11)

In summary, the transcript clearly shows the caller was actively seeking help from law enforcement to de-escalate the situation, not making criminal threats. He repeatedly reached out for assistance, requested FBI intervention with the DA's office, denied making threats, lacked specific intent to commit violence, asserted legal rights, and portrayed himself as a victim of injustice. His statements do not meet the criteria for criminally prosecutable threats that could justify denying bail under California law. The actions of DDA Balerio and DAI Pena in withholding key evidence further demonstrate the lack of a credible case for keeping the caller in pretrial detention.

While not a cause of action of this lawsuit, my factual innocence of PC 278.5(a) due to PC 278.7 is important to address because DDA Balerio and DAI Pena knew I was factually innocent and used the illegal pretrial detention to simply coerce a guilty plea and inflict unwarranted pretrial punishment.

As will be seen further in, DAI Pena says more than two dozen times in a roundabout way that he is clearly aware of my factual innocence. (Exhibit E) Moreover, as will be seen as well further in, DAI Pena put on his arrest warrant (exhibit AA) that I did not allow him to talk to my then 15 year old son; kept him out of school; I was not trying to resolve this custody issue in family court; and again, was being charged with PC 278.5(a) when he states very clearly that this case should never have been taken by the DA's office; I would win if this case went to trial and my son's lawyer, Matt Cord, had simply aligned with my x wife's attorney, Dave Schulman, AND NOT IN MY SONS BEST INTERESTS. (exhibit E) In addition to the transcribed call that I had with DAI Pena that proves all of this, there are extensive emails (exhibit A) that will be included further and in and in exhibits that proves almost everything DAI Pena put on the arrest warrant is perjury.

Plaintiff's pre-trial detention violates the Fourteenth Amendment's Due Process Clause, which protects individuals from arbitrary and unreasonable government actions. The Supreme Court has recognized that the Due Process Clause protects individuals from punitive conditions of pre-trial confinement. (Bell v. Wolfish, 441 U.S. 520, 535-37 (1979)). Furthermore, the Eighth Amendment's prohibition on excessive bail applies to the states through the Fourteenth Amendment. (Schilb v. Kuebel, 404 U.S. 357, 365 (1971)).

California Penal Code 422 defines a credible threat as one that is "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat." Plaintiff was never charged with making a threat that meets this definition, yet he was subjected to a prolonged pre-trial detention and denied bail with the obvious goal of coercing a guilty plea and punishing a whistleblower.

Plaintiff's research has revealed that in cases where individuals have been charged with violating PC 278.5(a), there is not a single instance where the defendant was denied bail.

This fact underscores the extraordinary and unconstitutional nature of Plaintiff's pre-trial detention, as he was held without bail and without being charged with making a credible threat.

The denial of bail in Plaintiff's case also runs counter to the California Constitution, which provides that a person shall be released on bail except for capital crimes, certain felony offenses, and certain acts of violence. (Cal. Const. art. I, § 12). None of these exceptions apply to Plaintiff's case, further highlighting the unconstitutional nature of his pre-trial detention.

I, bring this civil rights action seeking damages for the violation of my Eighth Amendment right against excessive bail and my Fourteenth Amendment right to due process, caused by the unconstitutional pre-trial detention imposed by the San Diego County District Attorney's Office, the County of San Diego, and the San Diego County Board of Supervisors. I name as defendants the County of San Diego, the San Diego County Board of Supervisors, and, in their official capacities, Deputy District Attorney Balerio and Deputy District Attorney Investigator Pena.

Plaintiff's whistleblowing activities, specifically his public corruption complaint against high-profile individuals within the family court system (Exhibit Q), were the driving force behind the defendants' unconstitutional actions. As evidenced by the statements of Deputy Attorney Investigator Pena in her interview with Plaintiff (Exhibit E), the family court lawyers who were the subjects of Plaintiff's complaint pressured the District Attorney's office to arrest and prosecute Plaintiff, despite the lack of probable cause. These lawyers, seeking to retaliate against Plaintiff for exposing their alleged misconduct, attempted to weaponize the criminal justice system to punish Plaintiff for his protected speech.


Defendants Balerio and Pena, acting in concert with the retaliatory motives of the family court lawyers, engaged in a series of unconstitutional actions, including fabricating evidence, setting excessive bail, withholding exculpatory evidence, and maliciously prosecuting Plaintiff. These actions not only violated Plaintiff's First, Eighth, and Fourteenth Amendment rights but also demonstrated the defendants' willingness to abuse their positions to aid in the retaliation against a whistleblower.

Despite clear evidence of my innocence under legal necessity (California Penal Code § 278.7), (exhibits A, B, C, E, F, M, N, O) I was maliciously prosecuted under California Penal Code § 278.5(a). DDA Balerio and DAI Pena, aware of the lack of evidence against me, fabricated a threat and committed perjury on the arrest warrant to justify my detention. Key

facts demonstrating the lack of a credible threat and the Defendants' knowledge of my innocence include:

The delay in arresting me, from October 4th, 2021, when I took custody of my son, to January 3rd, 2023.  As early as Oct 21st 2021 (exhibit A) and through Jan 3rd 2023, I was in full compliance with PC 278.7 but after the DA's office was getting pressured by the family court lawyers to arrest me and "damn the evidence", the DA's office succumbed to cronyism and or worse. (exhibit E)

Statements from DAI Pena indicating that I had "good cause" to hold onto my son and that if the case went to trial, I would likely win. (Exhibit E)

The withholding of exculpatory evidence, such as the full transcript of the alleged threat (exhibit I); my son's interview with DDA Balerio (exhibit F); and DAI Pena withholding of his interview with me (exhibit E) where he says more than two dozen times in a round about way that the DA should have never taken this case and this case does not belong in criminal court, for the entirety of my 90-day incarceration.

The Defendants' actions were motivated by a desire to punish me for my whistleblowing activities and to silence my complaints about corruption and misconduct in the San Diego County family court system. (exhibit Q, I) They set an unreasonable bail of no bail, resulting in my prolonged incarceration for 90 days, violating my Eighth Amendment right against excessive bail.

The actions of Defendants Balerio and Pena, who were acting under color of state law, can be attributed to the municipal defendants – the County of San Diego, the City of San Diego, and the San Diego County Board of Supervisors – under the theories of municipal liability established in Monell v. Department of Social Services, 436 U.S. 658 (1978). These defendants were final policymakers for their respective municipalities, and their unconstitutional conduct represented the official policies, practices, or customs of the municipal defendants.


Furthermore, the municipal defendants were deliberately indifferent in their failure to train and supervise Defendants Balerio and Pena properly. Despite being aware of the ongoing constitutional violations through Plaintiff's numerous complaints and the clear evidence of misconduct (Exhibits Z1-Z9), the municipal defendants failed to take any meaningful corrective action, thereby enabling and encouraging the continued violation of Plaintiff's rights.

Throughout my ordeal, I made numerous attempts to inform the San Diego Board of Supervisors and the City of San Diego about the ongoing misconduct and the violation of my constitutional rights (exhibit Z). I sent at least half a dozen professional emails to the Board, providing substantial evidence to support my claims and citing relevant case law, such as Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), and Goldstein v. City of Long Beach, 715 F.3d 750, 762 (9th Cir. 2013). Despite being put on notice, the Board of Supervisors and the City failed to take any meaningful action to address the situation, demonstrating their deliberate indifference to the violation of my rights.

I am bringing this lawsuit to hold the Defendants accountable for their misconduct, to prevent future violations of constitutional rights, and to obtain compensation for the significant harm and damage I suffered as a result of the unconstitutional pre-trial detention.

The Defendants' actions in setting unreasonable bail and failing to act on exculpatory evidence (exhibit A, B, C, E, F, I) during my pre-trial detention were the direct result of the County of San Diego's, the City of San Diego's, and the San Diego County Board of Supervisors' policies and practices of failing to investigate or discipline prosecutors for misconduct, even in the face of credible complaints and clear evidence of wrongdoing. The County's, City's, and Board of Supervisors' deliberate indifference to the need for oversight and accountability allowed the individual Defendants to violate my rights with impunity.

It is important to note that while I ultimately pled guilty under duress to California Penal Code § 278.5(a) after 90 days of coercion, the focus of this lawsuit is solely on the unconstitutional pre-trial detention based on a fabricated threat. Under Heck v. Humphrey, 512 U.S. 477 (1994) and Leather v. Ten Eyck, 180 F.3d 420, 423-24 (9th Cir. 1999), my claim does not challenge the validity of my guilty plea, but rather the constitutionality of my pre-trial detention, a matter separate and distinct from the plea itself. The Supreme Court has held that "a defendant's rights under the Fourth Amendment are not among the trial rights that he necessarily waives when he knowingly and voluntarily pleads guilty." Haring v. Prosise, 462 U.S. 306, 321 (1983). The Ninth Circuit has further clarified that "a guilty plea does not bar a § 1983 claim for unlawful search and seizure, so long as that claim does not challenge the search or seizure's effect on the basis for the conviction," Lockett v. Ericson, 656 F.3d 892, 897 (9th Cir. 2011), and that "a guilty plea does not preclude a § 1983 claim that a law enforcement officer independently violated the plaintiff's constitutional rights, even if that violation contributed to the guilty plea," Weilburg v. Shapiro, 488 F.3d 1202, 1206 (9th Cir. 2007). Moreover, a district court in the Eastern District of California has explicitly held that "a guilty plea does not bar a § 1983 claim for Fourth Amendment violations, including excessive force and unlawful detention,

that occurred prior to the guilty plea." Menzel v. County of Fresno, 2013 WL 1632637, at *8 (E.D. Cal. Apr. 15, 2013). Thus, my guilty plea does not preclude me from bringing this lawsuit challenging the constitutionality of my pre-trial detention.

# II. Statement of jurisdiction and venue

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as it arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in San Diego County, California.

# III. Parties

The main parties involved in this action are:

Plaintiff Robert Emert, an individual residing in San Diego, California. At all times relevant to this complaint, Plaintiff was a pretrial detainee in the custody of the County of San Diego. As a whistleblower who exposed unethical practices in the San Diego divorce court industry (exhibits Q, Z), Plaintiff was subjected to retaliation by the defendants. This retaliation culminated in an illegal 90-day pre-trial detention based on a fabricated threat (exhibit I). Although Plaintiff was charged with violating California Penal Code 278.5(a) (Child Abduction), he was never charged with making a prosecutable threat under the rules of court regarding the definition of a credible threat. Despite this, Plaintiff was held in pre-trial detention for 90 days and denied bail, a treatment that stands in stark contrast to other defendants charged with PC 278.5(a).

Defendant County of San Diego, a municipal corporation organized and existing under the laws of the State of California. The County operates and manages the San Diego County District Attorney's Office and is responsible for the policies, practices, and customs that caused the violation of Plaintiff's constitutional rights.

Defendant San Diego County Board of Supervisors, the governing body of the County of San Diego. The Board is responsible for overseeing the operations of the County and ensuring that County employees, including prosecutors, act in accordance with the Constitution and laws of the United States.

Defendant Dawn Balerio, a Deputy District Attorney employed by the San Diego County District Attorney's Office at all times relevant to this complaint. Defendant Balerio is sued in her official capacity. She was responsible for setting Plaintiff's bail and for the decision to withhold exculpatory evidence during Plaintiff's pretrial detention (exhibits A, B, E, F, I). Most egregiously, DAI Pena acknowledged that the DA had no case against Plaintiff and that he would win if it went to trial (exhibit E). Despite this, DDA Balerio took a statement out of context (exhibit I) and misrepresented it to the court to keep Plaintiff illegally detained pre-trial in an attempt to coerce a guilty plea, even though DAI Pena admitted Plaintiff would win at trial. (exhibit E)

Defendant Luis Pena, a Deputy District Attorney Investigator employed by the San Diego County District Attorney's Office at all times relevant to this complaint. Defendant Pena is sued in his official capacity. He was responsible for fabricating the threat that led to Plaintiff's arrest and for withholding exculpatory evidence during Plaintiff's pretrial detention. (exhibit A, E)

The actions of DDA Balerio and DAI Pena demonstrate a disgraceful abuse of power and a blatant disregard for the legal system. Their conduct appears to be part of a larger pattern of covering up misconduct within the San Diego County District Attorney's Office, which is an embarrassment to the legal system as a whole.

