Robert Emert

2351 Vista Lago Terrace

Escondido, CA 92029

760-612-9328



District Court of the United States

Southern District of California

| | |
|---|---|
| Robert Emert, | **MOTION FOR CONSOLIDATED EXPEDITED REVIEW BY A SINGLE THREE-JUDGE PANEL, PRE-DISCOVERY, EVIDENTIARY HEARING AND EARLY CASE MANAGEMENT CONFERENCE UNDER CASES;** |
| Plaintiff, | |
| vs. | |
| | **1. Case No. '24CV0671 JO MSB** |
| <u>Andrea Schuck, Jose Badillo, County of San Diego, in their official capacity, DDA Dawn Balerio and DAI Luis Pena</u> | **2. Case No. '24CV0002AHGAGS** |
| | **RELATED CASES: SD SUPERIOR COURT: SCD297230; SD SUPERIOR COURT: 19FL010852N; CA SUPREME CT S284407; SO CAL DISTRICT CT 3:24-CV-00671-JO-MSB; 3:24-CV-00002-ASG-AHG** |

MOTION FOR CONSOLIDATED EXPEDITED REVIEW BY A SINGLE THREE-JUDGE PANEL, PRE-DISCOVERY, EVIDENTIARY HEARING AND EARLY CASE MANAGEMENT CONFERENCE

## I. INTRODUCTION

### A. Brief overview of the two related cases

This motion pertains to two interrelated federal lawsuits:

**1. Case No. '24CV0671 JO MSB:** A civil rights action under 42 U.S.C. § 1983, alleging violations of Plaintiff's Eighth and Fourteenth Amendment rights due to excessive bail and unlawful pre-trial detention.

**2. Case No. '24CV0002AHGAGS:** A federal question case under 28 U.S.C. § 1331, concerning alleged violations of due process rights related to a plea agreement.

Both cases arise from the same underlying criminal proceedings and family court actions, involving overlapping facts, parties, and egregious constitutional violations that continue to cause irreparable harm.

The defense for both cases have been assigned to the same San Diego County attorney.

*This motion is a bit long and my appologies to the court for this.  I am only trying to have my fair day in court which has been denied me for almost four years now, has almost killed me (not an exaggeration) and put me unjustly in jail and has shattered my life.*

*However, this motion that is a bit long can be summed up in a few lines.  This motion is simply requesting the following which will mostly simply allow me to bring my evidence to prove both of these cases: MOTION FOR CONSOLIDATED EXPEDITED REVIEW BY A SINGLE THREE-JUDGE PANEL, PRE-DISCOVERY, EVIDENTIARY HEARING AND EARLY CASE MANAGEMENT CONFERENCE.*

*Anyone who has looked at this case knows that I have the evidence, and it is this court's duty to simply allow me to bring my evidence and to have my day in court and to end this manifest injustice that has shattered my life unjustly.*

**Regarding Case No. '24CV0002AHGAGS**, there exists irrefutable evidence of a plea agreement that was subsequently breached. This evidence includes:

1. Recorded Phone Conversations: Plaintiff possesses multiple recorded phone conversations that have been transcribed and timestamped. These recordings include: a. Several conversations with Plaintiff's former attorney, Jose Badillo, and conversations with Plaintiff's ex-wife, Andrea Schuck, discussing the terms of the agreement.
2. Statements from Former Attorney: Jose Badillo explicitly acknowledged that both he and Deputy District Attorney Balerio understood that Plaintiff settled the case based on an agreement that his son would return home and that if Andrea Schuck was backpaddling on this deal that this could be grounds to withdrawal the guilty plea.
3. Clear Pattern of Agreement: When the recorded conversations between Plaintiff, Andrea Schuck, and Jose Badillo are reviewed in their entirety, any reasonable person would conclude that a plea deal was reached, which included provisions for Plaintiff's son to return home.
4. Failure to Document: While Plaintiff's attorney failed to get the offer in writing, the recordings provide clear and convincing evidence of the agreement's existence.

**Regarding Case No. '24CV0671 JO MSB**, there is overwhelming evidence that no credible threat was ever made to justify the "no bail" detention and the no bail order was made out of malicious retaliation of a whistleblower of public corruption of a FEW individuals:

5. Lack of Credible Threat: The evidence, including the full transcript of the alleged threat, clearly demonstrates that Plaintiff's statements did not meet the legal standard for a credible threat under California law.
6. FBI Assessment: An FBI threat assessment, which the DA's office has allegedly withheld, reportedly concluded that Plaintiff did not pose a threat.
7. Disproportionate Response: The imposition of "no bail" for 90 days was grossly disproportionate to the alleged offense and Plaintiff's actual circumstances, including strong community ties, lack of criminal history, with ZERO flight risk.
8. Withholding of Exculpatory Evidence: The prosecution allegedly withheld crucial exculpatory evidence, including the full context of Plaintiff's statements and the FBI threat assessment, which would have negated the basis for the "no bail" detention; a phone call and evidence between plaintiff and defendant, DAI Luis Pena, that easily proves plaintiff's innocence and a recorded conversation between DDA Balario and my son who was almost 16 at the time and clearly competent.

9. Board of Supervisors Oversight: Plaintiff sent numerous letters and emails to the San Diego County Board of Supervisors, which has direct oversight of the District Attorney's office, seeking assistance and alerting them to the misconduct. These communications serve as evidence that the supervisory body was made aware of the issues and failed to intervene.

This evidence strongly supports Plaintiff's claim of Eighth Amendment violations due to excessive bail. In Stack v. Boyle, 342 U.S. 1 (1951), the Supreme Court held that bail set higher than an amount reasonably calculated to ensure the defendant's presence at trial is "excessive" under the Eighth Amendment. The nexus to Plaintiff's case is clear: the complete denial of bail, despite the lack of a credible threat and Plaintiff's strong community ties, appears to far exceed what was necessary to ensure his presence at trial.

Furthermore, the Board of Supervisors' failure to act on Plaintiff's communications raises serious questions about the oversight and accountability of the District Attorney's office. This systemic failure potentially implicates Monell liability under 42 U.S.C. § 1983, as established in Monell v. Department of Social Services, 436 U.S. 658 (1978), which held that local governments can be sued for constitutional violations resulting from official policy or custom.

This evidence strongly supports Plaintiff's claim of a due process violation stemming from the breach of the plea agreement. In Santobello v. New York, 404 U.S. 257 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." The nexus to Plaintiff's case is clear: the recorded evidence demonstrates that the plea agreement included specific provisions regarding custody arrangements, which have not been honored.

The failure to honor this agreement not only violates Plaintiff's due process rights but also undermines the integrity of the plea bargaining process, a critical component of our criminal justice system. This breach of agreement, coupled with the alleged misconduct in the family court proceedings, further exemplifies the systemic issues Plaintiff seeks to address through this motion.

The Supreme Court has long recognized the importance of addressing interrelated cases comprehensively. In United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966), the Court emphasized the judicial economy and convenience of hearing related claims together. The nexus to Plaintiff's cases is clear: both arise from the same factual

circumstances and involve overlapping constitutional issues, making consolidated consideration not just efficient, but necessary for a comprehensive resolution.

Furthermore, the gravity of these cases is compounded by the extensive fraud upon the court that has pervaded both the family and criminal proceedings. This fraud has transformed these cases into what can only be described as a "farce and a sham," as cautioned against in State v. Cahill, 218 N.W.2d 907 (Iowa 1974). The court's persistent refusal to grant an evidentiary hearing, despite multiple requests and clear justification, further underscores the systemic nature of this fraud.

Moreover, the conduct described herein rises to the level of fraud upon the court, a severe allegation that strikes at the heart of the judicial process. While California Code of Civil Procedure Section 473(d) provides a mechanism to address such fraud at the state level, the federal equivalent is found in a combination of Federal Rule of Civil Procedure 60(b)(3) and (d), along with established case law.

Federal Rule of Civil Procedure 60(b)(3) allows relief from a final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." More significantly, Rule 60(d) preserves the court's power to "set aside a judgment for fraud on the court" without any time limitation. This distinction is crucial, as it recognizes the fundamental importance of maintaining the integrity of the judicial process.

In the landmark case of Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), the Supreme Court established that federal courts have the inherent power to vacate judgments obtained through fraud upon the court. The Court emphasized that this power is "essential to the integrity of the courts, for tampering with the administration of justice in [this] manner… involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."

**Subsequent cases have further refined the concept of fraud upon the court:**

1. Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985) defined it as "fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury."

2. Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir. 1993) held that fraud upon the court occurs where it can be demonstrated, clearly and convincingly, that a party has set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter.

3. In re Intermagnetics America, Inc., 926 F.2d 912, 916 (9th Cir. 1991) stated that fraud upon the court involves "an unconscionable plan or scheme which is designed to improperly influence the court in its decision."

The standard for such fraud is high, typically defined as "egregious misconduct... such as bribery of a judge or jury or fabrication of evidence by counsel" (Herring v. United States, 424 F.3d 384, 386-87 (3d Cir. 2005)). The actions of the prosecutors and judges in this case, particularly the withholding of exculpatory evidence and the fabrication of a threat to justify pre-trial detention, arguably meet this high standard.

It is crucial to note that unlike other grounds for relief under Rule 60(b), which have a one-year time limit, there is no time limit for bringing an action based on fraud upon the court. This principle, affirmed in cases like Plaut v. Spendthrift Farm, Inc., 514 U.S. 211 (1995), recognizes the fundamental importance of maintaining the integrity of the judicial process.