# IV. Factual Allegations

## A. Chronology of Events Leading to Unconstitutional Pre-Trial Detention

October 4th, 2021: Due to legal necessity to protect my then 15 year old son, I took full physical custody of him on October 4th, 2021. (exhibit A, B, Q, Z)

As early as Oct 21st 2021, I reached out to the DA, CPS, DOJ to make sure I was acting in a lawful manner. Everyone told me that given the circumstances and my sons age, nobody was going to drag him away from his dad. (exhibit A)

From Oct 21st 2021 until Dec 2023, I fully complied with PC 278.7 and DAI Pena was provided with all supporting evidence and on Sept 15 2022, DAI Pena told me the DA should have never taken this case; I had good cause to let my son stay with me to protect him from abuse; if this case went to trial, I would win. Exact quotes will be below, and the full transcript provided in exhibits filed under separate cover. A complete audio file will be provided to the court as well.(exhibit A, B, E, F, I, L, M, N, O, Q)

January 3rd, 2023: Despite fully complying with PC 278.7 and legal necessity, January 3rd, 2023, I was arrested like Americas most wanted and given no bail based on a fabricated threat. For over a year, the DA did nothing because they knew they had no case, and I would win at trial. (E) Then, a threat is fabricated (I). It was one line taken out of context from a call I made to the FBI following up on my public corruption complaint I had filed. Because DDA Balerio knew there was no credible threat within the full transcript of the call, she took one line out of context and misrepresented to the court the contents of the actual call and that the call itself was me simply following up with my public corruption complaint (Q) that the DOJ had forwarded to the FBI public corruption unit (S). DDA Balerio would then withhold this transcript for 90 days to hold illegal incarceration over my head until I would be forced to accept a guilty plea deal or stay in jail. I have zero criminal record, exceptionally strong ties to the community and zero flight risk. This whole thing has been about my children, and I live with my elderly parents. To hold someone like me on no bail and not even GPS for 90 days was pure malicious prosecution. In February 2022, DDA Balerio even met with my son which included exonerating evidence for me that she withheld from the court. (F)

Being illegally detained in jail for 90 days has shattered my life, my health, my professinal career and reputation. But, hey, that was these thugs goal. I called out their corruption and they wanted me ruined for it. I have not seen my daughter now in over two years and my son in over one year. These divorce court insiders are a disgrace to humanity.

# B. Lack of Credible Threat and Defendants' Knowledge of Innocence

December 2022, I call the FBI to follow up on my public corruption complaint (I). There was no credible threat and DDA Balerio and DAI Pena knew it and is why they would not charge me with a threat. The full transcript is included in exhibits (I) filed under separate cover but an analysis of it and in comparing it to the standard of a prosecutable threat is below.

I spoke with DAI Pena Sept 15, 2022 (E). He said more than two dozen times in a round about way that the DA should never have taken this case; I would win at trial, this case did not belong in criminal court and if I tried to resolve in family court, the arrest warrant would not go in. (E) DAI Pena withheld this exculpatory evidence from the court.

DAI Pena said on the arrest warrant (AA)that I kept Bryce from school, would not let him talk to Bryce; was guilty of PC 278.5(a) when he flat out told me in a roundabout way, I was innocent under 278.7. In addition to the extensive quotes where DAI Pena refutes his own words in the transcript of my call with him (E), there are extensive emails (A) that prove that DAI Pena is guilty of perjury and not just a little, but a lot! These documents will be in exhibits filed under separate cover but a few will be included below as well for quick context.

February 2023: DDA Balerio interview my son (F) and then withheld this interview with my son that exonerates me in many ways. DDA Balerio humiliates herself and destroys her credibility by misrepresenting to the court the contents of that interview. DDA Balerio told the court the exact opposite of what actually transpired. I even have a phone call conversation with my then attorney who said that DDA Balerio flat out withheld this interview from him and the court (G). Similarly, DDA Balerio withheld the full transcript that would have easily let me out on bail or GPS. I actually met with the FBI and they said it was determined I was not a threat. Another huge piece of evidence that was never provided in discovery. DDA Balerio wants people to believe that after a "menace to society" is kept on no bail that the final report after an interview was conducted, of the "menace to society" that she was never given that evidence??? What an unethical chump to do that to another peaceful human being who she knew was only looking out for his son and her DAI said as much more than two dozen times (E).

## C. Efforts to Inform Board of Supervisors and City of San Diego

The San Diego Board of Supervisors, the San Diego DA's office, the San Diego Mayor's office, and many other agencies were kept informed as I sought justice for myself and my children. Emails and letters documenting the egregious violations of my basic constitutional and due process rights were sent to these agencies on 10/21/22, 12/27/22, 05/17/23, 06/14/23, 08/24/23, 10/04/23, 10/30/23, 11/01/23, and 11/16/23. These letters are included as exhibits filed under separate cover, but a few excerpts will be provided for context. (Z)

Despite being made aware of the ongoing misconduct in the District Attorney's office, the San Diego Board of Supervisors failed to take any meaningful action to investigate or address the issues. The Ninth Circuit has held that "a municipality may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" Goldstein v. City of Long Beach, 715 F.3d 750, 762 (9th Cir. 2013). Furthermore, the Supreme Court has stated that "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

The San Diego Board of Supervisors, as the officials responsible for establishing final policy and overseeing the District Attorney's office, made a deliberate choice to ignore the well-documented misconduct and constitutional violations, despite having the authority and responsibility to investigate and address such issues. The Ninth Circuit has also recognized that "a municipality can be liable for an isolated constitutional violation when the person causing the violation has final policymaking authority." Christie v. Iopa, 176 F.3d 1231, 1240 (9th Cir. 1999). By failing to act on the information provided in the numerous emails and letters, the Board of Supervisors effectively ratified the unconstitutional actions of the District Attorney's office and contributed to the ongoing violation of my rights.

# Chronological exhibit summary

The following are some exhibits and excerpts in chronological order. I will of course provide complete lodged documents that I referenced in this lawsuit, but this Chronological exhibit summary quickly displays the manifest injustice me and my children have suffered at the hands of a few unethical in the San Diego Family Court and District Attorney ecosystem.

### October 2013 through September 2019

I was a devoted stay-at-home father for my son Bryce (now 16) and daughter (now 14) from October 2013 through September 2019. This strong parental bond with Bryce would become central to events.

### From September 2019 to February 2021

Custody was 50/50 between myself and my ex-wife Andrea after our divorce, with me initially granted 60% custody since Bryce was extremely attached to me as his stay-at-home dad. Bryce remained distraught, repeatedly begging to live primarily with me even after the 50/50 arrangement. (X, Y)

Below is an affidavit from Bryce Emert with his phone number. DAI Pena refused to after many times he was given Bryce's phone number by me and others. Bryce filed a TRO on his attorney; filed a police report against his attorney; has posted online begging for help; has written letters and emails to be heard. Bryce even filed a motion to intervene in the family court case just to be ignored by the family court judge who dismissed the motion on a technicality. In my transcript with DAI Pena, he acknowledged that Bryce's attorney, Matt Cord, had simply aligned with my x wife's attorney, Dave Schulman, and not in my sons best interests. (E)

For an almost 17-year-old young man to be ignored by the courts is absurd and for me to be called a guilty felon for protecting my son with his pleas for help is even more absurd. (B, C, D)

Bryce's mom alarmingly signed off on the family courts scam to place my son in a "facility" and even today keeps him under threat of being placed in juvenile detention if he runs away (H) as can be quickly ascertained when reading or listening to the last two calls I had with Andrea Schuck (H). Andrea Schuck further says that one of the reasons why she is going to "let" Bryce live primarily with me is because him living with her is not good for our daughter. (H) This is also in line with what DAI Pena said when he indicated that Bryce's attorney, Matt Cord, had simply aligned with Schucks attorney, David Schulman, AND NOT IN MY SONS BEST INTERESTS. (E) The exact quotes

for this are a bit further in and the full transcript provided in exhibits filed under separate cover.

# AFFIDAVIT OF BRYCE EMERT

I, Bryce Emert, declare the following under penalty of perjury:

I have personal knowledge of the facts stated in this affidavit and am competent to testify to them if the court allows me to do so. I would like to talk to the court but have been prevented from doing so, which has caused me so much hardship and pain. I am almost 17 and I don't understand why my voice is not being heard by the court. I have so many friends who have parents who are divorced, and they are heard by everyone.

The following letters and emails were written by me in my pleas to be heard. Those are my words in those letters and emails. They describe me being harassed and traumatized and to escape it, I asked my dad to simply live with him to escape the emotional abuse and toxic relationship I have had with my mom for lots of my life. She used me in divorce proceedings and continues to do so.

My Dad homeschooled me and I believe I learned more from him in that one year I lived with him than three years in the public schools.

My dad encouraged me to have a relationship with my mom and always has. He has even asked her to go on outings. My Dad encourages me to see the best in everyone.

I have spoken to the District Attorney's office, the police, CPS, school counselors, teachers and have even tried logging into court proceedings just to be shut out. I have told everyone the same thing. My mom was using me in divorce proceedings, it was horrible, and the emotional abuse continues. She holds putting me in facilities over my head. She has tried to isolate me from my dad and anyone who stands with my dad. She has shown that she hates him more than she loves me.

Please dismiss criminal charges from my Dad. He did not do anything wrong. He saved me per my request and he is a great dad and has always been there for me. My Dad has always encouraged me to meet new people and do my best in everything in life. Why are the courts trying to keep me from my Dad?

Please let me go home to my Dad. I will continue to work on my relationship with my mom. My dad is not the cause of my issues with my mom. Please call or face time me anytime. Please let my voice be heard in court.
This concludes my sworn testimony. I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge and recollection.

Executed on 11/16/23 in San Diego, CA

**Bryce Emert 760-492-4289**

**02/04/21**

Commissioner Patti Ratekin took over the case. Within just one month, she stripped me of all legal parental rights without clear and convincing evidence. Ratekin denied my timely submitted peremptory challenge against her despite her supervising judge's wife being close friends and co- workers with my ex-wife Andrea—a significant undisclosed conflict. (T, V, W, Y)

Ratekin, opposing counsel and my x wife brought in a suspicious "team" including a child psychologist to push for placement of Bryce in an unwarranted "facility" or "residential home" even though he had no behavioral or disciplinary issues that would require that alarming approach. (V) Ratekin denied a timely filed peremptory challenge; ignored my federal lawsuit against her; ignored a DV arrest of my x wife; extensive witnesses and affidavits. All this information was provided to DAI Pena and he acknowledged it and again said more than two dozen times in a round about way that the District Attorney's office should never have taken this case and if it went to trial, I would win. (E)

Ratekin was so biased that she threw in a sucker punch of "supervised visitation" the day she recused and likely backdated it along with a default judgement that I knew nothing about. (exhibits P, T)

**Ratekin recused on 10/04/21**. Notice the dates on these two documents. I was in the hospital recovering from a widow maker heart attack on 09/29/21 and 09/30/21. Ratekin absurdly based "supervised visitation" on the below witness affidavit who was concerned with my sons psychologist.  That has zero to do with my parental custody but that is how desperate Ratekin was to deliver something of a blow to me no matter how ridiculous she looks.  This will be included in my criminal complaint.

(3) ☐ As set forth in the attached *Spousal, Partner, or Family Support Order Attachment* (form FL-343).
(4) ☒ As set forth in the attached settlement agreement, stipulation for judgment, or other written agreement.
(5) ☐ Other *(specify):*

m. ☐ Property division is ordered as set forth in the attached
    (1) ☐ Settlement agreement, stipulation for judgment, or other written agreement.
    (2) ☐ *Property Order Attachment to Judgment* (form FL-345).
    (3) ☐ Other *(specify):*

n. ☐ Attorney fees and costs are ordered as set forth in the attached
    (1) ☐ Settlement agreement, stipulation for judgment, or other written agreement.
    (2) ☐ *Attorney Fees and Costs Order* (form FL-346).
    (3) ☐ Other *(specify):*

o. ☒ Other *(specify):* Any and all provisions as set forth in the attached Partial Judgment. The Court reserves jurisdiction over any and all issues, either set forth in the Partial Judgment or not raised in the Partial Judgment.

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions. Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date: 10/5/21

5. Number of pages attached: 8

☐ SIGNATURE FOLLOWS LAST ATTACHMENT

JUDICIAL OFFICER **PATTI RATEKIN**

---

**NOTICE**

Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration, survivorship rights to any property owned in joint tenancy, and any other similar property interest. It does not automatically cancel the rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should review these matters, as well as any credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to determine whether they should be changed or whether you should take any other actions.