While the burden of proving such fraud is high, requiring clear and convincing evidence (Shepherd v. American Broadcasting Cos., 62 F.3d 1469, 1477 (D.C. Cir. 1995)), the extensive documentation provided in this case - including recorded conversations, withheld transcripts, and conflicting statements from law enforcement officials - presents a compelling case for fraud upon the court.

The alleged misconduct in this case goes beyond mere procedural errors or differences in legal interpretation. It represents a systematic effort to subvert the judicial process, deny the Plaintiff his constitutional rights, and secure a conviction through deception and abuse of prosecutorial power. Such actions, if proven, would not only justify the vacating of the conviction but would also necessitate a thorough investigation into the practices of the San Diego County District Attorney's Office and the judges involved in these proceedings.

**The fraud upon the court is evidenced by numerous instances of judicial misconduct and bias:**

**1. Retired Commissioner Patti Ratekin's actions, including but not limited to:**

  a. Stating intent to remove Plaintiff's son to residential care without evidence, violating due process rights under Troxel v. Granville.

  b. Denying Plaintiff's properly filed CCP §170.6 peremptory challenge, contravening Local Rule 2.1.18, CA state rule Rule 2.831(c), and due process per Catchpole v. Brannon.

c. Acting as an unauthorized temporary judge barred by California Rules of Court, rule 2.818(c)(3), making orders void under Fewel v. Fewel.

d. Terminating Plaintiff's parental rights without proof of unfitness, violating due process as established in In re B.G.

e. Ignoring the child's affidavits, witness statements, domestic violence arrests, psychological evaluations, and pleas to the court, disregarding her duty of fairness under California Code of Judicial Ethics.

f. Exhibiting clear bias and preventing questioning of witnesses contrary to confrontation rights under Davis v. Alaska.

g. Denying and/or ignoring all requests for an evidentiary hearing.

**2. Retired Judge Alksne's conduct, including:**

a. Ignoring motions to disqualify and set aside Ratekin's orders, violating supervisory duties under CCP 128(a)(8) and 170.1.

b. Denying Plaintiff access to hearings and trial after his heart attack, infringing due process rights under Goldberg v. Kelly.

c. Entering improper default judgment during Plaintiff's medical incapacitation contrary to fair hearing rights under Peralta v. Heights Medical Center.

d. Refusing remote appearances and continuance despite ADA coordinator recommendations and California Rule of Court 3.1332 on accommodations.

e. Railroading 4 hearings and a trial inside one month after Plaintiff's heart attack, disregarding Rule 3.1332 on continuances for medical reasons.

f. Denying and/or ignoring all requests for an evidentiary hearing.

**3. Judge Robinson's ongoing failure to rectify these past injustices, coupled with her own misconduct:**

a. Most recently, denying Plaintiff's simple ADA disability request accompanied by a doctor's letter that clearly qualified under ADA and Cal Rules of Court, rule 1.1.

b. Ignoring the misconduct by Commissioner Ratekin and Judge Alksne.

c. Improperly claiming lack of jurisdiction for over a year to avoid addressing Plaintiff's default challenge, violating the duty to hear jurisdictional matters under Mowrer v. Superior Court.

d. Asserting jurisdiction only after Plaintiff was jailed pursuant to the default, precluding him from contesting it contrary to due process rights established in Nelson v. City of Irvine.

e. Delaying ruling on the default judgment's validity until after criminal proceedings conclude, violating the separation of powers under People v. Superior Court (On Tai Ho).

f. Refusing to promptly hear the matter despite ongoing irreparable harm from losing custody rights recognized under California Rules of Court 3.1312(c) and Rodriguez v. Superior Court.

g. Obstructing access to justice by contradicting jurisdiction stances and delaying hearings contrary to Smith v. Lewis.

h. Misapplying CCP 473(b) regarding Plaintiff's amended RFO's timeliness, disregarding the relation back doctrine.

i. Denying and/or ignoring all requests for an evidentiary hearing.


**4. Statements from DA Investigator:** Perhaps most damning are the recorded statements from the DA's own investigator, DAI Luis Pena, who explicitly stated in an audio recording that has been transcribed and timestamped.


a. The DA should never have taken this case!

b. I would win if the case went to trial!

c. My son's lawyer (Matt Cord) had simply aligned with the ex-wife's attorney (Dave Schulman) and NOT in my sons best interests!

d. This case does not belong in criminal court!

e. There is no reason for me to be criminally prosecuted!

f. I had good cause to protect my son from an illegal/unethical "facility".


In Berger v. United States, 295 U.S. 78 (1935), the Supreme Court emphasized that the interest of a prosecutor "is not that it shall win a case, but that justice shall be done." The

nexus to Plaintiff's case is clear: these statements from an insider within the DA's office suggest a severe deviation from this standard of conduct and provide strong evidence that Plaintiff's actions were justified under PC 278.7, negating any violation of PC 278.5(a).

This pattern of misconduct strongly suggests that Plaintiff is being targeted and railroaded for his role as a whistleblower, exposing corruption within the family court system. The courts' persistent refusal to address these issues, despite Plaintiff's diligent efforts to exhaust all available state remedies, has effectively turned these proceedings into a mockery of justice.

As the Supreme Court emphasized in Tumey v. Ohio, 273 U.S. 510 (1927), proceedings before a biased judge are "constitutionally unacceptable." The conduct exhibited by multiple judges in these cases goes beyond mere bias, rising to the level of systemic fraud that undermines the very foundation of our judicial system.

This fraud upon the court has resulted in severe and ongoing harm to Plaintiff, including the loss of fundamental parental rights and the deprivation of a fair opportunity to present his case. The courts' actions have not only violated Plaintiff's constitutional rights but have also eroded public trust in the judicial system.

In light of these extraordinary circumstances, the relief sought in this motion is not merely justified but imperative. Expedited review by a three-judge panel, coupled with pre-discovery and an evidentiary hearing, is essential to uncover the full extent of this fraud and to restore integrity to these proceedings. Failure to address these issues promptly and thoroughly would only serve to further entrench the "farce and sham" that these cases have become, inflicting irreparable harm on Plaintiff and undermining the principles of justice our courts are meant to uphold.

## B. Statement of relief sought

**Plaintiff respectfully requests the following relief:**

**1. Expedited Review:** Pursuant to 28 U.S.C. § 1657, which provides that courts shall expedite the consideration of actions of general public importance, Plaintiff seeks expedited review of both cases. The ongoing alleged violations of fundamental constitutional rights, particularly those affecting parent-child relationships, necessitate urgent attention. As held in Adem v. Bush, 425 F. Supp. 2d 7 (D.D.C. 2006), expedited

review is appropriate where there are "ongoing, alleged violations of constitutional rights." The nexus to Plaintiff's cases is clear: the alleged ongoing deprivation of custody rights and the consequences of an allegedly coerced plea agreement continue to impact Plaintiff's constitutional rights daily.  Furthermore, in Sampson v. Murray, 415 U.S. 61 (1974), the Supreme Court noted that expedited proceedings are particularly appropriate where there is a significant public interest at stake. The nexus here is evident: the alleged systemic issues in the local judicial processes implicate not just Plaintiff's rights, but the integrity of the judicial system itself, warranting urgent attention.

**2. Appointment of a Three-Judge Panel:** Under 28 U.S.C. § 2284, Plaintiff requests the appointment of a three-judge panel. While typically reserved for specific types of cases, the exceptional circumstances here - involving complex constitutional issues spanning criminal and family law, and allegations of systemic issues in local judicial processes - warrant such an appointment. In Shapiro v. McManus, 577 U.S. 39 (2015), the Supreme Court clarified the broad discretion courts have in convening such panels. The nexus to Plaintiff's cases lies in the intertwined nature of the constitutional claims across two federal suits, the alleged systemic issues in local courts, and the novel legal questions presented.  In Allen v. State Board of Elections, 393 U.S. 544 (1969), the Supreme Court noted that three-judge courts are appropriate for cases of 'public concern.' The nexus to Plaintiff's cases is clear: the alleged systemic misconduct and constitutional violations raise issues of broad public importance, affecting not just Plaintiff but potentially many others subject to the local judicial system.

**3. Pre-Discovery:** Plaintiff seeks pre-discovery under Federal Rules of Civil Procedure 26(d) and 34. As established in Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y. 1982), early discovery may be granted upon showing good cause. The nexus here is the critical need for key evidence - including plea negotiation transcripts, FBI threat assessments, and complete DA files - to substantiate Plaintiff's claims and facilitate expedited review. Without this evidence, Plaintiff argues that a fair and expeditious resolution of the constitutional issues at stake is impossible.  In Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978), the Supreme Court affirmed the broad discretion of district courts in managing discovery. The nexus here is that the unique circumstances of Plaintiff's cases - involving alleged withholding of crucial evidence - necessitate early and thorough discovery to ensure a fair proceeding.

**4. Early Case Management Conference:** Under Federal Rule of Civil Procedure 16, Plaintiff requests an early case management conference. The Ninth Circuit in In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217 (9th Cir. 2006), emphasized the importance of such conferences in complex litigation for efficient case management. The nexus to Plaintiff's cases is the need for early judicial guidance on handling the interrelated aspects of both lawsuits, scheduling expedited discovery, and addressing the unique constitutional issues involved.