A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.

An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.

Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

CEB | Essential
ceb.com | JDForms

**PARTIAL   JUDGMENT**
(Family Law)

EMERT, ANDREA #30437

*see attached*

☐ Continued on attachment

☐ Petitioner   ☐ Respondent to prepare formal order.

Date    9|30|21                        *Patti Ratek*   PATTI C. RATEKIN
                                        Judge/Commissioner of the Superior Court

**EX PARTE APPLICATION AND ORDER - FAMILY LAW**

                                        Emert

ATTACHMENT TO EXPARTE ORDER:

48

The court grants a mistrial except for the termination of marital status.

This is set for a one day trial on November 29, 2021. It will not finish and this court does not have a date available.

Pursuant to CRC 5.82 (C)(5) For dissolution, legal separation, and nullity cases initially filed on or after January 1, 2014, the goals of any family centered case resolution process should be to finalize dispositions as follows:

(A) At least 20 percent are disposed within 6 months from the date the petition was filed;

(B) At least 75 percent are disposed within 12 months from the date the petition was filed; and

(C) At least 90 percent are disposed within 18 months from the date the petition was filed.

The matter is set for a two day trial on November 29, 2021 and November 30, 2021 at 9:00 a.m. in the Presiding Department of this case with Judge Lorna Alksne.   D-1001

Pending a hearing on October 4, 2021 at 9:00 a.m. the minor child Bryce shall be in the care of Andrea Emert. Father stated during the initial ex parte hearing in the morning he was in the emergency room and had been there since the notice of the ex parte hearing on September 29, 2021. He later stated that he had been in the hospital prior to the ex parte notice, the court ordered him to turn the child over to mother, he said that he was going to pick up the child later, then said he was in his doctors office. The court trailed the matter to 3:30 p.m. so father could appear. The court revoked Mr. Emert's ability to appear by Teams.

At 3:30 p.m., father appeared on the phone and represented he had a heart attack and was in the hospital. Father is ordered to turn over the minor to his mother forthwith. This is not a change of custody but merely a continuance to give father the ability to present his case.

**The court finds an emergency to supervised fathers visits pursuant to CRC 5.151 based upon the declaration of Mark Fidelman filed September 15, 2021 by father.**

| DEFENDANT/RESPONDENT: Robert Emert | |
| --- | --- |
| **DECLARATION** | CASE NUMBER:<br>19FL010852N |

I, Mark Fidelman, being age of majority and not under any legal disability, make the following declaration of my own free will, and of my own personal knowledge and belief.

I am an acquaintance of Robert Emerts. Mr. Emert explained to me and others his issues with his divorce. He asked me and others to listen to the conversation he was going to have with his son's Psychologist, Dr. Olague. I agreed and listened to two conversations on different days while on speakerphone with Mr. Emert. On 08/12/21, I listened to Mr. Emert and Dr. Olague speak about both of their concerns for Bryce Emert

On 08/26/21, I listened in as Mr. Emert, Dr. Olague and Mr. Emerts ex-wife spoke about concerns for Bryce.

What was very clear in both conversations was that at separate times, both Dr. Olague and Mr. Emerts X wife indicated very clearly and several times that Dr. Olague would not be involved or pulled into any court related matters so the focus could be solely on the minor, Bryce Emert. It was very apparent that Dr. Olague tried to make it clear to Mr. Emert that he wanted to generally get his take on where his son was at and the challenges he faced so that he could help his sons parents moving forward in helping their son.

I have read what Dr. Olague has now indicated about Mr. Emert. What is very concerning about Dr. Olague is the deceptive manner in which he said anything they talked about would not be shared with the court and that anything they discussed would not draw him into anything court, divorce or custody related. Most of all Dr. Olagues claims are misrepresentations and mis-characterizations of what was actually said and discussed in regards to Mr. Emert.

I'd be happy to discuss the matter under penalty of perjury with the court if so asked.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   9/14/2021

Mark Fidelman
<small>(TYPE OR PRINT NAME)</small>                                                         <small>(SIGNATURE OF DECLARANT)</small>

☐ Attorney for   ☐ Plaintiff   ☐ Petitioner   ☐ Defendant
☐ Respondent   ☒ Other (Specify) Witness

<small>Form Approved for Optional use<br>Judicial Council of California<br>MC-030 [Rev. January 1, 2006]</small>                    **DECLARATION**                    <small>Page 1 of 1</small>

---

**09/29/21**

After months of excessive harassment/trauma, hearings, and an escalating campaign of harassment from Ratekin's "team," I suffered a massive heart attack requiring hospitalization. During this same period, my son Bryce had filed a police report and TRO against his court- appointed attorney, Matt Cord. Matt Cord was the one who was working with Dave Schulman (my x wife's attorney) who went whining to the DA to have me arrested even though I was in compliance with PC 278.7. Even DAI Pena said that Matt Cord was not working in my sons best interests. Matt Cord was a pathetic rubber stamp simply doing what he was told to do by Patti Ratekin and Dave Schulman. A witness provided an affidavit showing his child psychologist collaborating with Ratekin, opposing counsel Dave Schulman and his client, Bryce's mom, Andrea Schuck, to pressure for unwarranted "facility" placement based on falsified reasons. This is called a classic kids for cash scam in the divorce industry where many players try to profit as much as they can from the suffering of a divorce family in crisis. It is truly despicable.

When I put a bright light on their unethical behavior, I was crushed by this crew of insiders ripe with cronyism.



Roy T. Avalos, M.D., Ph.D.
John R. Backman, M.D., F.A.C.C.
Joseph Bonanno M.D., F.A.C.C. (emeritus)
Maurice Buchbinder, M.D., F.A.C.C.
Batyrjan K. Bulbek, M.D.
Martin L. Charlat, M.D., F.A.C.C.
George W. Dennish M.D., F.A.C.C. (emeritus)

**SAN DIEGO CARDIOVASCULAR ASSOCIATES**

*Diplomates American Board of Internal Medicine & Cardiovascular Diseases*

Marc K. Effron M.D., F.A.C.C.
Ali R. Hamze, M.D., Ph.D.
Eric Hong, M.D., F.A.C.C.
Jan Kuhanek, M.D., F.A.C.C.
Patrick M. McGinty, M.D.
James Myers M.D., F.A.C.C. (emeritus)
Damian R. Rasch, D.O.

November 04, 2021

To whom it may concern:

Mr. Robert Emmert is under my care for multiple chronic cardiovascular conditions. With his permission, I am disclosing to you that he recently suffered from a significant heart attack that required urgent angioplasty and percutaneous coronary intervention with stenting. As part of his ongoing medical therapy following this significant event, I have prescribed cardiac rehabilitation and stress reduction for the patient. The patient has disclosed to me that he is currently experiencing significant stress pertaining to active litigation that he is presently engaged in. He tells me that he has been seeking the assistance of an ADA coordinator to help him through this process, with the hopes of alleviating some of his significant ongoing stress. Certainly, from a cardiovascular perspective, I would support any accommodation that could be made that would help Mr. Emert reduce his stress levels, so that he is able to achieve a sufficient recovery from this major adverse cardiovascular event.

If you have any further questions, please feel free to contact my office at any time.

Sincerely,

Damian Rasch, DO

Encinitas Office ♥ 320 Santa Fe Drive, Suite 204 ♥ Encinitas, CA 92024 ♥ Fax (760) 633-3949 ♥ Phone (760) 944-7300

## 10/04/21

When finally recusing from the case amidst my appeals of her conduct, Ratekin again abused her authority by spitefully issuing an order for supervised visitation of me with my children without any factual or evidentiary basis. Given Bryce's increasingly desperate pleas to escape the escalating emotional abuse by his mother Andrea in the aftermath of our divorce, I took custody of him that same day for his protection and well-being per his pleads for help. I quickly notified CPS, the police, the District Attorney's office, and the family court itself about taking emergency custody of Bryce per his own requests. Bryce

filed a police report and TRO on his own to get away from his attorney Matt Cord. (A, B, E, F, Q)



## County of San Diego

**NICK MACCHIONE, FACHE**
AGENCY DIRECTOR

**HEALTH AND HUMAN SERVICES AGENCY**
CHILD WELFARE SERVICES
8965 BALBOA AVENUE, MAIL STOP W-173
SAN DIEGO, CA 92123-1607
(858) 616-5011 • FAX (858) 616-5900

**KIMBERLY GIARDINA, DSW, MSW**
DIRECTOR
CHILD WELFARE SERVICES

01/24/22

Robert Emert
2351 Vista Lago Terrace
Escondido, CA, 92029

Referral #: 0597-8072-1343-3095500

Dear Mr. Emert,

On 12/02/22 a referral was received by Child Welfare Services alleging abuse and/or neglect for your child(ren). After conducting an investigation, we have concluded that this referral may be closed effective 01/24/22.

If you have any questions, or if you would like referrals for services in your community, please feel free to call me at the number listed below.

Sincerely,

Belen Chacon, Protective Services Worker
(858) 308-6621

3708 Ocean Ranch Blvd.
Oceanside, California 92056

### 10/07/21

Judge Lorna Alknse takes over haring the case. Alarmingly, with nothing other than Ratekins alarming orders and behavior, Alknse thinks I should hand over my terrorized child as well. When I ask for a hearing to being witnesses and evidence and for Bryce to be heard, she has a tantrum and proceeds to go against US Supreme Court precedent and takes everything from me she possible can and that continues over the course of a month and a half where somehow she was able to calendar 4 hearings and a trial to railroad orders through shortly before she retires and does not allow me into any of them

remotely after I almost died from my massive heart attack. She approved a motion in liminee so encompassing that an appeal would be futile.

## 10/21/21

I email a detailed public corruption complaint to the DA indicating I have custody of Bryce and why.

Fw: Bryce Emert

Rob Emert <robemert@msn.com>
Fri 10/29/2021 12:29 PM

To:news@kusi.com <news@kusi.com>;Gloria, Todd (External) <Mayortoddgloria@sandiego.gov>;Sandiegoda@sdcda.org <Sandiegoda@sdcda.org>;news@fox5sandiego.com <news@fox5sandiego.com>;kgtvnews@scripps.com <kgtvnews@scripps.com>;itaintright@kusi.com <itaintright@kusi.com>;info@localmediasd.com <info@localmediasd.com>; luis.monteagudo@sdcounty.ca.gov <luis.monteagudo@sdcounty.ca.gov>;CommsDept@latimes.com <CommsDept@latimes.com>;mwilder@entravision.com <mwilder@entravision.com>;brianlong@iheartmedia.com <brianlong@iheartmedia.com>;DMcdaniel@kfmb.com <DMcdaniel@kfmb.com>;doris.lewis@10news.com <doris.lewis@10news.com>;brianlong@iheartmedia.com <brianlong@iheartmedia.com>;greg.dawson@nbcuni.com <greg.dawson@nbcuni.com>;brianlong@iheartmedia.com <brianlong@iheartmedia.com>;jdecker@kpbs.org <jdecker@kpbs.org>;news@kpbs.org <news@kpbs.org>;ksdxinfo@estrellamedia.com <ksdxinfo@estrellamedia.com>; Rich@Fox5SanDiego.com <Rich@Fox5SanDiego.com>
Cc:Matthew Cord, Esq. <MCord@apjohnsonesq.com>;Andrea Emert <aemert@carlsbadusd.net>;Gary DeBora <gary.debora@smusd.org>;jay.nielsen@smusd.org <jay.nielsen@smusd.org>;Bianca Kimsey <bianca.kimsey@smusd.org>; Maria Chavez <Maria.Chavez@sdrc.org>;Charles Aguilar <caguilar@sdbehaviorsolutions.com>;Catie Young <Catie@GYLFAMILYLAW.COM>;Dave Schulman <dschulman@msmfamilylaw.com>
Bcc:Dan Bongino <newsletters@em.bongino.com>;Nutrimedical Report Dr. Bill Deagle MD <drbilldeaglemd@gmail.com>;Alan Switzer <alanswitzermft@gmail.com>;PAS Family Advocacy <lisa@pasfamilyadvocacy.com>;Mark Fidelman <markfidelman@gmail.com>;Steven T. Griggs, Ph.D. <drstevengriggs@gmail.com>

1 attachments (5 MB)
JUDICIAL NOTICE WITH AFFIDAVITS.pdf;

Mayor, San Diego DA, and other media outlets.