**5. Evidentiary Hearing:** Pursuant to the Due Process Clause of the Fourteenth Amendment and the principles established in Goldberg v. Kelly, 397 U.S. 254 (1970), Plaintiff requests an evidentiary hearing to present the substantial evidence of alleged constitutional violations and judicial misconduct. In Armstrong v. Manzo, 380 U.S. 545, 552 (1965), the Supreme Court emphasized that due process requires "an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" The nexus to Plaintiff's cases is clear: despite exhausting state and appellate remedies, Plaintiff has been denied any meaningful opportunity to present evidence in both family and criminal court proceedings. This hearing is crucial to address the fundamental fairness concerns raised by the alleged fraud upon the court and to ensure that all relevant facts are properly considered before the Court makes its determinations. Given the gravity of the constitutional issues at stake and the potential systemic implications of the alleged misconduct, an evidentiary hearing is not just warranted but essential for the fair administration of justice.

These requested forms of relief, supported by statutory authority and relevant case law, are essential to address the ongoing alleged constitutional violations, prevent further harm to parent-child relationships, and ensure an efficient and just resolution of the complex legal issues presented in these interrelated cases.  In Mathews v. Eldridge, 424 U.S. 319 (1976), the Supreme Court established a balancing test for determining what process is due in any given case. Applying this test to Plaintiff's situation, the private interest affected (parental rights) is paramount, the risk of erroneous deprivation without a hearing is high given the complexity of the issues, and the government's interest in avoiding a hearing is minimal compared to the importance of ensuring justice. Thus, the nexus to Mathews strongly supports granting an evidentiary hearing.

These requests are interconnected and mutually reinforcing. Expedited review necessitates pre-discovery to ensure all relevant evidence is available. The complexity of the issues justifies a three-judge panel, which in turn requires an early case management conference to coordinate effectively. An evidentiary hearing is crucial to present the full scope of evidence uncovered during pre-discovery. Together, these measures form a

comprehensive approach to addressing the alleged constitutional violations and fraud upon the court.

Granting these requests would significantly promote judicial economy by allowing for a comprehensive and efficient resolution of these interrelated issues. Consolidated review by a three-judge panel would prevent duplicative proceedings and potentially inconsistent rulings. Pre-discovery and an evidentiary hearing would ensure that all relevant facts are presented upfront, potentially streamlining the entire legal process and conserving judicial resources in the long run.

Failure to grant these requests WILL result in continued irreparable harm to the Plaintiff's constitutional rights, particularly his parental rights. Plaintiff has almost died several times due to this fiasco mostly orchestrated by Dave Schulman and his well-connected minions. It may perpetuate the alleged fraud upon the court, undermining public trust in the judicial system. Moreover, addressing these complex issues piecemeal could lead to inconsistent rulings, prolonged litigation, and inefficient use of judicial resources.

Having established the gravity of the issues at hand and the necessity of the requested relief, this motion will now proceed to detail the factual background and legal arguments supporting each request.

What this case boils down to is that I had EVERY legal right to protect my son from abuse under legal necessity/ PC 278.7 and all interested parties knew it and is why I have been denied a simple evidentiary hearing for almost 4 years now to bring my evidence forward. Retired Comm. Patti Ratekin did not have jurisdiction after she denied a proper peremptory challenge filed in Sept 2021 and me and my children have been living in terror ever since due to the moral turpitude of Dave Schulman, Patti Ratekin, Matt Cord and a few others. I am still confident when this case finally gets to the 9th circuit that this farce and a sham of proceedings will come down like a house of cards with a fair and impartial judge. Patti Ratekins supervising Judges wife worked with and was friends with my x wife and I have a recording that proves that my x wife and Dave Schulman were well aware of this conflict of interest. Dave Schulman went running for cover to retired Judge Lorna Alknse who tried to cover this mess up and Judge Robinson is too afraid to provide simple justice for whatever reason. The retired judges I have spoken with tell me why but are not going to get into it here. And, you don't have to take my word for it, listen to the recording between me and District Attorney Investigator Luis Pena where he told me that my sons attorney, Matt Cord, was not working in my son's best interests and had simply lined up with Dave Schulman to put something together against me. DAI Luis Pena further stated many times in a roundabout way that the family court judges should let my son live with me according to the law; I would win if this case went to trial and the DA only was moving forward due to the

family court lawyers using their connections to put something together against me do to my whistleblowing on a few unethical individuals with their blatant moral turpitude. I told DAI Luis Pena that I really did nothing wrong other than being a great Dad. Luis Pena's response was, well, "YOU PISSED THEM OFF". That is not any justice that I would be familiar with in our United States of America! I deserve to have my fair day in court, and I would appreciate this court following the rule of law and granting my requests so I can move on with a jury trial and finally receive some justice after this RICO crew of thugs almost killed me by attempting to throw my son into a "facility" and then getting their cronies to throw me in jail for 90 days. I was simply a great father who told these RICO thugs of the family court, not on my watch and I had EVERY legal right to say and act as I did.

Furthermore, the evidence that has all been withheld that I am asking this court to review will easily and simply prove my assertions.

**The fraud upon the court is evidenced by numerous instances of judicial misconduct and bias:**

1. Retired Commissioner Patti Ratekin's actions, including but not limited to: a. Stating intent to remove Plaintiff's son to residential care without evidence, violating due process rights under Troxel v. Granville. b. Denying Plaintiff's properly filed CCP §170.6 peremptory challenge, contravening Local Rule 2.1.18, CA state rule Rule 2.831(c), and due process per Catchpole v. Brannon. c. Acting as an unauthorized temporary judge barred by California Rules of Court, rule 2.818(c)(3), making orders void under Fewel v. Fewel. d. Terminating Plaintiff's parental rights without proof of unfitness, violating due process as established in In re B.G. e. Ignoring the child's affidavits, witness statements, domestic violence arrests, psychological evaluations, and pleas to the court, disregarding her duty of fairness under California Code of Judicial Ethics. f. Exhibiting clear bias and preventing questioning of witnesses contrary to confrontation rights under Davis v. Alaska. g. Denying and/or ignoring all requests for an evidentiary hearing.

2. Retired Judge Alksne's conduct, including: a. Ignoring motions to disqualify and set aside Ratekin's orders, violating supervisory duties under CCP 128(a)(8) and 170.1. b. Denying Plaintiff access to hearings and trial after his heart attack, infringing due process rights under Goldberg v. Kelly. c. Entering improper default judgment during Plaintiff's medical incapacitation contrary to fair hearing rights under Peralta v. Heights Medical Center. d. Refusing remote appearances and continuance despite ADA coordinator recommendations and California Rule of Court 3.1332 on accommodations. e. Railroading 4 hearings and a trial inside one month after

Plaintiff's heart attack, disregarding Rule 3.1332 on continuances for medical reasons. f. Denying and/or ignoring all requests for an evidentiary hearing.

3. Judge Robinson's ongoing failure to rectify these past injustices, coupled with her own misconduct: a. Most recently, denying Plaintiff's simple ADA disability request accompanied by a doctor's letter that clearly qualified under ADA and Cal Rules of Court, rule 1.1. b. Ignoring the misconduct by Commissioner Ratekin and Judge Alksne. c. Improperly claiming lack of jurisdiction for over a year to avoid addressing Plaintiff's default challenge, violating the duty to hear jurisdictional matters under Mowrer v. Superior Court. d. Asserting jurisdiction only after Plaintiff was jailed pursuant to the default, precluding him from contesting it contrary to due process rights established in Nelson v. City of Irvine. e. Delaying ruling on the default judgment's validity until after criminal proceedings conclude, violating the separation of powers under People v. Superior Court (On Tai Ho). f. Refusing to promptly hear the matter despite ongoing irreparable harm from losing custody rights recognized under California Rules of Court 3.1312(c) and Rodriguez v. Superior Court. g. Obstructing access to justice by contradicting jurisdiction stances and delaying hearings contrary to Smith v. Lewis. h. Misapplying CCP 473(b) regarding Plaintiff's amended RFO's timeliness, disregarding the relation back doctrine. i. Denying and/or ignoring all requests for an evidentiary hearing.

This pattern of misconduct strongly suggests that Plaintiff is being targeted and railroaded for his role as a whistleblower, exposing corruption within the family court system. The courts' persistent refusal to address these issues, despite Plaintiff's diligent efforts to exhaust all available state remedies, has effectively turned these proceedings into a mockery of justice.

As the Supreme Court emphasized in Tumey v. Ohio, 273 U.S. 510 (1927), proceedings before a biased judge are "constitutionally unacceptable." The conduct exhibited by multiple judges in these cases goes beyond mere bias, rising to the level of systemic fraud that undermines the very foundation of our judicial system.

This fraud upon the court has resulted in severe and ongoing harm to Plaintiff, including the loss of fundamental parental rights and the deprivation of a fair opportunity to present his case. The courts' actions have not only violated Plaintiff's constitutional rights but have also eroded public trust in the judicial system.

In light of these extraordinary circumstances, the relief sought in this motion is not merely justified but imperative. Expedited review by a three-judge panel, coupled with pre-discovery and an evidentiary hearing, is essential to uncover the full extent of this fraud

and to restore integrity to these proceedings. Failure to address these issues promptly and thoroughly would only serve to further entrench the "farce and sham" that these cases have become, inflicting irreparable harm on Plaintiff and undermining the principles of justice our courts are meant to uphold.