This minor, Bryce Emerts (14 yrs old) rights are being illegally trampled on as are mine, his father, who is doing his best to look out for his sons best interests. I am a whistleblower and need some assistance.

Commissioner Patti Ratekin of the family court in the Vista Court House here in San Diego has made illegal / void orders and I believe is illegally abusing the system for federal title 4 funding. There is zero evidence, due process, burden of proof or even a fair hearing for the illegal and void orders she made regarding me and my two children. The Presiding Judge of San Diego asked me to abide by these illegal orders and when I asked for a fair hearing with time to prepare for said hearing to allow for due process I was told no and that I needed to abide by the illegal orders before a fair hearing would proceed. Obviously, this goes against what the United States Constitution stands for. It appears that the presiding judge is trying to cover up a mess that the Vista Court House has illegally made.

I would not make such bold claims if I could not prove them. There are VERY CLEAR records of everything. I am a whistleblower that is in the process of being squashed for daring to stand up for my and my children's constitutional rights. Because I have stood up for my rights to be heard in a fair trial BEFORE my rights are taken away, I have been subjected to illegal harassment the presiding judge's office of San Diego.

COMPLAINT AND RECUSAL BEING SERVED ON PRESIDING JUDGE SMYTH - COURTESY

COPY

Rob Emert <robemert@msn.com>

Fri 10/21/2022 11 :33 AM

To uis.pena@sdcda.org <luis.pena@sdcda.org >;randy grossman@usdoj.gov <randy grossman@usdoj.gov>;

peterestes@sdcda.org <peter.estes@sdcda.org>;G oria, Todd (Externa0 <Mayortoddgloria@sandiego

gov>;Dave Schu man

<dschu man@msmfami y awcom>;Catie Young <Catie@GYLFAMI LYLAWCOM>;Linda Hansen

<lhansen@msmfamilylawcom>; c tyattomey@sandiego gov <cityattorney@sand iego

gov>;CityAttyCrimlnfo@sandiegogov < CityAttyCrimlnfo@sandiego gov>; Sandiegoda@sdcda.org

ALL,

The below Complaint/recusal motion is a courtesy copy that is being served on:

Presiding Judge Smyth

Supervising Judges ofthe San Diego Superior Court Interested Parties

DCSS

California State Auditor DOJ

FBI

BAR

CJP

and a few others.

**02/09/22**

I get a letter from the DA threatening charge of PC 278.5(a). I call the DA and ask why they have not done anything regarding my public corruption complaint I have been asking their office for assistance on since 10/2021. (A)

**10/04/21 - 01/03/23**

I email and cooperate with the San Diego District Attorney that easily satisfies an affirmative defense of PC 278.7 over a charge of PC 275.5(a). The evidence for this is overwhelming. (A, E, F)

So, the San Diego DA does nothing for a year during this time; I am told during this time from the DA in an email that my x wife is handling over custody of my son to me; CPS has closed its case; police has closed its case; my son is excelling at home school; my son has recovered from the trauma of the family divorce court and his mother who was using him in proceedings; and DDA Luis Pena tells my many times and in many different ways that the San Diego DA never has/had a case against me and if it went to trial, I would win. His supervisors tell him when he asks, why are we involved in this case; his supervisors tell him the DA's office is just in too deep and they must move forward due to pressure from the family court lawyers. This is in all in recordings and can't be disputed. (E)

**09/07/22**

# DAI LUIS PENA EXACT QUOTES THAT THE DA NEVER HAD A CASE

I spoke to DA investigator Luis Pena. He tells me basically that the DA never had a case under 278.5(a) because of all the information I have sent their office the almost preceding year. See DA emails and DAI transcript of call he had with me.  (exhibit A, E )  I clearly had a defense under PC 278.7 and legal necessity and DAI Pena knew it as well and says as much more than a two dozen times. (Exhibit E). Below are EXACT quotes from a phone conversation transcribed between me and DAI Pena after almost a year of my 15 year old son living with me.  The full transcript is included in Notice of Lodged Documents exhibit E.

1. **I was in court and complied with everything DAI Pena requested of me.**

02:16:52 Rob Emert

Well, that's the thing.

02:16:53 DAI LUIS PENA

That's why if you go to court.

02:16:55

That warrants not gonna go in to the system.

02:16:57 DAI LUIS PENA

2. DAI Pena said this to me many times and generally indicated in the call that as long as I kept trying to correct in family court, I would not have criminal charges.

02:21:43 DAI LUIS PENA

To know is I don't want to file charges or right at warrant for your arrest because I believe this should be handling.

02:21:50 DAI LUIS PENA

Family court and not Criminal Court.

3. DAI Pena again stating this case should never have been in criminal court and even a JUDGE would agree!

02:24:24 DAI LUIS PENA

But if they see a reason of where like.

02:24:28 DAI LUIS PENA

If if the.

02:24:29 DAI LUIS PENA

Judge says. You know what?

02:24:29 DAI LUIS PENA

You're right, he is 15 and you guys prove to me that we shouldn't even be here because he's saying he wants to be.

02:24:35 DAI LUIS PENA

With you, Sir.

02:24:37

There's no reason.

02:24:38

For us to be here, then let's move forward.

### 4.  DAI Pena says here that I will probably win if this case goes to trial

02:31:08 Rob Emert

So if they kick it over to you guys, I get a trial with a jury.

02:31:13 DAI LUIS PENA

Yeah, but you're still you.

02:31:14 DAI LUIS PENA

At the same time, you gonna be fighting family court.

02:31:16 DAI LUIS PENA

At the same time, so you will.

02:31:18 DAI LUIS PENA

Get a trial.

02:31:19 DAI LUIS PENA

You definitely will get a trial and.

02:31:23

Personally, I think you'll win that.

02:31:24

I don't I.

02:31:25 DAI LUIS PENA

5. DAI Pena says again, this case does not belong in criminal court.

> 02:41:53 DAI LUIS PENA
>
> To be that should never have gone to child abduction unit anyways and.
>
> 02:41:59 DAI LUIS PENA
>
> You could explain that too.

6. DAI Pena telling me the family law attorneys are pushing for my arrest and he clearly is conflicted about it.

01:47:15 DAI LUIS PENA

Here in July, I didn't.

01:47:16 DAI LUIS PENA

I always started looking at this case and they've been attorneys have been communicating with each other and like I said, they're they, they're just pretty much just some the only investigator work in these cases they're like.

01:47:27 DAI LUIS PENA

Hey, you need to write a warrant for his arrest.

01:47:29 DAI LUIS PENA

Like, well, give me.

01:47:30 DAI LUIS PENA

His file and I'll read it.

01:47:31 DAI LUIS PENA

They're like, no, just don't worry about it.

01:47:33 DAI LUIS PENA

149

Just write a quick warrant and go on the evidence we.

01:47:35 DAI LUIS PENA

Have our we're.

01:47:36 DAI LUIS PENA

Like, well, that doesn't sound.

01:47:38 DAI LUIS PENA

Doesn't sound like anything that I want to do.

01:47:40 DAI LUIS PENA

7. One of many times I encourage DAI Pena to call my son.

You can talk to him.

00:03:41

You can FaceTime him as much as you want. He's doing phenomenal and I and I basically he was doing well up until the divorce and then basically I was like, hey, hey ex-wife, I said let's let my you know, let's let the daughter.

00:03:55 Rob Emert

8. DAI Pena again saying this case does not belong in criminal court.

02:42:56 DAI LUIS PENA

They're gonna look at you.

02:42:56 DAI LUIS PENA

Like, wow, these it's true.

02:43:00 DAI LUIS PENA

What are they?

02:43:00 DAI LUIS PENA

What are they gonna prove when you go to court for child abduction?

02:43:03 DAI LUIS PENA

Be like the child was 14 when it opened.

02:43:05 DAI LUIS PENA

Should never open anyways, and now he's 15 and now you wanna arrest me when my child is 15 and telling you that this is where he wants to be.

02:43:13 DAI LUIS PENA

How is that even going to be proven in court as a child abduction?

02:43:17 DAI LUIS PENA

When the reality is that the child can tell you.

260

02:43:19 DAI LUIS PENA

Where they want to.

02:43:19 DAI LUIS PENA

Be because, trust me, the next thing is going to happen is because the person here that they're calling a victim.

9. DAI Pena again shows conflict over his supervisor telling him to write a warrant with such a lack of evidence after a year of investigation.

01:49:23 DAI LUIS PENA

As the district attorney's office. But I'm not gonna write this warrant for his arrest because you're telling me to write a warrant because he's not complying with things and.

01:49:31 DAI LUIS PENA

I'm I don't.

01:49:32 DAI LUIS PENA

Feel comfortable with that now if you want to write it with it, you know you want to file.

01:49:36 DAI LUIS PENA

A case with.

01:49:36 DAI LUIS PENA

Evidence you have.

01:49:37 DAI LUIS PENA

155

They can file it without me I don't have.

01:49:39 DAI LUIS PENA

To say anything to them, but.

01:49:41 DAI LUIS PENA

If they want to file a case without me.

10. DAI Pena asked me to provide to him the transcripts where the family court wanted to put my son in a "facility" with no evidence. I did provide him with this evidence as I will show in emails later.

01:58:14 DAI LUIS PENA

Here's here's what happened.

01:58:16 DAI LUIS PENA

Here's the transcript.

01:58:18 DAI LUIS PENA

You know what he was doing?

01:58:19 DAI LUIS PENA

Here's something that shows that they wanted.

01:58:21 DAI LUIS PENA

172

To send bryce to the facility.

01:58:23

Here's the evidence to what we have, and that is why he feels that that's good cause to what he did.

01:58:27 DAI LUIS PENA

And you know, here's where we are.

01:58:29 DAI LUIS PENA

He's gonna go handle it in court.

01:58:31 DAI LUIS PENA

Like we don't mention which.

01:58:32 Rob Emert

Yeah, I actually I I.

01:58:33 Rob Emert

I wanted to do an ex party, but if I follow the RFOs the RFO's for November 17th but I would much I'd rather have it sooner.

11. Family court attorneys or DA attorneys pushing for arrest and DAI Pena conflicted over the lack of evidence.

I just I don't believe waiting till then it's gonna it's gonna solve the the problem with the attorneys here.

01:58:51 DAI LUIS PENA

They're they basically want this warrant written and I delayed it because I need to review everything.

01:58:56 DAI LUIS PENA

So I'm delaying it, but at the same time it's in your hands now to get that.

01:59:00 DAI LUIS PENA

Date and basically say hey here.

01:59:02 DAI LUIS PENA

It is, you know, and sending me an e-mail and telling me, like, hey, this is I'm, I'm getting it going.

01:59:09 DAI LUIS PENA

12. DAI Pena acknowledged pending appeals but in the arrest warrant the exact opposite.

01:50:47 DAI LUIS PENA

So well so.
01:50:48 Rob Emert

There's actually, so I've I've learned a lot because there's actually two pending appeals, too.

01:50:53 Rob Emert

So if they're saying that I'm not reaching out to them.

01:50:56 Rob Emert

They're they're they're just lying because I've if anything, I've communicated a lot.

01:51:02 Rob Emert

And they're just angry because they look really it they really.

01:51:05 DAI LUIS PENA

13. DAI Pena again saying case should never have been brought to the DA.

02:44:00 DAI LUIS PENA

Play it as explaining it to the court that hey, yes, it is very scary to know that you can be arrested for doing this because your child should have.

02:44:11 DAI LUIS PENA

We should have never been with this case.

02:44:13 DAI LUIS PENA

14. DAI Pena acknowledged that Bryce's mom is exaggerating Bryce's IEP. Bryce is competent and even DDA Balerio acknowledges that in the transcript that she withheld from evidence as well.

You need to court to basically make it right by hearing your son what he wants in his life.

02:05:44 DAI LUIS PENA

Hes 15.

02:05:45 DAI LUIS PENA

Right.

02:05:46 DAI LUIS PENA

And I think if you have to.

02:05:47 DAI LUIS PENA

188

Just if it comes down to that point, just so they don't harass you on that matter, it's like the the biggest point here is.

02:05:53 DAI LUIS PENA

That he can make the decision.

02:05:56 DAI LUIS PENA

His IEP is not at that level.

02:05:58 DAI LUIS PENA

He doesn't understand.