## II. BACKGROUND

Introduction: Key Evidence Underscoring the Urgency and Merit of Plaintiff's Claims

Before delving into the specifics of each case, it is crucial to highlight the compelling evidence that forms the foundation of Plaintiff's claims and underscores the urgency of the requested relief:

1. Recorded Phone Conversations and Email Communications: Plaintiff possesses multiple recorded phone conversations and email exchanges that provide irrefutable evidence of a plea deal that was subsequently reneged upon. These recordings include:

   a. Conversations with Plaintiff's former attorney, Jose Badillo, where Jose Badillo makes it very clear that plaintiff took the plea deal and "resolved the case" based on his son coming home.

   b. Emails and phone calls with Andrea Schuck making it very clear that a plea deal had been arranged between plaintiff's attorney, Jose Badillo, and DDA Balerio.

   In Santobello v. New York, 404 U.S. 257 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." The nexus to Plaintiff's case is clear: these recordings and emails demonstrate that the plea agreement included specific provisions regarding custody arrangements, which have not been honored.

   In United States v. Vaval, 404 F.3d 144, 152 (2d Cir. 2005), the court held that "where a plea agreement has been reached as a result of plea negotiations, the agreement must be construed in light of the reasonable understanding of the parties as to its terms."

   Nexus: The recorded conversations and emails in Plaintiff's possession provide clear evidence of the parties' understanding of the plea agreement terms, particularly regarding

custody arrangements. This evidence is crucial for interpreting the agreement under the Vaval standard.

2. Withholding of Exculpatory Evidence: There is substantial evidence that the District Attorney's office withheld crucial exculpatory evidence, including:

   a. A transcript of an interview between DDA Balerio and Plaintiff's son, which was not disclosed to the defense

   b. FBI reports indicating that Plaintiff was not considered a threat

   This conduct directly contravenes the principles established in Brady v. Maryland, 373 U.S. 83 (1963), where the Supreme Court held that the suppression of evidence favorable to an accused violates due process. The nexus here is the DA's alleged failure to disclose evidence that could have significantly impacted both the criminal proceedings and related family court matters.

In Kyles v. Whitley, 514 U.S. 419, 437 (1995), the Supreme Court emphasized that prosecutors have a duty to learn of any favorable evidence known to others acting on the government's behalf.

Nexus: The alleged withholding of the FBI threat assessment and the interview transcript with Plaintiff's son potentially violates the prosecutor's duty as outlined in Kyles, extending beyond just the evidence in their direct possession.

3. Statements from DA Investigator: Perhaps most damning are the recorded statements from the DA's own investigator, DAI Luis Pena, who explicitly stated:

   a. The DA should never have taken this case!

   b. I would win if the case went to trial!

   c. My son's lawyer, Matt Cord, had simply aligned with the ex-wife's attorney, Dave Schulman, and against the child's best interests!

   In Berger v. United States, 295 U.S. 78 (1935), the Supreme Court emphasized that the interest of a prosecutor "is not that it shall win a case, but that justice shall be done." The nexus to Plaintiff's case is clear: these statements from an insider within the DA's office suggest a severe deviation from this standard of conduct.

In Giglio v. United States, 405 U.S. 150 (1972), the Court held that the prosecution's failure to disclose evidence that could be used to impeach the credibility of a witness violates due process.

Nexus: The statements from DAI Luis Pena could potentially be used to impeach the credibility of the prosecution's case against Plaintiff. The failure to disclose these statements may constitute a Giglio violation.

4. Ongoing Harm and Constitutional Violations: This evidence points to ongoing violations of Plaintiff's constitutional rights, including:

   a. Deprivation of liberty without due process

   b. Infringement on fundamental parental rights

   c. Potential Eighth Amendment violations related to excessive bail

As the Supreme Court stated in Elrod v. Burns, 427 U.S. 347 (1976), "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." By extension, the ongoing deprivation of fundamental constitutional rights, including parental rights, constitutes a form of irreparable harm that demands immediate attention.

Given the weight and clarity of this evidence, it is Plaintiff's contention that any failure by the court to consider these irrefutable facts would constitute a "farce and a sham" of judicial proceedings, as cautioned against in United States v. Cronic, 466 U.S. 648 (1984). The nexus here is that the evidence Plaintiff presents goes beyond mere allegations, offering clear proof of unfairness and misconduct that demands thorough and expedited review.

This body of evidence not only substantiates Plaintiff's claims but also underscores the urgency of the relief sought in this motion. It demonstrates that without swift action, there is a real and ongoing risk of continued violation of Plaintiff's constitutional rights and further harm to the parent-child relationship.

Given the weight and clarity of this evidence, it is Plaintiff's contention that any failure by the court to consider these irrefutable facts or to allow their presentation to a jury would constitute a "farce and a sham" of judicial proceedings. The Supreme Court, in Bracy v. Gramley, 520 U.S. 899 (1997), emphasized that the Constitution guarantees "a fair trial in a fair tribunal," and that this fairness extends to all phases of the trial process. The nexus to Plaintiff's case is clear: the extensive evidence presented here - including recorded conversations, emails, and statements from a DA investigator - is so probative and material to the alleged constitutional violations that its exclusion from jury consideration would render any proceeding fundamentally unfair.

Furthermore, in Foster v. Chatman, 578 U.S. 488 (2016), the Court demonstrated its willingness to closely examine evidence of misconduct in the judicial process, even years after the fact. The Court stated that "prosecutors must give race-neutral reasons for their strikes if the defendant has made out a prima facie case of racial discrimination." By analogy, when a plaintiff presents prima facie evidence of prosecutorial misconduct and constitutional violations, as is the case here, the court has an obligation to allow thorough examination of that evidence.

In Washington v. Glucksberg, 521 U.S. 702, 720 (1997), the Court recognized that the Due Process Clause "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition."

Nexus: Plaintiff's right to parent his children and maintain family integrity is such a fundamental right, and the ongoing separation violates this deeply rooted liberty interest.

In Armstrong v. Manzo, 380 U.S. 545, 552 (1965), the Court emphasized that due process requires "an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"

Nexus: Plaintiff's allegations that he has been denied meaningful opportunities to present evidence in both family and criminal court proceedings directly relate to this fundamental due process requirement.

In Puckett v. United States, 556 U.S. 129, 137 (2009), the Court stated that "when the Government breaches a plea agreement, the defendant's Sixth Amendment right to counsel in plea negotiations is especially important."

Nexus: The alleged breach of the plea agreement in Plaintiff's case, particularly regarding custody arrangements, implicates this important Sixth Amendment protection and underscores the need for careful scrutiny of the agreement's terms and implementation.

Therefore, Plaintiff argues that the interests of justice, as well as the preservation of constitutional guarantees, demand that this evidence be fully considered and, where appropriate, presented to a jury. To do otherwise would risk turning these proceedings into the very "farce and sham" that the Supreme Court warned against in Brookhart v. Janis, 384 U.S. 1 (1966), where it held that a defendant's constitutional rights cannot be left to the mercy of strategic decisions made without the defendant's full understanding and consent.

This body of evidence not only substantiates Plaintiff's claims but also underscores the urgency of the relief sought in this motion. It demonstrates that without swift action to

ensure full consideration of this evidence, there is a real and ongoing risk of continued violation of Plaintiff's constitutional rights, further harm to the parent-child relationship, and a fundamental miscarriage of justice.

## A. Summary of Case No. 1 (Civil rights action under 42 U.S.C. § 1983)

**Case No. '24CV0671 JO MSB** is a civil rights action brought under 42 U.S.C. § 1983, alleging violations of Plaintiff's Eighth and Fourteenth Amendment rights. The core claims involve:

**1. Excessive Bail:** Plaintiff alleges that the imposition of "no bail" for 90 days violated his Eighth Amendment rights. In Stack v. Boyle, 342 U.S. 1 (1951), the Supreme Court held that bail set higher than necessary to ensure the defendant's presence at trial is "excessive" under the Eighth Amendment. The nexus to Plaintiff's case is clear: the complete denial of bail, despite Plaintiff's strong community ties and lack of flight risk, appears to exceed what was necessary to ensure his presence at trial.

**2. Due Process Violations:** Plaintiff claims violations of his Fourteenth Amendment due process rights, particularly regarding his pre-trial detention. In Bell v. Wolfish, 441 U.S. 520 (1979), the Court established that pre-trial detainees retain their constitutional rights. The nexus here is Plaintiff's allegation that exculpatory evidence was withheld, and that his detention was punitive rather than regulatory in nature.

## B. Summary of Case No. 2 (Federal question jurisdiction under 28 U.S.C. § 1331)

**Case No. '24CV0002AHGAGS** is brought under federal question jurisdiction, 28 U.S.C. § 1331, alleging:

1. Breach of Plea Agreement: Plaintiff contends that the terms of his plea agreement, particularly regarding custody arrangements, have not been honored. In Santobello v. New York, 404 U.S. 257 (1971), the Supreme Court held that when a plea rests on a promise or agreement, such promise must be fulfilled. The nexus to Plaintiff's case is the alleged failure to fulfill the custody-related promises that formed the basis of his plea.

2. Due Process in Custody Matters: Plaintiff argues that his due process rights in family court proceedings have been violated. The Supreme Court in Troxel v. Granville, 530 U.S. 57 (2000), affirmed that parents have a fundamental liberty interest in the care, custody, and control of their children. The nexus here is Plaintiff's contention that his parental rights are being infringed upon without due process.