02:05:59 DAI LUIS PENA

He doesn't need to be in the facility, doesn't need to be anywhere.

02:06:03 DAI LUIS PENA

He's a young man that's now 15.

02:06:06 DAI LUIS PENA

That was 14 when this all started on paper.

15. DAI Pena acknowledged that Bryce does not belong in a facility or residential home.

02:12:59 DAI LUIS PENA

I looked at this and my biggest thing is.

02:13:02 DAI LUIS PENA

He doesn't. He doesn't belong in some residential place. So for me to see that your son's going back to

**16. DAI Pena acknowledged that Bryce is of age and competency that he should be able to choose.**

00:10:57 DAI LUIS PENA

And and I get you about the.

00:10:58

Age, because that was my first question.

00:11:00

Like, why are we?

00:11:01

Involved, they're like well.

00:11:02

We're too deep in it.

00:11:03

So we can't, we can't turn around now.

00:11:05

I'm like, why are we even involved in this case?

00:11:07

I'm like, we don't take anything over 14.

00:11:09

I said it doesn't matter if the child, the child.

00:11:16

**17. DAI Pena acknowledged that I had Bryce in home school although he indicated otherwise on his arrest warrant a month or so later.**

His as far as what we're considering as far as I think what was he in in
school, your home schooling him, right?

18. DAI Pena acknowledged that possible criminal charges are based on a default
judgement only which is odd.

00:13:20 Rob Emert

And when you talk to him, FaceTime him.

00:13:22

You're gonna be like you're gonna be.

00:13:23

Oh my gosh, what a sweet boy.
00:13:25 Rob Emert

00:17:05 Rob Emert

They're only based on default judgments.

DAI LUIS PENA

Exactly

19. DAI Pena acknowledged that it is odd for the DA to take this case on and his
supervisors tell him to proceed because they are simply in too deep.

00:20:02 DAI LUIS PENA

It had nothing to do, but if the child was 14, I was 15.

00:20:05 DAI LUIS PENA

It's like, why are we taking this?

00:20:07 DAI LUIS PENA

Like, I don't see why and.

00:20:08 DAI LUIS PENA

I'm just told like well.

00:20:10 DAI LUIS PENA

We're like too deep.

00:20:10 DAI LUIS PENA

20. DAI Pena acknowledged that either the family court lawyers and or the DA lawyers are pushing him to file the arrest warrant.

00:20:10 DAI LUIS PENA

In it now and the attorneys.

00:20:12 DAI LUIS PENA

Pressure to file charges criminal charges.

00:20:15 DAI LUIS PENA

21. DAI Pena acknowledged that it is odd that the DA is pursuing this case at all.

02:46:11 DAI LUIS PENA

Because he called me and I told him.

02:46:12 DAI LUIS PENA

And here it is, they may still.

02:46:14 DAI LUIS PENA

Say, well, we're gonna still charge.

02:46:16 DAI LUIS PENA

I'm like well.

02:46:17 DAI LUIS PENA

We're not probably charged.

02:46:17

For all these other people, So what the hell are you doing this?

02:46:20 DAI LUIS PENA

22. DAI Pena acknowledged that the family court lawyers are pushing the DA for an arrest warrant.

Well, because they keep pushing our attorneys, their attorneys keep pushing our attorneys and our attorneys.

02:46:29 DAI LUIS PENA

That's what I see when people keep pushing them.

02:46:31  DAI LUIS PENA

And people keep calling and harassing them.

02:46:33 DAI LUIS PENA

Then they file charges.

02:46:34 DAI LUIS PENA

It's that squeaky wheel, man.

02:46:35 DAI LUIS PENA

Squeaky wheels, squeaky wheel.

02:46:36 DAI LUIS PENA

23. DAI Pena coaching me on what to say to the judge as Pena clearly knows there is something wrong with this case.

02:53:30 DAI LUIS PENA

You make it simple, straightforward of of how simple this case is.

02:53:35 DAI LUIS PENA

Of how we shouldn't be here.

02:53:37 DAI LUIS PENA

How he can speak for himself and

02:53:40 DAI LUIS PENA

That way, the judge.

02:53:41

Is like, well, it's kinda of right, why are we here again.

24. DAI Pena again references that this case does not belong in criminal court.

02:54:42 DAI LUIS PENA

Whereas like why they don't wanna arrest you then?

02:54:45 DAI LUIS PENA

They shouldn't even have the case in the first place.

02:54:47 DAI LUIS PENA

They shouldn't have accepted your case because he was 14 when when this all started on paper.

25. DAI Pena clearly has issue with just finishing the "damn warrant" for those who want to criminally prosecute me.

00:27:12 DAI LUIS PENA

Well, just finish the damn warrant.

00:27:14 DAI LUIS PENA

And don't worry about it.

00:27:15 DAI LUIS PENA

And I'd love to say, you know what?

00:27:19 DAI LUIS PENA

You asked me not to reach out to him.

00:27:20 DAI LUIS PENA

He reach out to me.

00:27:21 DAI LUIS PENA

So there's that.

00:27:22 DAI LUIS PENA

And I'm not gonna.

00:27:24 DAI LUIS PENA

Not speak with someone.

26. DAI Pena clearly implies if I tell the judge the correct thing, the judge would agree this whole thing is a farce and a sham.

02:54:53 DAI LUIS PENA

And in that way, at least, the judge can see.

02:54:55 DAI LUIS PENA

That and kind of figure out like, huh?

02:54:58

You are right.

27. DAI Pena clearly stating that the family court lawyers don't have Bryce's best interests and have aligned themselves with my x wife attorney, Dave Schilman of Schilman and Moore. Dave Shilman is a con man who conned my x wife's family out of over 300k.

00:29:12 DAI LUIS PENA

They have biases because they'll start because right now I think they lined up with with your ex-wife. I don't believe they're strictly just by themselves trying to do the best for him.

00:29:20 DAI LUIS PENA

I think now they line line together with your basically ex wives attorney and now they're trying to put something together.

28. DAI Pena acknowledged that Bryce is not as incompetent as his mom is trying to make him out. DDA Balerio met with Bryce and there is a recording that proves Bryces competence and even DDA Balerio complements Bryce as does the hundreds of people who have seen that interview that DDA Balerio withheld from evidence. Luckily, there was a recording of that interview.

Needs so much assistance that needs to be somewhere and it needs like that is what your wife's
painting up bryce to be some special needs kid that can't even live by himself.

02:58:06 DAI LUIS PENA

Like, like, and that's what I'm reading.

02:58:07 DAI LUIS PENA

And I'm like, really like Jesus.

02:58:09 DAI LUIS PENA

Is she is she?

02:58:10 DAI LUIS PENA

Is she still claiming that nonsense?

02:58:13 DAI LUIS PENA

Yes. Ohh gosh wow.

02:58:15 DAI LUIS PENA

29. One of many times I offer DAI Pena to talk to Bryce.

01:06:46 Rob Emert

So you want to talk to him?

01:06:47 Rob Emert

You call him as much as you want on.

01:06:48 Rob Emert

And and I won't be there, you know.

01:06:50 Rob Emert

You know, he's got his, you know, he's.

01:06:51 Rob Emert

Got his FaceTime, you know, call him as.

01:06:53 Rob Emert

Much as you want with that.

01:06:54 DAI LUIS PENA

Right.

30. DAI Pena acknowledged that I was still working on fixing this issue in family court but
indicated the exact opposite on the arrest warrant.

01:08:05 Rob Emert

So I have a.

01:08:06 Rob Emert

I have a court hearing in November.

01:08:09 Rob Emert

But I'm pretty sure I hope I hope I'm wrong.

01:08:13 DAI LUIS PENA

When in November, do you have the, court hearing and wheres that court?

01:08:15 Rob Emert

Court it's the central courthouse, November 17th.

01:08:23 Rob Emert

No, that's in a city well.

01:08:24 DAI LUIS PENA

Or are you talking county the city?

01:08:26 Rob Emert

Yeah, the the family court.

31. DAI Pena acknowledged that I didn't do anything to warrant this criminal charge other than "pissed them off".

01:12:03 Rob Emert

And seriously, you should ask these knuckleheads.

01:12:06 Rob Emert

What did this guy do for you guys to take his rights away?

01:12:10 Rob Emert

They don't have anything.

You pissed them off DAI LUIS PENA

32. DAI Pena acknowledged that his supervisors did not want to hear the truth or get information to exonerate me.

01:18:25 DAI LUIS PENA

Hey, Robert called me.

01:18:27 DAI LUIS PENA

I didn't reach out to him because they didn't want me to reach out to you, and so he reached out to me and we had a conversation.

33. DAI Pena again acknowledged that the DA should never have taken this case.

01:20:30 DAI LUIS PENA

This evidence I.

01:20:33 DAI LUIS PENA

The biggest thing is also.

01:20:35 DAI LUIS PENA

Put out there.

01:20:36 DAI LUIS PENA

That your son is 15 and he was 14 when this started and there was no, there was no reason for us to even open the case.

34. DAI Pena again acknowledged that he does not believe Bryce to be the disability case his mom his making him out to be and this is confirmed by DDA Balerio with Bryce in February 2023 that she withheld from evidence.

01:20:49 DAI LUIS PENA

And I know they're gonna try to make a.

01:20:50 DAI LUIS PENA

Big deal about your son.

01:20:53 DAI LUIS PENA

Talking about son Ohh, disabilities here disabilities there, but I mean you could simply just put the IEP does not raise the level of his, you know spectrum to that level like there's no reason.

01:21:02 DAI LUIS PENA

There's many kids that are that are in the spectrum. There are in IEPs and I don't believe that the DA's office is is doing anything about it, you know, but here for my son.

35. DAI Pena acknowledged that he believed that after a year of investigation that "there is no reason" for me to be criminally prosecuted.

01:21:24 DAI LUIS PENA

The big thing is.

01:21:26 DAI LUIS PENA

There is no reason.

01:21:27 DAI LUIS PENA

For them to take any rights from you as a parent and as far as is it wrong to and and sometimes you know, we gotta eat our words sometimes, but it's the idea of saying apologizing to the court, to everyone here.

36. DAI Pena asks for the evidence regarding the "facility" narrative for Bryce. DAI Pena acknowledged that this is good cause to protect me son.

01:21:59 DAI LUIS PENA

Here are the reasons and I think we.

01:22:01 DAI LUIS PENA

Need that evidence?

01:22:01 DAI LUIS PENA

To prove that they wanted to put them in a facility, we need that.

01:22:36 DAI LUIS PENA

Facts this is what it was said here it is on paper.

01:22:39 DAI LUIS PENA

Here it is on here and that is why and I believe I have good cause.

01:22:42 DAI LUIS PENA

In in doing what I did?

01:22:43 DAI LUIS PENA

And you you can give, you can find evidence online to prove your your side of it.

01:22:48 DAI LUIS PENA

To say that you did have good.

37. DAI Pena again stating that this case should not be in criminal court.

01:23:39 DAI LUIS PENA

I think we've told plenty of parents, your sons of age, that he can tell the court where he wants to go.

**01/03/23**


I am arrested like Americas Most Wanted and thrown in jail for 90 days with no bail. A "threat" was manufactured to keep me in jail to coerce a plea deal. (exhibit I) I was told if

I took the plea deal, I could get out of jail and my son could come home (G, H). After I took the plea deal, I was basically called a sucker.

This summary analyzes whether statements made during a call to the FBI meet the criteria for criminally prosecutable threats that could justify holding someone without bail. To incarcerate someone without bail for making threats in California, the prosecution must prove beyond a reasonable doubt:

1. The defendant made a credible threat of imminent violence that would put a reasonable person in fear of harm.
2. The defendant had specific intent to carry out the threat.
3. The threat was not protected speech under the First Amendment.(California Penal Code Sections 422, 1270.1)

Based on the transcript, the caller's statements **do not** contain the required elements and intentionality to be considered prosecutable threats rising to the level of denying bail under California law. DDA Balerio and DAI Luis Pena knew they could not win a case of 278.5(a) due to 278.7 and is why they did nothing for a year. Then, they are opportunistically; unethically; illegally, used the false pretense of a "threat" to illegally incarcerate me pretrial to coerce a guilty plea. So, not only did I not get the plea deal I was promised as is evident in the transcribed calls, but I was also illegally detained for 90 days as punishment for being a whistle-blower and standing up for me and my children's rights in family court.