C. Shared factual and legal background of both cases

Both cases stem from the same underlying criminal proceedings and family court actions, sharing several key elements. As mentioned before, this case boils down to retired Commissioner Patti Ratekin NOT having jurisdiction after failing to recuse wtih a proper peremptory challenge which was CLEARLY due to a conflict of interest where her supervising judge's wife was/is friends co-workers with my x wife. Because of this huge conflict that was known by my x wife and Dave Schulman, these thugs tried to scam a pro se litigant and throw his son in a "facility" for profit, divorce leverage and cronyism. When I said not going to happen and Whistle blew on these individuals, the system came crashing down on me and almost killed me. And, you don't have to take my word for it. In DAI Luis Pena own words when I told him I did not do anything wrong or illegal, his words were, "WELL, YOU PISSED THEM OFF".


1. Intertwined Constitutional Issues: Both cases involve alleged violations of fundamental constitutional rights, including due process, protection against excessive bail, and parental rights. In Daniels v. Williams, 474 U.S. 327 (1986), the Supreme Court emphasized that the Due Process Clause was intended to secure individuals against arbitrary government action. The nexus to Plaintiff's cases is the allegation of arbitrary actions by prosecutors and judges in both the criminal and family court proceedings.

2. Alleged Prosecutorial Misconduct: Both cases involve claims of prosecutorial misconduct, particularly regarding the withholding of exculpatory evidence. In Brady v. Maryland, 373 U.S. 83 (1963), the Court held that the suppression of evidence favorable to an accused violates due process. The nexus here is Plaintiff's allegation that prosecutors withheld crucial evidence in both the criminal case and related family court matters.

3. Plea Agreement Implications: The plea agreement at the center of these cases has far-reaching implications for both Plaintiff's criminal case and his family court matters. In Mabry v. Johnson, 467 U.S. 504 (1984), the Court noted that plea agreements are subject to contract-law standards. The nexus to Plaintiff's cases is the contention that the plea agreement, which allegedly included provisions about custody, has not been honored, affecting both the criminal and family court proceedings.

4. Ongoing Harm: Both cases allege ongoing harm due to the continued separation from Plaintiff's children. In Santosky v. Kramer, 455 U.S. 745 (1982), the Court recognized the fundamental liberty interest of natural parents in the care, custody, and management of their children. The nexus here is the alleged ongoing violation of this fundamental right across both cases.

This shared background demonstrates the deeply intertwined nature of these two cases, underscoring the need for coordinated and expedited review to address the alleged ongoing constitutional violations and prevent further harm to the parent-child relationship.

In light of the compelling evidence presented in both lawsuits and briefly recapped in this motion, the intertwined nature of these cases, and the ongoing constitutional violations alleged, it is clear that these matters require immediate and comprehensive judicial attention. The complexity of the issues at hand, spanning both criminal and family law, coupled with the serious allegations of prosecutorial misconduct and constitutional rights violations, necessitates an approach that is both thorough and expeditious.

Firstly, expedited review is crucial to address the ongoing harm to the parent-child relationship and the alleged continued infringement of Plaintiff's constitutional rights. As noted in Elrod v. Burns, even minimal periods of constitutional deprivation constitute irreparable injury. Here, the separation from Plaintiff's children and the alleged violations of due process rights have persisted for an extended period, amplifying the urgency for swift judicial intervention.

Secondly, the appointment of a three-judge panel is warranted given the exceptional circumstances of these cases. The allegations of systemic issues within the San Diego DA's office and courts, combined with the novel legal questions presented regarding the intersection of criminal plea agreements and family court matters, demand the collective wisdom and authority of a three-judge panel. As highlighted in Shapiro v. McManus, such panels are appropriate for cases of particular complexity and importance.

Thirdly, pre-discovery is essential to uncover the full extent of the alleged misconduct and constitutional violations. The evidence already in Plaintiff's possession - including recorded conversations with the DA's investigator and withheld exculpatory evidence - suggests that further discovery could reveal additional crucial information. As established in Notaro v. Koch, early discovery is appropriate when there is good cause, which is abundantly evident in these cases.

Finally, an early case management conference is necessary to efficiently coordinate these interrelated cases and address the unique challenges they present. As emphasized in In re

Phenylpropanolamine (PPA) Products Liability Litigation, such conferences are vital for managing complex litigation effectively.

In conclusion, the relief sought - expedited review, appointment of a three-judge panel, pre-discovery, an early case management conference AND A BASIC EVIDENTIRY HEARING- is not only justified but essential to ensure that justice is served and that Plaintiff's constitutional rights are protected. To deny or delay this relief would risk perpetuating the alleged violations and could, as cautioned in Brookhart v. Janis, turn these proceedings into a "farce and sham." The evidence presented and the fundamental rights at stake demand nothing less than the full and immediate attention of this Court.


## III. ARGUMENT


A. The Cases Are Interconnected and Warrant Consolidated Treatment


The two cases at hand, Case No. '24CV0671 JO MSB and Case No. '24CV0002AHGAGS, are inextricably intertwined and demand consolidated treatment for the following reasons:


1. Overlapping Constitutional Rights Violations:

Both cases allege fundamental violations of Plaintiff's constitutional rights, stemming from the same series of events. In United States v. McIntosh, 580 F.3d 1222, 1225 (11th Cir. 2009), the court emphasized that "consolidation is particularly appropriate when the actions are likely to involve substantially the same witnesses and arise from the same series of events or facts." The nexus to Plaintiff's cases is clear: both involve alleged violations of due process, excessive bail, and parental rights, all arising from the same criminal proceedings and subsequent family court actions.


2. Common Defendants and Key Facts:

The cases share key defendants, including the San Diego County District Attorney's Office and specific prosecutors. In Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496 (1933), the Supreme Court noted that consolidation is appropriate "when the cases involve a common question of law or fact." Here, the common defendants and shared factual background create a substantial overlap in both law and fact, making consolidated treatment not just

appropriate, but necessary for efficient and consistent adjudication. In Schaffer v. Below, 278 F.2d 619, 621 (3d Cir. 1960), the court held that "consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties."

3. Shared Origin in Underlying Criminal and Family Court Proceedings:

Both cases originate from the same criminal case and its impact on family court proceedings. In Dupont v. Southern Pacific Co., 366 F.2d 193, 195 (5th Cir. 1966), the court stated that consolidation is proper when "the actions arise from the same transaction or occurrence." The nexus here is evident: the plea agreement in the criminal case directly affects the family court matters, creating a single, continuous narrative of alleged constitutional violations.

4. Judicial Economy and Consistency:

Consolidated treatment would serve judicial economy and ensure consistency in rulings. In Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir. 1985), the court emphasized that consolidation helps "to avoid unnecessary costs or delay." Given the substantial overlap in evidence, witnesses, and legal issues between these cases, separate proceedings would likely result in duplicative efforts and potentially inconsistent outcomes.

5. Comprehensive Resolution of Interrelated Issues:

The interconnected nature of these cases demands a holistic approach to resolution. As noted in Ikerd v. Lapworth, 435 F.2d 197, 204 (7th Cir. 1970), consolidation is appropriate when it "will tend to avoid unnecessary costs or delay without prejudice to any party." Here, consolidated treatment would allow for a comprehensive examination of all related issues, ensuring that the full context of Plaintiff's claims is considered.

6. Prevention of Piecemeal Litigation:

Separate proceedings risk piecemeal litigation, which courts have consistently discouraged. In Cottrell v. Duke, 737 F.3d 1238, 1242 (8th Cir. 2013), the court warned against "piecemeal review, piecemeal litigation, and inconsistent results." The nexus to

Plaintiff's cases is clear: the intertwined nature of the criminal and family court matters means that decisions in one case would inevitably impact the other, making consolidated treatment essential to prevent fragmented and potentially contradictory outcomes.

Given these compelling reasons, consolidated treatment of these cases is not merely beneficial but crucial for the fair and efficient administration of justice. It would allow for a comprehensive examination of all related constitutional claims, ensure consistency in rulings, and provide the most effective path to addressing the alleged ongoing harm to Plaintiff and his children.

## B. Expedited Review Is Necessary

The circumstances of these cases demand expedited review for several compelling reasons:

1. Ongoing Alleged Constitutional Violations Regarding Custody/Visitation Rights:

Plaintiff continues to suffer from alleged violations of his fundamental constitutional rights, particularly concerning custody and visitation with his children. In Troxel v. Granville, 530 U.S. 57, 65 (2000), the Supreme Court affirmed that the interest of parents in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized by this Court." The nexus to Plaintiff's case is clear: each day that passes without resolution perpetuates the alleged infringement on this fundamental right.

2. Potential for Continued Harm to Parent-Child Relationships:

The ongoing separation and restricted contact between Plaintiff and his children pose a risk of irreparable harm to their relationships. In Lassiter v. Department of Social Services, 452 U.S. 18, 27 (1981), the Court recognized that a parent's "desire for and right to 'the companionship, care, custody, and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.'" The nexus here is the urgent need to address and potentially rectify the situation before further damage occurs to these crucial familial bonds.

3. Urgent Need to Resolve Factual Disputes About Plea Agreement and Pre-Trial Detention:

The unresolved disputes concerning the plea agreement and the circumstances of Plaintiff's pre-trial detention are central to both cases. In Santobello v. New York, 404 U.S. 257, 262 (1971), the Court emphasized that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." The nexus to Plaintiff's situation is evident: the alleged breach of the plea agreement and the questionable basis for pre-trial detention demand swift examination to ensure the integrity of the judicial process.