**Between October 2021 and January 2023**

While I homeschooled Bryce (N), he thrived, and his mental health improved dramatically now that he was in a stable, loving home environment again after experiencing emotional trauma and volatility with his mother.

DAI Pena says in his Dec 2022 arrest warrant that: 1. I kept Bryce out of school; was not trying to resolve in family court; was not letting anyone talk to Bryce; was not cooperating with the DA's office; maliciously withheld Bryce. Just with a fraction of the evidence presented so far, DAI Pena clearly has zero credibility at this point. (A, E, K, M, N, O) Everything that DAI Pena put on his arrest warrant is refuted by his own words in the transcripts (E) and in a few emails (A). Not only does DAI Pena refute his own words in these statements, he does so MANY TIMES.

In the email below you can see I was keeping DAI Pena updated that I was falling over myself trying to resolve it in family court and he even acknowledged this in the transcribed call I had with him. (E)

Re: Emert: Ex Parte notice 12/13/22 1:30

Rob Emert <robemert@msn.com>
Mon 12/12/2022 3:31 PM

To:Sarah Bear <sbear@msmfamilylaw.com>;Dave Schulman <dschulman@msmfamilylaw.com>;luis.pena@sdcda.org
<luis.pena@sdcda.org>;peter.estes@sdcda.org <peter.estes@sdcda.org>;summer@summerstephan.com
<summer@summerstephan.com>;Gloria, Todd (External) <Mayortoddgloria@sandiego.gov>
Cc:Andrea Emert <aemert@carlsbadusd.net>
Bcc:Mark Fidelman <markefidelman@gmail.com>

Ms. Bear,

Below is the conformed copies for tomorrow's ex parte at 1:30.

🖼 CONFORMED COPIES FOR 121322 EX PARTE HEARING 130.pdf

I am fine pushing the ex parte until the next day and left a message to the Judges clerk to that effect.

The FBI agents have called the DA investigator. I am working with the San Marcos Sherriff as well.

Your office trying to use its connections at the DA's office to get me thrown in jail won't work out well for your office or your client in the long run.

Its absurd/illegal/unethical telling and expecting me to follow default judgment orders where me, my evidence, my witnesses, and ADA coordinators were not allowed into the hearing and given the blatant unethical/shady/malicious/retaliatory circumstances surrounding that default judgement, it will not hold up when an honest person reviews.

A STAY or ex parte hearing is the only fair and equitable solution. Trying to throw me in jail before I even get a fair hearing is dispicable and good luck with that.

Bryce, who is 15, is doing fantastic so please leave him alone.

Rob Emert

**Below is just one of many emails I sent to DAI Pena to give him the requested information that a team of family court thugs were trying to place my son in a facility. As you remember in the DAI Pena quotes, he indicated this was "good cause" to hold onto my son until it got resolved in family court.**

**From:** Rob Emert
**Sent:** Friday, September 16, 2022 4:54 PM
**To:** luis.pena@sdcda.org <luis.pena@sdcda.org>
**Subject:** Emert, Bryce - new DA investigator

Mr. Pena,

Thank you for your professionalism during this difficult time for me and my family.

Per our discussion, I feel the below information may be helpful to your investigation per your questions.

The documentation/evidence is so overwhelming that Patti Ratekin was unethically and illegally trying to fabricate a record to facilitate her placing my son in a residential home, it would be very time consuming to cover it all in this email. However, I will outline all of it for you and point it out in all the documentation you have from my email with the documents link.

In the meantime, and just for starters, Comm. Patti Ratekin said it on the FIRST day she met parties. Below is a snippet of that from the court transcript. You have the full transcript in my documents. Also, I attached the audio recording for the LAST day Comm Patti Ratekin heard this case when she finally recused herself where she clearly states she was going to shut down the ex parte hearing to find a facility to place my son in. It is truly INSANE. The mountains of evidence to document this between the first and last day Ratekin heard the case is simply overwhelming and the fact they are trying to deny it is so absurd it is almost unbelievable.

**This is just one of many emails were I was offering DAI Pena opportunities to speak with Bryce Emert.**

RE: Custody of Bryce Emert (15) – MORE DENIAL OF RIGHTS UNDER COLOR OF LAW
AND OBSTRUCTION OF JUSTICE AT THE SAN DIEGO FAMILY COURTHOUSE

Rob Emert <robemert@msn.com>

Thu 10/13/2022 11:11 AM

To: luis.pena@sdcda.org  <luis.pena@sdcda.org>

Cc: peter.estes@sdcda.org  <peter.estes@sdcda.org>;Gloria, Todd (External)
<Mayortoddgloria@sandiego.gov>;Dave Schulman <dschulman@msmfamilylaw.com>;Catie Young
<Catie@GYLFAMILYLAW.COM>;Matthew Cord, Esq.  <MCord@apjohnsonesq.com>;Linda Hansen
<lhansen@msmfamilylaw.com>;Norton, Crystal (Child Support)
<crystal.norton2@sdcounty.ca.gov>;cityattorney@sandiego.gov
<cityattorney@sandiego.gov>;CityAttyCrimInfo@sandiego.gov
<CityAttyCrimInfo@sandiego.gov>;Sandiegoda@sdcda.org
<Sandiegoda@sdcda.org>;Info@judicialwatch.org  <Info@judicialwatch.org>;bduncan@revealnews.org
<bduncan@revealnews.org>;bar@sdcba.org  <bar@sdcba.org>;john.shiffman@reuters.com
<john.shiffman@reuters.com>;publicmeeting@cjp.ca.gov  <publicmeeting@cjp.ca.gov>;ldan.lvri@doj.ca.gov
<ldan.lvri@doj.ca.gov>;nicole.rooney@sdcda.org  <nicole.rooney@sdcda.org>;davidloy@aclusandiego.org
<davidloy@aclusandiego.org>;mzahner@cdaa.org  <mzahner@cdaa.org>;tanya.sierra@sdcda.org
<tanya.sierra@sdcda.org>

📎 7 attachments (3 MB)

3 moms who support robert.pdf; 100620 status conference.pdf; andrea being rough with bryce.pdf; kinda stupid email.pdf;
summary of recent court pleading.pdf; supporting docs regarding timeline of arrest and TRO.pdf; what andrea does to kids
parents friends who disagree with her.pdf;

Mr. Pena, (San Diego District Attorney Investigator)

I left a message for you if you would like to meet with Bryce, who is 15 yrs old, and I.  Of course, you can
speak with Bryce alone, but it will need to be at a neutral location.  Bryce has spoken with police, CPS
and numerous others alone that can be documented.  If you would like this information, please let me
know.  Bryce has an Iphone, so please call him anytime you like.

I filed the ex parte that could have easily solved the issue regarding Bryce's custody.  Bryce is 15, he is
competent to make the decision to live with me and the evidence is overwhelming that it is in his best
interests.  Judge Robinson denying it is just more denial of rights under color of law, obstruction of
justice and with the evidence she was presented, it is clear she does not give a crap about the well-being
of Bryce.  All the evidence points to Bryce (15) living with me and I have a clear track record of always
helping Bryce achieve his own personal best.  Bryce's mom has called police, CPS and a company called
safety first on her own son because she was having issues with Bryce.  The issues were/are not Bryce.

**Here is an email from Bryce himself, now 16, telling his teacher about the issues and abuse
at the hands of his mother.**

**(No subject)**

Bryce Emert <emertb860@carlsbadusd.net>
Thu 9/7/2023 9:33 AM
To:Paul Isbell <pisbell@carlsbadusd.net>;tsemert@msn.com <tsemert@msn.com>;Dylan Mayer
<dylan.mayer@carlsbadusd.net>;dylan.mayer@carlsbadca.gov <dylan.mayer@carlsbadca.gov>

Dear Mr. Isbell,

I hope this message finds you well. I regret to inform you that I was unable to attend school today due to the need for some rest. I wanted to provide an update on my progress with assignments in your class, as it's taken me a bit longer to complete them recently.

The main reason for this delay is some challenging circumstances at home. Unfortunately, I've been experiencing emotional abuse from my mother, which has made it difficult to focus on my schoolwork. To make matters more challenging, I've been living in our garage, which is far from an ideal environment for studying.

In an attempt to create a more conducive space for my studies, I began working in the living room. However, this change seemed to trigger more frequent conflicts and arguments with my mother. Sadly, things have only escalated since the beginning of the school year.

I wanted to cc my grandma on this message, as she has been a witness to the difficult situation at home and can confirm the challenges I've been facing.

Please know that I remain committed to doing my best in your class. My goal is to not only pass but excel in my studies. Your extra help and genuine concern for my well-being mean a lot to me, and I want to express my gratitude for your support.

Thank you for understanding my situation, and I look forward to making progress in your class.

Sincerely, Bryce Emert


**Here is the homeschool information that was given to the DA's office several times.**

Emert, Bryce - Homeschool information

Rob Emert <robemert@msn.com>
Wed 8/24/2022 12:52 PM
To:steven.mcintosh@sdcda.org <Steven.McIntosh@sdcda.org>
Cc:Andrea Emert <aemert@carlsbadusd.net>

📎 2 attachments (506 KB)
BRYCE EMERT HOMESCHOOL 9TH GRADE.pdf; BRYCE EMERT HOMESCHOOL 10TH GRADE.pdf;

Mr. Mcintosh,

Attached are the documents that have been mailed to the appropriate state representative regarding homeschooling for last year and this year.

If any other parties try to indicate Bryce is truant from school and harass me with calls to CPS, the school, or the police, I will consider it more harassment and add to my claims I am currently working on.

Bryce is doing fantastic and anytime you want to talk to him via facetime, please do.  If you want to meet face to face, I would simply ask for a neutral 3rd party place to do that.

Thank you for your professionalism during this time.

I would suspect by what I know of the corrupt divorce players handbook that the next move by Andrea's attorney will be a contempt of court motion with the accompanying bench warrant since it appears the DA's office is not going to prosecute regarding the absurd default judgment filled with lies and corruption.

I never thought in a million years I would have a hard time getting a fair hearing in our United States of America.  I know there are lots of good people in this process as well and I can only hope they pick up my case and do what is right, lawful, and morally correct.

Rob Emert
760-612-9328


## February 9, 2022

After receiving a felony threat letter from the DA's office, I called and was cooperating with the San Diego District Attorney's office for almost a full year, providing extensive documentation to show I was properly acting under California Penal Code §278.7's exceptions for protecting children from harm. The evidence overwhelming proved the later filed charges under §278.5(a) were invalid and unfounded. DA investigators suggested they did not have a legitimate case and that my ex-wife Andrea was finally agreeing to joint legal custody after months of my efforts to get a court hearing.

Rob Emert <robemert@msn.com>
Sat 4/16/2022 2:13 PM
To: Rob Emert <robemert@msn.com>

Sent from my T-Mobile 5G Device
Get Outlook for Android

---

**From:** McIntosh, Steven <Steven.McIntosh@sdcda.org>
**Sent:** Monday, April 11, 2022, 7:43 AM
**To:** Rob Emert <robemert@msn.com>
**Subject:** Update

Good Morning;

If you could give me a call, your ex-wife is willing to give over custody of Bryce to you...

Thanks
Steve

Steven McIntosh
District Attorney Investigator III
San Diego County District Attorney's Office
Bureau of Investigation/Family Protection Detail
330 W. Broadway, San Diego, CA 92101
Desk: (619) 515-8638
Steven.mcintosh@sdcda.org



Despite all the evidence provided, on **January 3, 2023,** I was vindictively arrested and charged under §278.5(a) based on a fabricated allegation of an out-of-context "threat" made during a call to de-escalate the situation. (I) This allowed pre-trial detention without bail to punish and attempt to coerce me. After over 90 days in jail, I was coerced into signing a plea agreement with the threat of continued jail time including unfulfilled custody arrangements. (G, H)

Since my release in **April 2023,** I have continued to actively pursue exoneration through what evidence is allowed in state and federal courts. However, the family and criminal courts appear to be playing off each other to block my proof of factual innocence, with

the family and appellate court simply refusing to acknowledge smoking gun evidence right in their faces.

I remain resilient in my quest to simply have a fair opportunity to present the extensive evidence that I acted lawfully as a father to protect the well-being of my son at his own pleading, not with any malicious criminal intent. The truth and justice continue to be obstructed by apparent conflicts of interest and lack of impartiality.