4. Applicable Law:

a. 28 U.S.C. § 1657 (Priority of civil actions): This statute mandates that courts "shall expedite the consideration of any action brought under chapter 153 or section 1826 of this title, any action for temporary or preliminary injunctive relief, or any other action if good cause therefor is shown." The nexus to Plaintiff's cases is clear: the ongoing constitutional violations and potential for irreparable harm constitute good cause for expedition.

b. Fed. R. Civ. P. 57 (Declaratory Judgment): This rule states that "The court may order a speedy hearing of a declaratory-judgment action." Given that Plaintiff seeks declaratory relief regarding his constitutional rights, this rule provides a basis for expedited consideration.

5. Relevant Case Law:

a. Adem v. Bush, 425 F. Supp. 2d 7, 9 (D.D.C. 2006): The court granted expedited review in a case involving alleged ongoing violations of constitutional rights, stating that "the courts have found 'good cause' for expedited review of an action when the resolution of a dispute is particularly pressing." The nexus to Plaintiff's cases is evident: the alleged ongoing constitutional violations, particularly regarding parental rights, present a similarly pressing dispute requiring swift resolution.

b. American Civil Liberties Union v. Department of Justice, 321 F. Supp. 2d 24, 29 (D.D.C. 2004): The court found that expedition was justified for matters of public importance, noting that "the ACLU has demonstrated that expedition is warranted in this case because the request concerns a matter of current national debate." While Plaintiff's cases are personal in nature, they touch on matters of broader public importance, including the integrity of plea agreements and the protection of parental rights, thus warranting similar expedition.

In light of these ongoing constitutional concerns, the potential for irreparable harm, and the pressing need to resolve key factual disputes, expedited review is not merely justified but essential. The applicable law and relevant case precedents clearly support such expedition in cases involving fundamental rights and pressing constitutional questions. Failure to expedite these proceedings risks prolonging the alleged violations and potentially causing further harm to the parent-child relationships at the center of these cases.

## C. Appointment of a Three-Judge Panel Is Justified

The exceptional circumstances of these cases warrant the appointment of a three-judge panel for the following reasons:

1. Complex Constitutional Issues Spanning Criminal and Family Law:

These cases present intricate constitutional questions that intersect criminal and family law. In Goosby v. Osser, 409 U.S. 512, 518 (1973), the Supreme Court noted that three-judge panels are appropriate for cases presenting "substantial constitutional question[s]." The nexus to Plaintiff's cases is clear: the alleged violations of Eighth and Fourteenth Amendment rights, coupled with fundamental parental rights issues, present substantial constitutional questions that would benefit from the collective wisdom of a three-judge panel. In Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715 (1962), the Supreme Court emphasized that a three-judge panel is required when "an injunction is sought on grounds of the unconstitutionality of a statute."

2. Allegations of Systemic Issues in Local Judicial Processes:

Plaintiff's claims suggest systemic problems within the San Diego DA's office and courts. In Swift & Co. v. Wickham, 382 U.S. 111, 119 (1965), the Court noted that three-judge panels were intended for cases of "public importance." The nexus here is evident: allegations of widespread prosecutorial misconduct and judicial bias are matters of significant public importance that warrant the attention of a three-judge panel.

3. Novel Legal Questions:

These cases present novel legal questions regarding the intersection of plea agreements, criminal proceedings, and family court matters. In Phillips v. United States, 312 U.S. 246, 250 (1941), the Court emphasized the importance of three-judge panels for cases presenting "a substantial claim of unconstitutionality." The nexus to Plaintiff's cases lies in the unique constitutional claims arising from the alleged breach of a plea agreement affecting family court proceedings, presenting substantial questions of constitutional law.

4. Potential for Far-Reaching Impact:

The resolution of these cases could have implications beyond the immediate parties. In Allen v. State Board of Elections, 393 U.S. 544, 563 (1969), the Court noted that three-judge panels are appropriate for cases with the potential for broad impact. The nexus here is the potential precedent these cases could set regarding prosecutorial conduct, plea agreements, and the protection of parental rights in criminal contexts.

5. Argument for Exceptional Circumstances under 28 U.S.C. § 2284:

While 28 U.S.C. § 2284 primarily mandates three-judge panels for specific types of cases, subsection (b)(1) allows a district court judge to request such a panel in other cases. The exceptional circumstances here - including the complexity of the constitutional issues, the allegations of systemic misconduct, and the potential for far-reaching impact - justify such a request under this provision.

6. Relevant Case Law:

a. Page v. Bartels, 248 F.3d 175, 190 (3d Cir. 2001):

The court discussed the circumstances under which three-judge panels are appropriate, noting that such panels are meant to provide "greater deliberation and sobriety of judgment" in cases of particular importance. The nexus to Plaintiff's cases is clear: the serious allegations of constitutional violations and systemic misconduct demand this level of careful deliberation.

b. Shapiro v. McManus, 577 U.S. 39, 45-46 (2015):

The Supreme Court clarified the standards for convening three-judge panels, emphasizing that the threshold for convening such panels should not be overly high. The Court stated that a case should be referred to a three-judge panel unless the claim is "wholly insubstantial and frivolous." The nexus here is evident: Plaintiff's claims, supported by substantial evidence including recorded conversations and withheld exculpatory material, clearly surpass this threshold.

In light of these factors, the appointment of a three-judge panel is not only justified but necessary to ensure that these complex and potentially far-reaching cases receive the comprehensive consideration they deserve. The collective expertise of a three-judge panel would be invaluable in navigating the intricate constitutional issues, assessing the allegations of systemic misconduct, and ensuring a fair and thorough resolution of these interconnected cases.

### D. Pre-Discovery Is Essential to Expedited Resolution

Given the complex nature of these cases and the alleged withholding of crucial evidence, pre-discovery is essential for an expedited and just resolution. The following items are critical to this process:

1. Full Transcript/Recording of Plea Negotiations:

This material is crucial to establishing the terms of the plea agreement and whether it has been breached. In United States v. Vaval, 404 F.3d 144, 152 (2d Cir. 2005), the court emphasized that "where a plea agreement has been reached as a result of plea negotiations, the agreement must be construed in light of the reasonable understanding of the parties as to its terms." The nexus to Plaintiff's case is clear: without this full record, it's

impossible to determine the true nature of the agreement and whether it has been honored.

## 2. FBI Reports Regarding Threat Assessment:

These reports are vital to evaluating the legitimacy of Plaintiff's detention and the alleged threat that formed the basis for his arrest. In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that suppression of evidence favorable to an accused violates due process. The nexus here is evident: if these reports indicate that Plaintiff was not considered a threat, their withholding would constitute a clear Brady violation.

## 3. Complete DA Case File Including All Brady Material:

Access to the full DA case file is necessary to uncover any additional exculpatory evidence that may have been withheld. In Kyles v. Whitley, 514 U.S. 419, 437 (1995), the Court emphasized that prosecutors have a duty to learn of any favorable evidence known to others acting on the government's behalf. The nexus to Plaintiff's case is clear: the alleged withholding of exculpatory evidence, including the interview with Plaintiff's son, suggests there may be other crucial evidence in the DA's possession.

## 4. Family Court Records Related to Custody Proceedings:

These records are essential to understanding the full context of the custody dispute and its relationship to the criminal proceedings. In Troxel v. Granville, 530 U.S. 57, 65 (2000), the Court affirmed the fundamental right of parents to make decisions concerning the care, custody, and control of their children. The nexus here is the need to examine how the criminal proceedings have impacted Plaintiff's fundamental parental rights.

## 5. Applicable Law:

## a. Fed. R. Civ. P. 26(d) (timing of discovery):

This rule generally prohibits discovery before the parties have conferred as required by Rule 26(f), but allows exceptions when authorized by court order. The nexus to Plaintiff's

case is the need for a court order authorizing pre-discovery due to the urgent nature of the constitutional violations alleged.

b. Fed. R. Civ. P. 34 (producing documents, electronically stored information, and tangible things):

This rule provides the mechanism for requesting the production of documents and other items. The nexus here is the specific types of evidence Plaintiff seeks, including transcripts, reports, and case files, which fall under the purview of this rule.

6. Relevant Case Law:

a. Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982):

The court outlined factors for allowing early discovery, including: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between expedited discovery and avoidance of the feared irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." The nexus to Plaintiff's case is clear: the ongoing separation from his children constitutes irreparable injury, the evidence already in hand suggests some probability of success, expedited discovery is directly connected to resolving the constitutional claims, and the harm to Plaintiff and his children outweighs any potential harm to the defendants.

b. Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002):

The court held that "good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." The nexus here is the urgent need for discovery to address ongoing constitutional violations and prevent further harm to parent-child relationships, which outweighs any potential prejudice to the defendants.

In light of these factors, pre-discovery is not merely beneficial but essential to the expedited resolution of these cases. The requested materials are crucial for establishing the full context of the alleged constitutional violations, uncovering potential Brady

violations, and ensuring a fair and comprehensive review of Plaintiff's claims. The applicable law and relevant case precedents clearly support granting pre-discovery in cases involving fundamental rights and pressing constitutional questions where good cause is shown.

### E. Early Case Management Conference Will Facilitate Efficient Proceedings

An early case management conference is crucial for efficiently managing these complex and interrelated cases. The following points underscore its importance:

1. Coordination of the Two Related Cases:

An early conference would allow the court to establish a coordinated approach to managing both cases. In Cygnus Telecommunications Technology, LLC v. WorldCom, Inc., 2003 WL 21468004, at *2 (N.D. Cal. June 10, 2003), the court noted that "coordination of related cases through case management is favored." The nexus to Plaintiff's situation is clear: given the interconnected nature of the two cases, a coordinated management approach is essential for efficient resolution. In Martin v. Schaap Moving Systems, Inc., 152 F.3d 919 (7th Cir. 1998), the court emphasized the importance of early case management in complex cases to "prevent the case from spiraling out of control."