# No Malice

FYI

Rob Emert <robemert@msn.com>
Thu 9/16/2021 8:10 PM
To:Andrea Emert <aemert@carlsbadusd.net>

Andrea, seriously, these scum bags don't care about our kids or you. Their despicable strategies have put both our kids in harms way. You really need to help me make this right for our kids. They both need to get out of this.

You should sue Shilman and get your money back. While I am not happy with you for many reasons, I still truly wish the best for you. I am sorry for lots during our marriage.

Please read these articles.

R

Clearly, no malicious intent. And, as you can see below, I was constantly trying to resolve at 50/50 with the children going back and forth between our homes on an as needed basis.

Fw: progress, who would have thought....

Rob Emert <robemert@msn.com>
Mon 5/24/2021 8:54 AM
To: Andrea Emert <aemert@carlsbadusd.net>
Andrea,

It does not get anymore basic than this. Your attorney draws up the stipulation and most times the Judge says great and adds the stipulation to the orders. If he does not do this within 24 hours I know you guys are just jerking me around and I will simply do what I feel is in the kids best interests. I spoke to many about this including the people in the high conflict class. This is the best and easiest way to go.

50/50

If there is a dispute regarding anything that can't be resolved by Andrea or I going forward, we would agree to a child custody advisor/coordinator to make the decision and that decision would be binding unless both Andrea and I disagreed with the advisor and came to a different agreed solution. This child custody advisor/ coordinator will be a third party agreed to by both parties. This custody advisor does not need to be picked immediately but both parties do agree they will agree to choose one prior to submitting this stipulation to the court.

Rob

I was always trying to resolve custody issues in an amicable way. I even asked Andrea Schuck to go on multiple Disney World vacations with me and our children after the divorce was final just as Schuck was offering many times for us to do family dinners and to go to church together. (H) There was clearly no malice. All anyone needs to do is listen to the two phone calls between me and Andrea Schuck (H) to realize I never had any malice, and she knew it and so did DDA Balerio who withheld her interview with Bryce (exhibit F ) and the long conversation I had with DAI Pena (exhibit E) who also withheld that conversation.

This is just one of the times I was trying to be amicable with zero malice towards my x wife and invited her to Disneyworld. Also, in the call transcripts between me and my x wife (H), anyone will see there is clearly no malice on my part. When I asked my x wife what did I ever do with "malice" and her only thing she could point to was that I could not make our then 15 year old son call her. It should be noted that my x wife does not "make" our 14 year old daughter call me but that is not malicious according to my x wife. The double standard is simply absurd and this kind of logic that the DA's office has clearly backed has made a mockery of our justice system and has shattered my life.

00:53:54 SCHUCK

**I don't want to go to Florida, so please don't**

**ask.** 00:53:57 EMERT

Just that that would have fixed a lot then.

00:53:58 EMERT

I I don't feel it.

00:54:01 SCHUCK

53

No, no, no, no, no, no, dude, I couldn't even like, look at you. I'm not OK. I'm not note. Let's just leave it. Leave them laughing.

I flat out asked my x wife, Andrea Schuck, what she thought any action of mine could be considered "malicious" and her only response was that I could not force our then 15 year old son to call her.  (exhibit H)

# V. Municipal Liability Under Monell

## A. Legal Standard for Municipal Liability

Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality can be held liable under 42 U.S.C. § 1983 when the execution of its policy or custom inflicts the constitutional injury.

A plaintiff must show that (1) the municipality had a policy, custom, or practice that amounted to deliberate indifference to the plaintiff's constitutional rights, and (2) the policy, custom, or practice was the moving force behind the constitutional violation.

## B. Specific Policies, Practices, or Customs Causing Constitutional Violations

The County of San Diego, the City of San Diego, and the San Diego County Board of Supervisors had a policy, practice, or custom of failing to investigate or discipline prosecutors for misconduct, even in the face of credible complaints and clear evidence of wrongdoing.

This policy, practice, or custom created an atmosphere of impunity that allowed Defendants Balerio and Pena to violate Plaintiff's constitutional rights without fear of consequences.

The municipal defendants' failure to provide adequate oversight and accountability for prosecutorial misconduct was the moving force behind the violation of Plaintiff's Eighth and Fourteenth Amendment rights.

## C. Deliberate Indifference to Constitutional Violations

The San Diego Board of Supervisors, the San Diego DA's office, the San Diego Mayor's office, and many other agencies were kept informed as Plaintiff sought justice for himself and his children. Emails and letters documenting the egregious violations of Plaintiff's basic constitutional and due process rights were sent to these agencies on 10/21/22, 12/27/22, 05/17/23, 06/14/23, 08/24/23, 10/04/23, 10/30/23, 11/01/23, and 11/16/23. These letters are included as exhibits filed under separate cover, but a few excerpts will be provided for context. (Exhibit Z)

Despite this notice, the municipal defendants failed to take any meaningful action to investigate or address the misconduct, demonstrating deliberate indifference to the violation of constitutional rights.

The County of San Diego, the City of San Diego, and the San Diego County Board of Supervisors were on notice of ongoing prosecutorial misconduct, as evidenced by Plaintiff's repeated emails providing substantial evidence of wrongdoing and citing relevant case law.

The municipal defendants' inaction in the face of credible complaints and clear evidence of misconduct created a climate in which constitutional violations were tolerated and even encouraged.

# D. Relevant Case Law Supporting Municipal Liability

The Supreme Court and the Ninth Circuit have established clear precedents that support imposing municipal liability on the County of San Diego and the Board of Supervisors in this case.

In Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), the Supreme Court held that a single decision by a municipal policymaker with final authority can subject the municipality to liability under § 1983. This is relevant to Plaintiff's case, as the actions of DDA Balerio and DAI Pena in setting unreasonable bail and withholding exculpatory evidence can be attributed to the County and the Board of Supervisors.

The Ninth Circuit's decision in Goldstein v. City of Long Beach, 715 F.3d 750 (9th Cir. 2013), is particularly applicable to Plaintiff's situation. The court found that a municipality's failure to investigate and discipline prosecutors for misconduct, despite notice of ongoing issues, could give rise to liability under Monell v. Dept. of Soc. Svcs., 436 U.S. 658 (1978). Here, Plaintiff sent at least nine emails and three letters to the Board of Supervisors (Exhibit Z), putting them on notice of the egregious constitutional violations and the ongoing misconduct by the prosecutors. Despite this, the Board failed to take any meaningful action, demonstrating their deliberate indifference to the violation of Plaintiff's rights.

Other relevant cases support Plaintiff's claims for municipal liability:

In Owen v. City of Independence, 445 U.S. 622 (1980), the Supreme Court established that municipal entities do not enjoy qualified immunity from civil rights claims.

City of Canton v. Harris, 489 U.S. 378 (1989), recognized that a municipality's failure to train its employees can be a basis for § 1983 liability where the failure amounts to deliberate indifference to the rights of persons with whom those employees come into contact.

Connick v. Thompson, 563 U.S. 51 (2011), reaffirmed that a pattern of similar constitutional violations by untrained employees can demonstrate deliberate indifference for purposes of failure to train liability.

In Henry v. County of Shasta, 132 F.3d 512 (9th Cir. 1997), the Ninth Circuit held that a plaintiff can establish municipal liability by demonstrating that the alleged constitutional violation was caused by a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity.

Fairley v. Luman, 281 F.3d 913 (9th Cir. 2002), found that a single incident of unconstitutional activity can be sufficient to impose liability under Monell if the unconstitutional action was ratified by municipal policymakers.

In Webb v. Sloan, 330 F.3d 1158 (9th Cir. 2003), the Ninth Circuit held that a district attorney's failure to institute policies and training to prevent constitutional violations by his subordinates can amount to a "policy of inaction" giving rise to municipal liability.

These cases provide a strong foundation for Plaintiff's claims against the County of San Diego and the Board of Supervisors. The Board's failure to investigate and discipline the prosecutors despite clear notice of ongoing misconduct, the lack of policies and training to prevent constitutional violations, and the ratification of the unconstitutional actions by policymakers all support the imposition of municipal liability under § 1983.

## Attribution of Balerio and Pena's Actions to Municipal Defendants

The unconstitutional actions of Defendants Balerio and Pena can be attributed to the County of San Diego, the City of San Diego, and the San Diego County Board of Supervisors under the following theories of municipal liability:

Final Policymaker Theory: Defendants Balerio and Pena, as Deputy District Attorney and Deputy Attorney Investigator, respectively, were final policymakers for their municipalities in the areas of law enforcement and criminal prosecution. Their decisions and actions,

including the fabrication of evidence, setting of excessive bail, withholding of exculpatory evidence, and malicious prosecution, represented the official policies, practices, or customs of the municipal defendants.

Failure to Train and Supervise: The municipal defendants were deliberately indifferent in their failure to train and supervise Defendants Balerio and Pena properly. Despite receiving numerous complaints from Plaintiff and being presented with clear evidence of misconduct (Exhibits Z1-Z9), the municipal defendants failed to take any meaningful steps to investigate, discipline, or correct the ongoing constitutional violations. This failure to train and supervise enabled and encouraged the continued violation of Plaintiff's rights by Defendants Balerio and Pena.

# VI. Causes of Action

# A. Violation of Eighth Amendment Right Against Excessive Bail

Legal Standard for Excessive Bail Claims

a. The Eighth Amendment to the U.S. Constitution prohibits the imposition of excessive bail.

b. Bail is considered excessive when it is set at an amount higher than reasonably necessary to ensure the defendant's appearance at trial or to protect the public.

c. In determining whether bail is excessive, courts consider factors such as the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and the defendant's financial ability to post bond.

Defendants' Setting of No Bail Violated Plaintiff's Eighth Amendment Rights

a. Defendants Balerio and Pena set Plaintiff's bail at "no bail," despite the lack of a credible threat or any evidence supporting the need for such a high bail amount.

b. As demonstrated by the AI analysis of the alleged threat (Exhibit I), Plaintiff's statements did not meet the legal definition of a credible threat under California Penal Code 422. The caller repeatedly denied making threats, sought intervention to de-escalate the situation, and lacked the specific intent to commit violence.

c. Furthermore, Defendants Balerio and Pena were aware of Plaintiff's factual innocence under the legal necessity defense (PC 278.7), as evidenced by DAI Pena's statements in the recorded interview (Exhibit E). Despite this knowledge, they proceeded with setting no bail and prosecuting Plaintiff.

d. The setting of no bail was unreasonable and excessive, as it was not necessary to ensure Plaintiff's appearance at trial or to protect the public, given the lack of evidence against Plaintiff and the Defendants' knowledge of Plaintiff's innocence.

e. Plaintiff's research has revealed that in cases where individuals have been charged with violating PC 278.5(a), there is not a single instance where the defendant was denied bail (Exhibit X). This fact underscores the extraordinary and unconstitutional nature of Plaintiff's pre-trial detention.

f. The excessive bail violated Plaintiff's Eighth Amendment rights and resulted in Plaintiff's prolonged pre-trial detention, causing significant harm and damages to Plaintiff.

## B. Violation of Fourteenth Amendment Right to Due Process

Legal Standard for Due Process Claims in Pre-Trial Detention Context

a. The Fourteenth Amendment to the U.S. Constitution prohibits states from depriving any person of life, liberty, or property without due process of law.

b. In the context of pre-trial detention, due process requires that a defendant be given a fair and reliable determination of probable cause before being subjected to prolonged detention.

c. Fabricating evidence or withholding exculpatory evidence violates a defendant's due process rights, as it undermines the reliability of the probable cause determination and the fairness of the criminal proceedings.