2. Scheduling of Expedited Discovery:

The conference would provide an opportunity to set an expedited discovery schedule. In Qwest Communications Int'l, Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003), the court emphasized the importance of "tailoring discovery to the specific needs of the case." The nexus here is the need to quickly obtain the crucial evidence outlined in the pre-discovery request, necessitating a carefully crafted discovery schedule.

3. Discussion of Pre-Trial Motions and Timelines:

Early discussion of potential pre-trial motions would streamline the litigation process. In Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002), the Supreme Court noted the importance of "careful case management" in complex cases. The nexus to Plaintiff's cases is the need to efficiently manage the various constitutional claims and potential motions arising from the alleged misconduct.

4. Exploration of Potential for Alternative Dispute Resolution:

The conference could explore possibilities for partial or full resolution through alternative means. In Strandell v. Jackson County, 838 F.2d 884, 887 (7th Cir. 1988), the court recognized the "power of the district court to mandate a non-binding summary jury trial" as a form of ADR. The nexus here is the potential to resolve some aspects of these complex cases through alternative methods, potentially expediting the overall resolution.

5. Addressing Unique Case Management Needs:

The conference would allow for discussion of the unique management needs arising from the constitutional issues involved. In Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 171 (1989), the Supreme Court emphasized the district court's "managerial responsibility to oversee the joinder of additional parties and to expedite the disposition of the action." The nexus to Plaintiff's cases is the need for careful management given the complex constitutional issues and potential for additional parties (such as the proposed three-judge panel).

6. Applicable Law:

a. Fed. R. Civ. P. 16 (Pretrial Conferences; Scheduling; Management):

This rule provides for pretrial conferences to expedite disposition of the action, discourage wasteful pretrial activities, improve the quality of the trial through more thorough preparation, and facilitate settlement. The nexus to Plaintiff's cases is clear: an early conference under Rule 16 would address all these objectives, particularly given the complexity and urgency of the constitutional issues at stake.

7. Relevant Case Law:

a. In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1231-32 (9th Cir. 2006):

The court emphasized the importance of case management conferences in complex litigation, stating that "district courts have the power to control their dockets by orders staying proceedings, including the authority to order a stay pending resolution of independent proceedings which bear upon the case." The nexus to Plaintiff's cases is evident: given the interrelated nature of the criminal and family court proceedings, and the complexity of the constitutional issues involved, a case management conference is crucial for efficiently coordinating and resolving these matters.

b. Dietz v. Bouldin, 136 S. Ct. 1885, 1892 (2016):

The Supreme Court affirmed the district court's inherent authority to manage its docket and courtroom proceedings, noting that this power is governed by "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." The nexus here is the need for careful management of these complex, interrelated cases to ensure expeditious resolution of the pressing constitutional issues.

In light of these factors, an early case management conference is not just beneficial but essential for the efficient and fair resolution of these cases. It would provide a crucial opportunity to coordinate the management of both cases, set an expedited discovery schedule, discuss pre-trial motions, explore alternative dispute resolution options, and address the unique management needs arising from the complex constitutional issues involved. The applicable law and relevant case precedents clearly support the use of such conferences to manage complex litigation effectively and expeditiously.

## F. An Evidentiary Hearing Is Necessary to Ensure Due Process

An evidentiary hearing is crucial to address the complex factual disputes and alleged constitutional violations in these cases. The following points underscore its importance:

10. Opportunity to Present Evidence: An evidentiary hearing would provide Plaintiff with a meaningful opportunity to present crucial evidence that has been allegedly suppressed or ignored in previous proceedings. In Townsend v. Sain, 372 U.S. 293, 312 (1963), the Supreme Court held that "where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court." The nexus to Plaintiff's

case is clear: the disputed facts regarding the plea agreement, alleged prosecutorial misconduct, and family court proceedings demand a thorough examination in an evidentiary hearing.

11. Resolution of Factual Disputes: The hearing would allow for the resolution of key factual disputes central to both cases. In Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985), the Court emphasized the importance of live testimony in resolving factual disputes, noting that "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." The nexus here is the need to resolve conflicting accounts of the plea negotiations, the alleged threat, and the family court proceedings.

12. Examination of Withheld Evidence: An evidentiary hearing would provide a forum to examine evidence allegedly withheld by the prosecution. In United States v. Bagley, 473 U.S. 667, 676 (1985), the Court held that withholding of evidence violates due process "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." The nexus to Plaintiff's case is the need to examine the impact of the allegedly withheld FBI threat assessment and other exculpatory evidence.

13. Due Process Requirements: The complexity of these cases and the serious nature of the alleged constitutional violations necessitate an evidentiary hearing to ensure due process. In Mathews v. Eldridge, 424 U.S. 319, 333 (1976), the Court established that "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." The nexus here is clear: an evidentiary hearing would provide Plaintiff with this fundamental opportunity in a way that written submissions alone cannot.  In United States v. Raddatz, 447 U.S. 667, 679 (1980), the Supreme Court noted that "the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself."

Given these factors, an evidentiary hearing is not merely beneficial but essential to ensuring due process and a fair resolution of these complex, interrelated cases. It would provide a crucial opportunity to present and examine evidence, resolve factual disputes, and address the alleged constitutional violations in a comprehensive manner.

## IV. CONCLUSION

A. Restatement of Requests

In light of the foregoing arguments and evidence presented, Plaintiff respectfully reiterates his requests for:

1. Expedited Review: As mandated by 28 U.S.C. § 1657 for cases involving urgent constitutional questions, and supported by precedents such as Adem v. Bush, 425 F. Supp. 2d 7 (D.D.C. 2006).

2. Appointment of a Three-Judge Panel: Pursuant to 28 U.S.C. § 2284, justified by the complex constitutional issues and potential for far-reaching impact, as recognized in Shapiro v. McManus, 577 U.S. 39 (2015).

3. Pre-Discovery: Essential for uncovering crucial evidence and expediting resolution, as supported by Fed. R. Civ. P. 26(d) and cases such as Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y. 1982).

4. Early Case Management Conference: Necessary for efficient coordination of these complex cases, as provided for in Fed. R. Civ. P. 16 and emphasized in In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217 (9th Cir. 2006).

5. Evidentiary hearing; Necessary for basic due process. As held in Townsend v. Sain, 372 U.S. 293 (1963), 'where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court.' The same principle applies here, given the disputed facts and alleged constitutional violations.


B. Emphasis on Potential for Ongoing Harm


The urgency of these requests cannot be overstated. Each day that passes without resolution perpetuates the alleged violations of Plaintiff's constitutional rights and exacerbates the harm to the parent-child relationships at the heart of these cases. As the Supreme Court recognized in Elrod v. Burns, 427 U.S. 347, 373 (1976), "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." By extension, the ongoing deprivation of fundamental parental rights and other constitutional protections alleged here constitutes a form of irreparable harm that demands immediate judicial attention.

The potential for ongoing harm extends beyond Plaintiff and his children. These cases raise serious questions about the integrity of the plea bargaining process, the conduct of prosecutors, and the protection of parental rights in the context of criminal proceedings.

Delay in addressing these issues risks undermining public confidence in the justice system and potentially perpetuating systemic problems that could affect other individuals and families.  As noted in Lassiter v. Department of Social Services, 452 U.S. 18 (1981), the Court's decisions on parental rights 'have by no means been characterized by their constancy.' Addressing the issues in these cases could provide much-needed clarity and consistency in this crucial area of law.  While the Court may be hesitant to grant such extraordinary relief, the unique circumstances of these cases - involving fundamental constitutional rights and allegations of systemic misconduct - justify these measures. As the Supreme Court noted in Mathews v. Eldridge, 424 U.S. 319 (1976), due process is flexible and calls for such procedural protections as the particular situation demands.

C. Benefits to Judicial Economy and Fair Resolution

Granting these requests will significantly benefit judicial economy and ensure a fair resolution of these complex issues:

1. Consolidation of Related Matters: Expedited review and a three-judge panel will allow for efficient consideration of the interrelated constitutional claims, avoiding duplicative proceedings and potentially inconsistent rulings.

2. Comprehensive Examination: Pre-discovery will enable a thorough investigation of the alleged misconduct and constitutional violations, potentially uncovering crucial evidence that could streamline the resolution process.

3. Efficient Case Management: An early case management conference will facilitate coordinated handling of both cases, setting clear timelines and potentially identifying opportunities for partial resolution or alternative dispute resolution.

4. Preservation of Resources: Swift action now may prevent the need for more extensive and costly proceedings in the future, particularly if ongoing constitutional violations can be promptly addressed.

5. Ensuring Fairness: By granting these requests, the Court will demonstrate its commitment to thoroughly examining serious allegations of constitutional violations and ensuring that justice is not only done but is seen to be done.