Defendants' Fabrication of Threat and Withholding of Exculpatory Evidence Violated Plaintiff's Due Process Rights

a. Defendants Balerio and Pena fabricated a threat and committed perjury on the arrest warrant to justify Plaintiff's detention, despite knowing that there was no credible threat or probable cause to support Plaintiff's arrest.

b. As demonstrated by the AI analysis of the alleged threat (Exhibit I), Plaintiff's statements did not meet the legal definition of a credible threat under California Penal Code 422. The caller repeatedly denied making threats, sought intervention to de-escalate the situation, and lacked the specific intent to commit violence. Despite this, Defendants Balerio and Pena misrepresented the nature of the call to the court to secure Plaintiff's detention.

c. Furthermore, Defendants Balerio and Pena withheld critical exculpatory evidence throughout Plaintiff's 90-day incarceration, including:

The full transcript of the alleged threat (Exhibit I), which clearly demonstrates the lack of a credible threat;

The interview with Plaintiff's son conducted by DDA Balerio (Exhibit F), which supported Plaintiff's innocence;

The interview with Plaintiff conducted by DAI Pena (Exhibit E), in which Pena acknowledged Plaintiff's factual innocence under the legal necessity defense (PC 278.7);

The findings of the FBI investigation, which determined that Plaintiff was not a threat.

d. By withholding this exculpatory evidence, Defendants Balerio and Pena prevented a fair and reliable determination of probable cause, prolonging Plaintiff's detention despite their knowledge of Plaintiff's innocence.

e. The fabrication of evidence and withholding of exculpatory evidence violated Plaintiff's due process rights, as it resulted in Plaintiff's prolonged pre-trial detention without a fair and reliable determination of probable cause. This misconduct undermined the fairness of the criminal proceedings and caused significant harm to Plaintiff.

f. The 90-day denial of bail and excessive confinement also violated due process because it amounted to unconstitutional pretrial punishment without a conviction. The Supreme Court has held that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception" (United States v. Salerno, 481 U.S. 739, 755 (1987)).

# C. Violation of First Amendment Right to Free Speech and Petition

Legal Standard for First Amendment Retaliation Claims

a. The First Amendment to the U.S. Constitution protects the right to free speech and the right to petition the government for redress of grievances.

b. Government officials may not retaliate against an individual for exercising their First Amendment rights.

c. To establish a First Amendment retaliation claim, a plaintiff must show that (1) they engaged in constitutionally protected speech or conduct, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action.

Defendants' Retaliatory Actions Violated Plaintiff's First Amendment Rights

a. Plaintiff exercised his First Amendment rights by filing a public corruption complaint against high-profile individuals within the family court system and acting as a whistleblower (Exhibit Q).

b. Plaintiff's public corruption complaint and whistleblowing activities are constitutionally protected speech, as they involve matters of public concern and seek to hold government officials accountable for alleged misconduct.

c. In retaliation for Plaintiff's protected speech, Defendants Balerio and Pena took adverse actions against Plaintiff, including:

Fabricating a threat and committing perjury on the arrest warrant to justify Plaintiff's detention;

Setting excessive bail at "no bail" to ensure Plaintiff's prolonged pre-trial detention;

Withholding exculpatory evidence that supported Plaintiff's innocence;

Maliciously prosecuting Plaintiff under PC 278.5(a) despite knowledge of his factual innocence under the legal necessity defense (PC 278.7).

d. The retaliatory motive behind the defendants' actions is evident from the statements made by DAI Pena during her interview with Plaintiff (Exhibit E). In the transcript, Pena acknowledged that the family court lawyers were actively seeking to have Plaintiff

criminally arrested, regardless of the evidence supporting Plaintiff's innocence. Pena indicated the family court lawyers are really pushing for us to arrest you, even though the evidence doesn't support it because you "pissed them off". (exhibit E)

This statement by DAI Pena demonstrates that the individuals Plaintiff had previously accused of corruption in his public corruption complaint (Exhibit Q) were now pressuring the District Attorney's office to arrest and prosecute Plaintiff, despite the lack of probable cause. These individuals, upset by Plaintiff's whistleblowing activities that exposed their alleged misconduct in family court, were attempting to weaponize the criminal justice system against Plaintiff in a blatantly retaliatory manner.

The family court lawyers' efforts to have Plaintiff arrested "damn the evidence" shows that their primary motive was to punish Plaintiff for his protected speech and to deter him from further whistleblowing. They sought to use the District Attorney's office to help them retaliate against Plaintiff and make him suffer the consequences of speaking out against their corruption.

Defendants Balerio and Pena, by acting on the family court lawyers' retaliatory demands and engaging in the unconstitutional actions against Plaintiff (fabrication of evidence, excessive bail, withholding of exculpatory evidence, and malicious prosecution), demonstrated their own retaliatory motive. They chose to aid the family court lawyers in their retaliation against Plaintiff, rather than adhering to their constitutional obligations and the clear evidence of Plaintiff's innocence.

The transcript of DAI Pena's interview provides direct evidence of the retaliatory motive behind the defendants' actions, as it shows that the driving force behind Plaintiff's arrest and prosecution was not a genuine belief in his guilt, but rather a desire to punish him for his whistleblowing activities. This clear link between Plaintiff's protected speech and the defendants' unconstitutional conduct firmly establishes the retaliatory nature of their actions and strengthens Plaintiff's First Amendment claim.

e. Defendants' retaliatory actions were intended to punish Plaintiff for his protected speech and to deter him from engaging in further whistleblowing activities. This chilling

effect on Plaintiff's First Amendment rights is precisely the type of harm that the Constitution seeks to prevent.

f. The retaliatory arrest, prosecution, and detention of Plaintiff violated his First Amendment rights and caused significant harm, including the loss of liberty, emotional distress, and damage to his reputation.

# VII. Damages

A. Harm and Damages Suffered from Unconstitutional Pre-Trial Detention

Plaintiff suffered severe emotional distress, mental anguish, and psychological trauma as a result of his prolonged and unjust pre-trial detention.

Plaintiff was deprived of his liberty for 90 days, during which time he was unable to work, earn income, or provide for his family.

Plaintiff's prolonged detention strained his familial relationships and caused him to miss important milestones and events in his family members' lives.

Plaintiff's reputation in the community was damaged as a result of his arrest and detention, causing him to suffer humiliation, embarrassment, and loss of standing in his community.

Plaintiff incurred significant legal expenses in defending against the baseless charges and seeking to vindicate his constitutional rights.

B. Types of Damages Sought

Compensatory Damages

a. Plaintiff seeks compensatory damages for the emotional distress, mental anguish, and psychological trauma he suffered as a result of his unconstitutional pre-trial detention.

b. Plaintiff seeks compensatory damages for the loss of income and financial hardship he experienced due to his inability to work during his detention.

c. Plaintiff seeks compensatory damages for the damage to his reputation and standing in the community caused by his arrest and detention.

Punitive Damages

a. Plaintiff seeks punitive damages against Defendants Balerio and Pena to punish them for their egregious misconduct and to deter similar misconduct by other officials in the future.

b. The Defendants' actions in fabricating evidence, committing perjury, and withholding exculpatory evidence demonstrate a reckless or callous indifference to Plaintiff's constitutional rights, warranting the imposition of punitive damages.

Attorney's Fees and Costs

a. Plaintiff seeks an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, which allows prevailing plaintiffs in civil rights actions to recover their attorney's fees and costs from the defendants.

b. Plaintiff has incurred significant legal expenses in seeking to vindicate his constitutional rights and hold the Defendants accountable for their misconduct.

# VIII. Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, granting the following relief:

A. Declaratory Judgment

A declaratory judgment stating that Defendants' actions in setting excessive bail, fabricating evidence, and withholding exculpatory evidence violated Plaintiff's rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.

A declaratory judgment stating that the policies, practices, or customs of the County of San Diego, the City of San Diego, and the San Diego County Board of Supervisors in failing to investigate or discipline prosecutors for misconduct, despite notice of ongoing issues, caused the violation of Plaintiff's constitutional rights.

B. Injunctive Relief

An order enjoining Defendants Balerio and Pena from engaging in further misconduct or constitutional violations in their roles as Deputy District Attorney and Deputy District Attorney Investigator, respectively.

An order requiring the County of San Diego, the City of San Diego, and the San Diego County Board of Supervisors to implement policies, practices, and procedures to ensure adequate oversight and accountability for prosecutorial misconduct and to prevent future constitutional violations.

C. Damages

Compensatory damages in an amount to be determined at trial for the emotional distress, mental anguish, psychological trauma, loss of income, damage to reputation, and other losses suffered by Plaintiff as a result of his unconstitutional pre-trial detention.

Punitive damages against Defendants Balerio and Pena in an amount to be determined at trial to punish them for their egregious misconduct and to deter similar misconduct by other officials in the future.

Attorney's fees and costs pursuant to 42 U.S.C. § 1988.

D. Other Relief

Such other and further relief as the Court deems just and proper.

# VII. Jury Demand and Special Requests

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

Due to the exceptional circumstances of this case and the potential conflict of interest arising from the chief judge's marriage to the head District Attorney, Plaintiff respectfully requests that this case be heard by a three-judge district court panel pursuant to 28 U.S.C. § 2284.

Furthermore, Plaintiff requests a case management conference or a Rule 26(f) conference to discuss discovery issues and potentially expedite the discovery process in light of the serious constitutional violations at issue.

# VERIFICATION

IT IS HEREBY certified that the facts in the foregoing is true and correct under penalty of

perjury to the best of my knowledge and belief. Attachments to this are true and correct copies of the items they purport to be.

Dated 04/09/24

*Rob Emert*

Rob Emert

2351 Vista Lago Terrace

Escondido California 92029

robemert@msn.com

(760) 612-9328

# ELECTRONIC SERVICE

I, Glenda Emert certify that on 04/10/24, I served: A civil rights action brought under 42 U.S.C. § 1983 seeking damages for the violation of Plaintiff Robert Emert's Eighth

Amendment right against excessive bail and Fourteenth Amendment right to due process, **specifically focusing on his illegal 90-day pre-trial detention for which he was never charged.**

by email to: **COSD.Claims@sdcounty.ca.gov ;** sdag.docketing@doj.ca.gov ; da.appellate@sdcda.org ; Sandiegodaprop65@sdcda.org ; joel.anderson@sdcounty.ca.gov ; District1community@sdcounty.ca.gov ; Remer@sdcounty.ca.gov ; **Monica.MontgomerySteppe@sdcounty.ca.gov ;** jim.desmond@sdcounty.ca.gov

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 04/10/24

*glenda emert*

Glenda Emert

# X. Filing of Exhibits Under Separate Cover

Pursuant to Rule 5(d)(3) and Rule 32(a)(5) of the Federal Rules of Civil Procedure, and Rule 25(a)(5) of the Federal Rules of Appellate Procedure, Petitioner hereby gives notice of intent to file the following exhibits under separate cover.

These exhibits are being filed under separate cover due to their length, as each exceeds 300 pages. Electronic copies of these exhibits will be submitted to the Court within five days of the filing of this petition, as required by the aforementioned rules.

Petitioner will file a separate "Notice of Lodging of Exhibits Under Separate Cover" concurrently with the submission of the electronic copies to the Court. This notice will

confirm that the electronic copies have been submitted and will provide a detailed listing of the exhibits being lodged.

The exhibits being lodged under separate cover are incorporated by reference into this petition and are an integral part of the record supporting Petitioner's claims for habeas corpus relief. Petitioner respectfully requests that the Court consider these exhibits in their entirety when evaluating the merits of this petition.


A. Emails with San Diego District Attorney

B. Bryce Emert affidavit

C. Bryce Emert letters and emails

D. Bryce Emert transcripts

E. DAI Luis Pena call transcript that was not disclosed

F. DDA Balerio transcript of interview she did with Bryce Emert and did not disclose

G. Jose Badillo call transcripts

H. Andrea Schuck call transcripts

I. FBI call transcript

J. Emails showing no malice

K. Email to DAI Pena regarding CPS interview

L. Email from DOJ forwarding complaint to FBI

M. Email offering DA to talk to Bryce anytime as Bryce has his own phone

N. Email to DAI Pena regarding homeschool information

O. Email to DAI Pena regarding handling in family court

P. Lower Court, Patti Ratekin, did not have jurisdiction due to Peremptory challenge

Q. Public corruption complaint filed with the Superior Court, DOJ, FBI, San Diego Board of supervisors.

R. Rob Emert medical documents

S. DOJ email that forwarded my public corruption complaint to the FBI

T. Comm. Patti Ratekin transcripts to prove with zero evidence, she was trying to place my son in a facility.

U. Comm. Patti Ratekin Transcripts

V. Court transcripts

W. Emails corroborating that Andrea Schuck was on board with the alarming narrative to place Bryce into a "facility" when all the evidence suggested that was the wrong decision.

X. Many amicable offers of 50/50 custody with both children going back and forth between our homes on an as needed basis for their emotional well being.

Y. 3 Family Court Services recommending 50/50 custody and I initially was granted 60% to ease the transition due to being a stay at home dad.

Z.  Emails and letters to the San Diego Board of Supervisors

AA. Arrest Warrant and Criminal Complaint.