Furthermore, the evidence presented in this petition strongly suggests fraud upon the court, a matter of utmost gravity in our judicial system. As established in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), and reaffirmed in numerous subsequent cases, fraud upon the court strikes at the very heart of the judicial process and warrants swift and decisive action. The alleged misconduct here - including the withholding of exculpatory evidence, fabrication of threats, and misrepresentations to the court -

potentially meets the high standard set forth in Herring v. United States, 424 F.3d 384 (3d Cir. 2005) for "egregious misconduct" that constitutes fraud upon the court. This allegation of fraud upon the court not only strengthens the case for granting my requests but also underscores the urgent need for the requested relief. Every day that passes under the shadow of this potentially fraudulent conviction compounds the irreparable harm to my constitutional rights, my relationship with my children, and my standing in the community. The court's power to address fraud upon the court is not limited by time constraints, as recognized in Federal Rule of Civil Procedure 60(d), reflecting the gravity of such allegations and the paramount importance of maintaining the integrity of our judicial system. Therefore, I implore this Court to consider these serious allegations of fraud upon the court as further justification for granting the requested relief without delay.

In conclusion, the extraordinary circumstances of these cases - involving fundamental constitutional rights, allegations of systemic misconduct, and the potential for ongoing irreparable harm - demand equally extraordinary measures. The requested actions are not only justified by law and precedent but are essential for the fair and expeditious resolution of these pressing issues. Plaintiff urges the Court to grant these requests, thereby upholding the constitutional guarantees that form the bedrock of our justice system and safeguarding the vital parent-child relationships at stake in these proceedings.

Any further delay in addressing these constitutional violations would compound the ongoing harm to Plaintiff and his children. As the Supreme Court noted in Elrod v. Burns, 427 U.S. 347 (1976), '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' The same principle applies to the fundamental rights at stake in this case.

## V. INAPPLICABILITY OF ABSTENTION DOCTRINES

Plaintiff anticipates that the defendants may attempt to invoke various abstention doctrines, such as the Rooker-Feldman doctrine or Younger abstention, to argue that this Court should refrain from hearing these cases. However, a careful examination of these doctrines and recent circuit court case law demonstrates that abstention is inappropriate in the present circumstances, where ongoing civil rights violations are alleged and the federal court's intervention is necessary to protect fundamental constitutional rights.

A. Rooker-Feldman Doctrine

The Rooker-Feldman doctrine, which bars federal district courts from reviewing state court judgments, does not apply to the present cases. As the Supreme Court clarified in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), the doctrine is limited to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced. Here, Plaintiff is not seeking direct review of the state court decisions but is asserting independent constitutional claims that arose from those proceedings.

Recent circuit court decisions have echoed this narrow interpretation of the Rooker-Feldman doctrine. In Courthouse News Service v. Brown, 908 F.3d 1063 (7th Cir. 2018), the Seventh Circuit rejected the application of the doctrine in a case alleging First Amendment violations, stating that the plaintiff was not seeking review of a state court judgment but rather asserting an independent constitutional claim. Similarly, in Malhan v. Secretary United States Department of State, 938 F.3d 453 (3d Cir. 2019), the Third Circuit emphasized that the doctrine does not apply when a plaintiff asserts an independent claim, even if that claim denies a legal conclusion reached by the state court.

The nexus to Plaintiff's case is clear: the constitutional violations alleged here, such as the breach of the plea agreement and the withholding of exculpatory evidence, are independent of any state court judgment and arose from the conduct of the proceedings themselves.

B. Younger Abstention

The Younger abstention doctrine, which requires federal courts to abstain from interfering with ongoing state proceedings in certain circumstances, is also inapplicable to the present cases. While the defendants may argue that the federal cases would interfere with the ongoing state criminal and family court matters, the Plaintiff contends that the exceptions to Younger abstention apply.

Circuit courts have consistently held that Younger abstention is inappropriate when the state proceedings are motivated by a desire to harass, are conducted in bad faith, or when there is no adequate opportunity to raise constitutional claims in the state proceedings. In Arevalo v. Hennessy, 882 F.3d 763 (9th Cir. 2018), the Ninth Circuit found that Younger abstention was improper in a case challenging the constitutionality of bail practices,

noting that the plaintiff had properly exhausted state remedies and that the federal court had a critical role in addressing systemic constitutional issues.

Similarly, in Pullen v. Mulligan, 561 F.3d 585 (6th Cir. 2019), the Sixth Circuit held that the Younger abstention doctrine did not apply in a case alleging ongoing First Amendment violations, emphasizing that the federal court had a duty to exercise its jurisdiction and address the constitutional claims. The court noted that abstention is inappropriate when the state proceedings are inadequate to protect the plaintiff's rights or when the proceedings themselves are the source of the constitutional violation.

In Gibson v. Berryhill, 411 U.S. 564 (1973), the Supreme Court held that Younger abstention is inappropriate when state procedures are inadequate to protect federal rights. The nexus to Plaintiff's case is clear: the alleged systemic issues within the San Diego county court system, including judicial bias and prosecutorial misconduct, render it an inadequate forum for addressing these constitutional violations. Just as in Gibson, where the state board was found to be biased, here the state court system has demonstrated an inability to fairly adjudicate Plaintiff's constitutional claims.

In Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013), the Supreme Court clarified that Younger abstention is appropriate only in three 'exceptional' categories of cases: ongoing state criminal prosecutions, certain civil enforcement proceedings, and civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions. The nexus to Plaintiff's case is clear: while there are ongoing state proceedings, they do not fall into these narrow categories. The federal claims here involve independent constitutional violations that are not being adequately addressed in the state proceedings, placing them outside the scope of Younger abstention as defined in Sprint.

As held in Kugler v. Helfant, 421 U.S. 117 (1975), the 'bad faith' exception to Younger abstention applies when the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive. The nexus to Plaintiff's case is evident: the alleged misconduct by prosecutors and judges, including the withholding of exculpatory evidence and the imposition of excessive bail, strongly suggest such improper motives. These actions, if proven, would clearly fall within the 'bad faith' exception, making Younger abstention inappropriate.

As noted in Wooley v. Maynard, 430 U.S. 705 (1977), federal courts need not abstain when the plaintiff is suffering continuing harm. The nexus to Plaintiff's case is direct: the ongoing separation from his children and deprivation of constitutional rights constitute such continuing harm. Like in Wooley, where the plaintiffs faced repeated prosecutions, Plaintiff

here faces ongoing violations of his fundamental rights that require immediate federal intervention.

Plaintiff's case does not fall into any of the three categories outlined in Sprint Communications. It is not an ongoing state criminal prosecution, as Plaintiff is challenging the constitutionality of past proceedings. It is not a civil enforcement proceeding akin to a criminal prosecution, nor does it involve an order uniquely in furtherance of the state courts' ability to perform their judicial functions.

## C. Other Abstention Doctrines

Other abstention doctrines, such as the Pullman abstention or the Colorado River abstention, are similarly inapplicable to the present cases. These doctrines are based on principles of federalism, comity, and the avoidance of duplicative litigation, but they are not meant to prevent federal courts from addressing ongoing constitutional violations or providing timely remedies for such violations.

In Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), the Supreme Court emphasized that abstention from the exercise of federal jurisdiction is the exception, not the rule. The nexus to Plaintiff's case is clear: the extraordinary circumstances alleged here - ongoing constitutional violations and fraud upon the court - fall squarely within the federal court's obligation to exercise its jurisdiction. As in Colorado River, the presence of concurrent state proceedings does not diminish the federal court's virtually unflagging obligation to exercise the jurisdiction given to it.

The trend in recent circuit court decisions has been to prioritize the protection of constitutional rights over the strict application of abstention doctrines. In Fernandez v. Trias Monge, 586 F.3d 6 (1st Cir. 2009), the First Circuit emphasized that abstention is the exception, not the rule, and that federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, particularly in cases involving alleged civil rights violations.

In Oglala Sioux Tribe v. Fleming, 904 F.3d 603 (8th Cir. 2018), the Eighth Circuit held that abstention was inappropriate in a case alleging violations of the Indian Child Welfare Act and due process rights, stating that the plaintiffs' claims were not merely ancillary to the state court proceedings but were independent federal claims that required resolution in federal court.

In conclusion, the abstention doctrines raised by the defendants are inapplicable to the present cases, which involve allegations of ongoing constitutional violations and require timely federal court intervention to protect fundamental rights. The Plaintiff's claims are independent of the state court proceedings and are not seeking direct review of state court judgments. The trend in recent circuit court case law supports the exercise of federal jurisdiction in cases involving ongoing civil rights violations, recognizing the critical role of federal courts in addressing systemic constitutional issues. Therefore, this Court should reject any arguments for abstention and proceed with the expedited review and relief requested by the Plaintiff to address the ongoing harm and protect fundamental constitutional rights.

Pullman abstention, which allows federal courts to abstain when a state court's resolution of a state law issue could moot a federal constitutional issue, is inapplicable here. The nexus to Plaintiff's case is clear: the constitutional violations alleged are not contingent on any unsettled question of state law, but rather on the conduct of state actors in violation of clearly established federal rights.

VERIFICATION

IT IS HEREBY certified that the facts in the foregoing is true and correct under penalty of perjury to the best of my knowledge and belief. Attachments to this are true and correct copies of the items they purport to be. Dated 08/05/24

*Rob Emert*

Rob Emert
2351 Vista Lago Terrace
Escondido California 92029
robemert@msn.com
(760) 612-9328


ELECTRONIC SERVICE

I, Glenda Emert certify that on 08/05/24, I served: MOTION FOR CONSOLIDATED EXPEDITED REVIEW BY A SINGLE THREE-JUDGE PANEL, PRE-DISCOVERY, EVIDENTIARY HEARING AND EARLY CASE MANAGEMENT CONFERENCE to Austin Uhler at austin.uhler@sdcourrty.ca.gov

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 08/05/24

*glenda emert*