1  CLAUDIA G. SILVA, County Counsel (SBN 167868)
   By: AUSTIN M. UHLER, Senior Deputy (SBN 319684)
2  Office of County Counsel, County of San Diego
   1600 Pacific Highway, Room 355
3  San Diego, California 92101-2469
   Telephone: (619) 318-7865
4  E-mail: austin.uhler@sdcounty.ca.gov

5
6  Attorneys for Defendants Franciesca D. Balerio (erroneously sued as "Dawn Balerio"),
   Luis Peña, County of San Diego, and Board of Supervisors of the County of San Diego

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  ROBERT EMERT,                    )  No. 3:24-cv-00671-JO-BJC
                                     )
12            Plaintiff,             )  **MEMORANDUM OF POINTS AND**
                                     )  **AUTHORITIES IN SUPPORT OF**
13     v.                            )  **DEFENDANTS' MOTION TO DISMISS**
                                     )
14  SAN DIEGO BOARD OF               )  Date:           February 27, 2025
    SUPERVISORS, COUNTY OF SAN       )  Time:           9:30 a.m.
15  DIEGO, DDA DAWN BALERIO          )  Courtroom:      4C
    ACTING IN HER OFFICIAL           )  District Judge: Hon. Jinsook Ohta
16  CAPACITY, DAI LUIS PENA ACTING   )  Magistrate Judge: Hon. Benjamin J. Cheeks
    IN HIS OFFICIAL CAPACITY,        )  Trial:          None Set
17                                   )
              Defendants.            )
18                                   )
                                     )
19  _____ )

20

21

22

23

24

25

26

27

28

Page

I.    INTRODUCTION ...................................................................................................... 1

II.   SUMMARY OF FACTUAL ALLEGATIONS ...................................................... 2

III.  LEGAL STANDARDS ............................................................................................ 4

      A.    The Court May Freely Weigh Evidence as to its Subject-Matter
            Jurisdiction. .................................................................................................. 4

      B.    The Court Should Dismiss a Complaint If It Fails to State a Plausible Claim
            to Relief. ........................................................................................................ 4

IV.   ARGUMENT ............................................................................................................ 5

      A.    The Court Lacks Subject-Matter Jurisdiction over This Case. ..................... 5

            1.  The *Rooker-Feldman* Doctrine Bars Plaintiff from Pursuing This Case... 5

            2.  Plaintiff Lacks Standing for Injunctive and Declaratory Relief. ............. 7

      B.    The Court Should Dismiss this Action for Failure to State a Claim............... 9

            1.  Defendants Cannot be Liable under Section 1983 for Their Alleged Acts
                in Prosecuting Crime. ............................................................................ 9

                a.  Defendant Balerio Enjoys Absolute Immunity.................................... 9

                b.  Defendant Peña Enjoys Absolute Immunity....................................... 10

                c.  The County and Its Board of Supervisors Cannot Be Held Liable for
                    Acts of the DA's Office in Prosecuting Crime. ................................ 11

            2.  Plaintiff Does Not Plausibly Allege Deprivations of the Constitutional
                Rights Appearing in His Complaint........................................................ 12

                a.  The Eighth Amendment Right to Be Free from Excessive Bail......... 12

                b.  The Fourteenth Amendment Right to Due Process ........................... 13

                c.  The First Amendment Right to Be Free from Retaliation for Protected
                    Speech ................................................................................................ 17

      C.    Leave to Amend Is Not Warranted. ............................................................. 18

V.    CONCLUSION........................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................4, 14

*Benavidez v. County of San Diego*,
  993 F.3d 1134 (9th Cir. 2021) ................................................................... 6

*Chapman v. Houston Welfare Rights Org.*,
  441 U.S. 600 (1979) ................................................................................... 9

*Chodosh v. Saunders*,
  No. 20-1326, 2020 WL 7020303 (C.D. Cal. Nov. 5, 2020).......................... 6

*Chodosh v. Saunders*,
  No. 20-56252, 2021 U.S. App. WL 5985041 (9th Cir. Dec. 16, 2021)......................... 7

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................... 8

*Cooper v. Ramos*,
  704 F.3d 772 (9th Cir. 2012) ..................................................................... 6

*Devereaux v. Abbey*,
  263 F.3d 1070 (9th Cir. 2001)............................................................... 15, 16

*Dias v. City and County of Denver*,
  567 F.3d 1169 (10th Cir. 2009) ................................................................ 8

*Dubinka v. Judges of the Super. Ct.*,
  23 F.3d 218 (9th Cir. 1994) ....................................................................... 5

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ..................................................................................... 5

*Estelle v. Gamble*,
  429 U.S. 97 (1976) ..................................................................................... 5

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005) ................................................................................... 5

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................................. 18

*Galen v. County of Los Angeles*,
  477 F.3d 652 (9th Cir. 2007) ................................................................... 12

*Gomez v. Toledo*,
  446 U.S. 635 (1980) ................................................................................... 9

*Gruntz v. County of Los Angeles (In re Gruntz)*,
  202 F.3d 1074 (9th Cir. 2000) ................................................................... 6

24cv00671

Page(s)

*Hartman v. Moore,*
547 U.S. 250 (2006) .................................................. 18

*Heck v. Humphrey,*
512 U.S. 477 (1994) .................................... 2, 5, 15, 16

*Imbler v. Pachtman,*
424 U.S. 409 (1976) ..................................................... 9

*Jackson v. Barnes,*
749 F.3d 755 (9th Cir. 2014) .................................. 9, 11

*Kroessler v. CVS Health Corp.,*
977 F.3d 803 (9th Cir. 2020) .................................... 18

*Los Angeles v. Lyons,*
461 U.S. 95 (1983) ....................................................... 8

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ..................................................... 7

*Masody v. Klopot,*
No. 14-4562, 2015 WL 1264852 (N.D. Cal. Mar. 19, 2015) ................ 16

*McMillian v. Monroe County Alabama,*
520 U.S. 781 (1997) ................................................... 11

*Mecinas v. Hobbs,*
30 F.4th 890 (9th Cir. 2022) ........................................ 4

*Morrissey v. Brewer,*
408 U.S. 471 (1972) ................................................... 14

*Nieves v. Bartlett,*
587 U.S. 391 (2019) ................................................... 18

*Noel v. Hall,*
341 F.3d 1148 (9th Cir. 2003) ...................................... 6

*O'Shea v. Littleton,*
414 U.S. 488 (1974) ..................................................... 8

*Parker v. Grand Hyatt Hotel,*
124 F. Supp. 2d 79 (D.D.C. 2000) .................................. 9

*Pennzoil Co. v. Texaco, Inc.,*
481 U.S. 1 (1987) ......................................................... 6

*People v. Grever,*
211 Cal. App. 3d Supp. 1 (1989) .................................. 17

*People v. Jo,*
15 Cal. App. 5th 1128 (2017) ...................................... 17

iv

*People v. Moore,*
67 Cal. App. 2d 789 (1945) ................................................................. 17

*Rehberg v. Paulk,*
566 U.S. 356 (2012) ......................................................................... 10

*Reiner v. Graiwer,*
No. 15-7577, 2015 WL 9999191 (C.D. Cal. Nov. 25, 2015) ...................... 7

*Rosati v. Igbinoso,*
791 F.3d 1037 (9th Cir. 2015) ............................................................ 18

*Safe Air for Everyone v. Meyer,*
373 F.3d 1035 (9th Cir. 2004) ............................................................ 4

*Skinner v. Switzer,*
562 U.S. 521 (2011) ......................................................................... 15

*Sommer v. United States,*
713 F. Supp. 2d 1191 (S.D. Cal. 2010) ................................................ 16

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) ......................................................................... 8

*Starr v. Baca,*
652 F.3d 1202 (9th Cir. 2011) ............................................................ 5

*Tatum v. Moody,*
768 F.3d 806 (9th Cir. 2014) ........................................................ 10, 17

*United States v. Salerno,*
481 U.S. 739 (1987) ......................................................................... 14

*Van de Kamp v. Goldstein,*
555 U.S. 335 (2009) ......................................................................... 9

*Warth v. Seldin,*
422 U.S. 490 (1975) ......................................................................... 8

*Weiner v. San Diego County,*
210 F.3d 1025 (9th Cir. 2000) ...................................................... 11, 12

*Wilkinson v. Austin,*
545 U.S. 209 (2005) ......................................................................... 14

## Statutes

42 U.S.C. § 1983 .......................................................................*passim*

Cal. Gov't Code § 25303 ................................................................. 12

Cal. Penal Code § 278 .................................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

Cal. Penal Code § 278.5 ........................................................................ 1, 3, 12

Cal. Penal Code § 279.5 ............................................................................ 13, 15

Cal. Penal Code § 422 .................................................................................. 14

**<u>Rules</u>**

Fed. Rule of Civil Procedure 12(b)(1) ............................................................ 4

Fed. Rule of Civil Procedure 12(b)(6) ............................................................ 4

**<u>Other</u>**

Cal. Const. Art. I, § 12(c) ............................................................................. 12

U.S. Const. Art. III, § 1 ................................................................................. 7

U.S. Const. Amd. VIII ................................................................................. 12

24cv00671

# I. INTRODUCTION

On April 4, 2023, Plaintiff Robert Emert pleaded guilty to felony child abduction in violation of section 278.5 of the California Penal Code, which makes it a crime to take, keep, or conceal a child and maliciously deprive the child's lawful custodian of the right to custody. As Plaintiff's allegations make clear, the guilty plea followed his criminal prosecution for refusing to follow custody orders that were issued in what he believes were fundamentally unfair state-court divorce proceedings.[1] Plaintiff has to date filed at least ten independent civil actions or petitions in various courts challenging aspects of his family and criminal cases.[2] He has also filed twelve direct appeals from the family and criminal cases. *See* Defendants' Request for Judicial Notice ("RJN"), Ex. 1.

The "focus of this lawsuit," however, "is solely on [his] unconstitutional pre-trial detention based on a fabricated threat." Dkt. 1, Complaint at 3. He alleges that three of his constitutional rights were violated—his Eighth Amendment right against excessive bail, his Fourteenth Amendment right to due process, and his First Amendment right to be free from retaliation for exercising his free-speech rights—when two members of the San Diego County District Attorney's Office (the "DA's Office") allegedly "set Plaintiff's bail at 'no bail,' despite the lack of a credible threat or any evidence supporting the need" to deny bail. Complaint at 62. And Plaintiff alleges that the County and its

///

---

[1] The marriage-dissolution case is case number 19FL010852N, and the criminal case is case number SCD297230; both cases were filed in the San Diego Superior Court. *See* Dkt. 1, Complaint at 1.

[2] The others are: *Emert v. Ratekin*, No. 3:21-cv-01570-BTM-AHG (S.D. Cal. compl. filed Sept. 7, 2021);
*Emert v. Vena*, No. 3:23-cv-00230-RSH-AHG (S.D. Cal. compl. filed Feb. 7, 2023);
*Emert v. San Diego Superior Ct.*, No. 3:23-cv-01723-BAS-MSB (S.D. Cal. compl. filed Sept. 18, 2023);
*Emert v. California*, No. 3:23-cv-02318-JES-VET (S.D. Cal. compl. filed Dec. 20, 2023);
*Emert v. Schuck*, No. 3:24-cv-00002-AGS-AHG (S.D. Cal. compl. filed Jan. 2, 2024);
*In re Emert*, No. S284407 (Cal. Supreme Court, pet. filed Apr. 2, 2024);
*Emert v. San Diego Superior Ct.*, No. 3:24-cv-00924-LL-MSB (S.D. Cal. compl. filed May 30, 2024);
*Emert v. CA 4/1 (Schuck)*, No. S2877030 (Cal. Supreme Court, pet. filed Sept. 23, 2024);
*Emert v. Cal. Dep't of Child Supp. Servs.*, No. 3:24-cv-02072-CAB-JLB (S.D. Cal. removal filed Nov. 4, 2024).

Board of Supervisors also violated his rights by failing to train, supervise, or prevent these two members of the DA's Office from engaging in the alleged misconduct.

Initially, this Court lacks subject-matter jurisdiction over this case. Plaintiff asks this Court to pass judgment upon the legality of his pretrial detention. However, the *Rooker-Feldman* doctrine establishes that federal district courts are without jurisdiction in section 1983 cases to review the correctness of state-court judgments and constitutional issues inextricably intertwined with the correctness of state-court judgments.

Plaintiff's allegations also fail to state a section 1983 claim against Defendants. Defendants enjoy absolute immunity for acts taken in prosecuting a criminal case—such as arguing that bail should be denied or offering testimony to support the argument that bail should be denied—the acts on which this lawsuit solely focuses. To the extent Plaintiff wishes to broaden the lawsuit's focus to encompass alleged fabrication or withholding of evidence, the claim is not cognizable under *Heck v. Humphrey*, because the conviction entered upon his guilty plea has not been overturned or invalidated. Finally, Plaintiff fails to allege facts plausibly showing that any of his asserted constitutional rights were violated; his allegations show that his pretrial detention was lawfully based on valid state interests and that he had adequate procedural protections.

Because it is absolutely clear that the Complaint cannot be amended to remedy the issues raised in this motion, the Court should dismiss the Complaint, deny leave to amend, and close this case.

## II. SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff Robert Emert alleges that Defendant Deputy District Attorney Franciesca Balerio and Defendant District Attorney Investigator Luis Peña engaged in a wide-ranging conspiracy with corrupt state-court judges and "divorce court insiders" to violate his constitutional rights. Complaint at 11. He alleges that Defendants Balerio and Peña violated his constitutional rights by improperly prosecuting him and causing him to be detained without bail for approximately 90 days on a felony charge of child abduction. *See id.* at 3. He specifically alleges:

In or around September 2019, Plaintiff and his ex-wife divorced, with custody of their son eventually stabilizing in a "50/50 arrangement" between him and his ex-wife. *Id.* at 14.

In or around February 2021, Commissioner Patti Ratekin took over the marriage-dissolution case and "stripped [Plaintiff] of all legal parental rights without clear and convincing evidence." *Id.* at 16.

In early October 2021, he "took full physical custody" of his then 15-year-old son. *Id.* at 11. "Given [his son's] increasingly desperate pleas to escape the escalating emotional abuse by his mother," he "took custody . . . for his [son's] protection and well-being." *Id.* at 20. He quickly notified several authorities, such as the police, the DA's Office, Child Protective Services, the Department of Justice, and the family court about taking emergency custody of his son. *See id.* at 11, 20.

Shortly thereafter, Judge Lorna Alknse "has a tantrum . . . and takes everything from [Plaintiff] she possibl[y] can . . . railroad[ing] orders through" in four hearings and a trial, including approving a motion in limine "so encompassing that an appeal would be futile." *Id.* at 21-22. Later that month, Plaintiff emailed a "public corruption complaint" to the District Attorney "indicating [he] ha[s] custody of [his son] and why." *Id.* at 22.

In September 2022, Plaintiff spoke with Defendant Peña regarding the District Attorney's investigation of his possible violation of California Penal Code section 278.5. *See id.* at 24. Defendant Peña "generally indicated in the call that as long as [Plaintiff] kept trying to correct in family court, [Plaintiff] would not have criminal charges." *Id.* at 25.

In December 2022, Plaintiff called the FBI to follow up on his public corruption complaint. *See id.* at 12. Although he expressly denies making threats, he stated on the call that "[t]here's going to be a huge . . . problem," and that he "know[s] [his] Second Amendment right." *Id.* at 4.

///

///

In January 2023, Plaintiff was arrested and kept in jail for 90 days without bail. *See id.* at 11, 47. Defendant Balerio "took one line out of context" from the "call [he] made to the FBI" and "misrepresented to the court the contents of the actual call." *Id.* at 11.

In April 2023, after over 90 days in jail, Plaintiff "was coerced into signing a plea agreement with the threat of continued jail time." *Id.* at 54.

Plaintiff was sentenced to and "remain[s] on a restrictive 3-year probation term." *Emert v. California*, No. 3:23-cv-02318-JES-VET (S.D. Cal. Apr. 4, 2024), Dkt. 4 at 2.

### III.    LEGAL STANDARDS

#### A.    The Court May Freely Weigh Evidence as to its Subject-Matter Jurisdiction.

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks subject-matter jurisdiction. A Rule 12(b)(1) challenge may be either facial or factual. *See Mecinas v. Hobbs*, 30 F.4th 890, 895-96 (9th Cir. 2022). A facial attack challenges subject-matter jurisdiction on the basis that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In this context, all allegations of material fact are taken as true and construed in favor of the complaining party. *See Mecinas*, 30 F.4th at 895-96. In contrast, when a court evaluates a factual challenge to jurisdiction, the court need not take the allegations as true. *See Safe Air for Everyone*, 373 F.3d at 1039 ("In resolving a factual attack . . . the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.").

#### B.    The Court Should Dismiss a Complaint If It Fails to State a Plausible Claim to Relief.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ///

(internal quotation marks and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But in any event, a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and those allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV. ARGUMENT

### A. The Court Lacks Subject-Matter Jurisdiction over This Case.

As one treatise observes, "[d]isappointed state court litigants sometimes attempt to overturn state court rulings in federal court § 1983 actions. These endeavors are frequently doomed to failure because they will likely generate a host of non-merits defenses." Martin A. Schwartz, Section 1983 Litigation: Claims and Defenses, Vol. I, § 1.07.1[A] at p. 1-88.6 (4th Ed. 2021 supplement). These defenses include: "the *Rooker-Feldman* doctrine, which generally bars a federal district court from reviewing a state court judgment," and "the doctrine of *Heck v. Humphrey*, which renders a § 1983 claim calling into question the validity of a state court conviction . . . non-cognizable unless and until . . . [it] has been overturned." *Id.* at pp. 1-88.6 to 1-88.6-1 (footnotes omitted). The *Rooker-Feldman* doctrine is addressed here and *Heck* doctrine further below.

### 1. The *Rooker-Feldman* Doctrine Bars Plaintiff from Pursuing This Case.

The *Rooker-Feldman* doctrine bars a state-court loser from pursuing a federal action to review and reverse an allegedly injurious state-court decision. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It applies even when the challenge to the state court decision involves federal constitutional issues. *See Dubinka v. Judges of the Super. Ct.*, 23 F.3d 218, 221 (9th Cir. 1994). "At its core," it "stands for the

5

unremarkable proposition that federal district courts are courts of original, not appellate jurisdiction." *In re Gruntz*, 202 F.3d 1074, 1078 (9th Cir. 2000). It "applies to both final and interlocutory decisions from a state court." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1143 (9th Cir. 2021).

The doctrine applies not only to actions explicitly styled as direct appeals, but also to the "de facto equivalent" of such appeals. *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003). "Once a federal plaintiff seeks to bring a forbidden de facto appeal . . . that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought." *Id.* at 1158. Claims are "inextricably intertwined" where "the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012) (citation and internal quotation marks omitted). Put differently, a federal claim is inextricably intertwined if it "succeeds only to the extent that the state court wrongly decided the issues before it." *Id.* (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

This doctrine bars Plaintiff from pursuing this action. Plaintiff alleges that the state-court detention order was illegal and unconstitutional. He introduces this action as one seeking damages for violation of his rights "specifically focusing on his illegal 90-day pre-trial detention" and states that its "focus . . . is solely on [his] unconstitutional pre-trial detention based on a fabricated threat." Complaint at 3. His claims against Defendants succeed only to the extent that the state court wrongly decided the issue of detaining him without bail.

Plaintiff has argued in other cases that his federal claims qualify for an exception to this doctrine because the decisions of the state courts were the product of extrinsic fraud. This argument is mistaken. Federal courts decline to apply the extrinsic-fraud exception to lawsuits alleging that judges conspired with private actors in violating the plaintiff's rights. *See Chodosh v. Saunders*, No. 20-1326, 2020 WL 7020303 at *2 (C.D. Cal. Nov. 5, 2020) ("Plaintiff's allegations do not merely allege a wrongful act by

Defendants but a widespread conspiracy between Defendants and members of the state judiciary which led to alleged legal errors by the state court. This is not extrinsic fraud."), *aff'd* No. 20-56252, 2021 WL 5985041, at *1 (9th Cir. 2021); *Reiner v. Graiwer*, No. 15-7577, 2015 WL 9999191, at *8-9 (C.D. Cal. Nov. 25, 2015) (applying *Rooker-Feldman* where "[p]laintiff's injuries were allegedly caused by both a wrongful adjudicative decision and private defendants who conspired with state actors to obtain it."), *report and recommendation adopted*, No. 15-7577, 2016 WL 455418 (C.D. Cal. Feb. 4, 2016).

Plaintiff extensively alleges that state-court judges conspired with divorce-court insiders and others to violate his rights. *See, e.g.,* Complaint at 21 (alleging that Judge Lorna Alknse "ha[d] a tantrum . . . and t[ook] everything from [him] she possibl[y] c[ould] . . . [and] railroad[ed] orders through shortly before she retire[d]"), 22 (alleging belief that Commissioner Patti Ratekin "[wa]s illegally abusing the system for federal title 4 funding"), 22 (alleging Presiding Judge Michael Smyth "[wa]s trying to cover up a mess that the Vista Court House has illegally made"), 51 (alleging Judge Alana Robinson's denial of his ex parte application was "just more denial of rights under color of law [and] obstruction of justice").

Plaintiff also continues to pursue a related federal action in which he has directly sued Commissioner Ratekin, Judge Alksne, and Judge David J. Danielsen (the "Judge responsible for ordering No Bail"), alleging that they conspired with Defendant Peña and others to violate his constitutional rights. *See Emert v. Vena*, No. 3:23-cv-00230-RSH-AHG (S.D. Cal. Feb. 7, 2023), Dkt. 1, Complaint at 5-6; *see also id.*, Dkt. 70 (notice of appeal filed Oct. 1, 2024). These allegations show that the extrinsic-fraud exception does not apply. The *Rooker-Feldman* doctrine bars Plaintiff from pursuing this case.

**2.    Plaintiff Lacks Standing for Injunctive and Declaratory Relief.**

The jurisdiction of federal courts is limited to "Cases" and "Controversies." U.S. Const. art. III, § 1; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). The "core component of standing is an essential and unchanging part of the case-or-controversy requirement." *Lujan*, 504 U.S. at 560. The "irreducible constitutional minimum of

7

standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks and citation omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* At the pleading stage, the plaintiff must "'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Standing to seek injunctive and declaratory relief is analyzed separately from standing to seek retrospective relief. *See Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983). A plaintiff in federal court lacks standing to obtain injunctive or declaratory relief unless he shows a "real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *Id.* at 111 (*O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (to have standing based on future injury, plaintiff's injury must be "*certainly* impending"; an allegation "of *possible* future injury" is insufficient); *accord Dias v. City and County of Denver*, 567 F.3d 1169, 1176 (10th Cir. 2009) (plaintiffs lacked standing to seek prospective relief against prosecution for possession of pit bulls because plaintiffs failed to allege credible threat of prosecution).

Here, Plaintiff has not demonstrated (or even alleged) a realistic probability that he will again be subject to criminal prosecution by Defendants. Plaintiff is "no more entitled to an injunction" prohibiting prosecutorial misconduct or requiring the County and its Board to ensure accountability for prosecutorial misconduct "than any other citizen" of San Diego County. *Lyons*, 461 U.S. at 111. The probability that Plaintiff will again be subject to criminal investigation or prosecution is especially minimal because Plaintiff alleges that his son was "an almost 17-year-old young man" in April 2024. Complaint at 14. When his son turns 18 in a few months, there will be no longer be any custody orders to violate. Accordingly, Plaintiff lacks standing for injunctive and declaratory relief.

///

**B.     The Court Should Dismiss this Action for Failure to State a Claim.**

Plaintiff's lawsuit is "a civil rights action brought under 42 U.S.C. § 1983." Complaint at 3. To state a claim under section 1983, a plaintiff must allege that some person has deprived him of a federal right, and that the person acted under color of state law. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). However, section 1983 "is a procedural device" and "does not, in and of itself, provide any substantive basis for a claim or for relief"; thus, "a [section 1983] plaintiff . . . must allege an independent substantive basis for the claim." *Parker v. Grand Hyatt Hotel*, 124 F. Supp. 2d 79, 86 (D.D.C. 2000) (citing *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).

Plaintiff fails to state a claim against Defendants for several reasons. The first set of reasons relates to the broad immunities and narrow liabilities available in the context of criminal prosecution. Defendant Balerio enjoys absolute prosecutorial immunity, Defendant Peña enjoys absolute witness immunity, and Defendants County and its Board cannot be held liable for failing to prevent acts that do not themselves give rise to liability. Defendants County and its Board further cannot be held liable for failing to implement criminal-prosecution policies, which by law they do not control. The second set of reasons relates to the sufficiency of Plaintiff's allegations: he does not plausibly allege having been deprived of any of the constitutional rights asserted in his Complaint.

**1.     Defendants Cannot be Liable under Section 1983 for Their Alleged Acts in Prosecuting Crime.**

**a.     Defendant Balerio Enjoys Absolute Immunity.**

Prosecutors are absolutely immune from suit under section 1983 for acts taken in their official role as prosecutors. *See Imbler v. Pachtman*, 424 U.S. 409 (1976). They are shielded from suit based on acts like their statements at trial, their use of evidence, and their reliance on perjured testimony. *See Jackson v. Barnes*, 749 F.3d 755, 766 (9th Cir. 2014) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 342-43 (2009)). This absolute immunity "accommodate[s] the[ir] special needs" in our system of criminal justice:

9

Because the daily function of a public prosecutor is to bring criminal charges, tort claims . . . could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. Such harassment by unfounded litigation would cause a deflection of the prosecutor's energies from h[er] public duties, and would result in a severe interference with the administration of an important public office. Constant vulnerability to vexatious litigation would give rise to the possibility that [the prosecutor] would shade h[er] decisions instead of exercising the independence of judgment required by h[er] public trust.

*Rehberg v. Paulk*, 566 U.S. 356, 365-66 (2012) (second alteration in original; internal citations and quotation marks omitted).

Defendant Balerio is absolutely immune because she is being sued for acts she allegedly took in the course of criminal proceedings—statements she made, evidence she used—to drive the court's decision to deny bail to Plaintiff. Because these alleged acts are part of her official duties as a public prosecutor, she is absolutely immune from this suit under section 1983 based on them.

### b. Defendant Peña Enjoys Absolute Immunity.

Witnesses who provide sworn testimony in criminal cases before a grand jury, at a preliminary hearing, and at trial are absolutely immune from liability under section 1983. *See Rehberg*, 566 U.S. at 374-75. In *Rehberg*, the Supreme Court held that the chief investigator of a local district attorney's office was entitled to absolute immunity in an action under section 1983 for testimony he gave before a grand jury that resulted in three successive indictments, each of which were later dismissed. *See id.* at 359-60.

Defendant Peña is absolutely immune from liability under section 1983 based on Plaintiff's allegation that he "committed perjury on the arrest warrant to justify Plaintiff's detention." Complaint at 63. He is immune because he is being sued for providing testimony to the state court in connection with criminal proceedings. Admittedly, an investigator can be liable under section 1983 in certain narrow circumstances for concealing highly significant material evidence *from a prosecutor* or making affirmative misrepresentations *to a prosecutor* in a way that encourages the prosecution of a factually innocent person. *See, e.g.*, *Tatum v. Moody*, 768 F.3d 806, 817-20 (9th Cir. 2014). But

here, Plaintiff alleges precisely the opposite: that Defendant Peña had doubts about the wisdom of criminally prosecuting Plaintiff but was told by his supervisors within the DA's Office that "they must move forward." Complaint at 24. Accordingly, Defendant Peña is absolutely immune from liability for providing testimony to justify Plaintiff's detention.

### c. The County and Its Board of Supervisors Cannot Be Held Liable for Acts of the DA's Office in Prosecuting Crime.

Plaintiff's section 1983 claims against the County and its Board fail because these Defendants cannot be held liable for failing to prevent underlying conduct for which the underlying actors are immune. Further, local government bodies can only be liable for an official's conduct where the official had "final policymaking authority" concerning the allegedly unconstitutional acts and "was the policymaker *for* the local governing body" for the purposes of the particular acts. *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000) (emphasis added) (citing *McMillian v. Monroe County Alabama*, 520 U.S. 781, 785 (1997)).

Plaintiff alleges that "Defendants Balerio and Peña . . . were final policymakers" for the County in the areas of "law enforcement and criminal prosecution." Complaint at 60. However, this allegation is not entitled to a presumption of truth because it is contradicted by Plaintiff's other allegations and binding legal authority. First, the relevant policy area is criminal prosecution: Plaintiff alleges that "the focus of this lawsuit is solely on the unconstitutional pre-trial detention," which allegedly took place as part of his criminal prosecution. Complaint at 3, 8. Second, in California, members of district attorneys' offices are not policymakers for their respective counties in matters of criminal prosecution. A district attorney's office "acts as a *state* office with regard to actions taken in its prosecutorial capacity, and is not subject to suit under § 1983." *Jackson*, 749 F.3d at 767 (emphasis added) (affirming dismissal of claim without leave to amend). Indeed, California law specifically provides that the County and its Board do not have legal authority to affect prosecutorial functions. "[A]ny county authority to review a district

attorney's conduct 'shall not be construed to affect the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and district attorney of a county. The board of supervisors shall not . . . obstruct the investigative and prosecutorial function of the district attorney of a county.'" *Weiner*, 210 F.3d at 1029 (quoting Cal. Gov't Code § 25303).

### 2. Plaintiff Does Not Plausibly Allege Deprivations of the Constitutional Rights Appearing in His Complaint.

#### a. The Eighth Amendment Right to Be Free from Excessive Bail

Plaintiff alleges that Defendants violated his right under the Eighth Amendment to be free from excessive bail. *See* Complaint at 61-62. The Eighth Amendment provides that "[e]xcessive bail shall not be required." U.S. Const., amd. VIII. However, "the Excessive Bail Clause does not bar the state from detaining even noncapital arrestees without bail, or from considering interests other than flight prevention in setting bail." *Galen v. County of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007). To determine whether this provision has been violated, courts "look to the valid state interests bail is intended to serve for a particular individual and judge whether bail conditions are excessive for the purpose of achieving those interests." *Id.*

The California Constitution does not require bail in all cases. It provides express exceptions for several categories of cases, including "[f]elony offenses when the facts are evident or the presumption great and the court finds based on clear and convincing evidence that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released." Cal. Const., art. I, § 12(c). The California Penal Code also sets forth certain issues courts must consider in setting bail specifically in child-abduction cases:

> When a person is arrested for an alleged violation of Section 278 or 278.5, the court, in setting bail, shall take into consideration *whether the child has been returned* to the lawful custodian, and if not, shall consider *whether there is an increased risk that the child may not be returned*, or the defendant may flee the jurisdiction, or, by flight or concealment, evade the authority of the court.

24cv00671

Cal. Penal Code § 279.5 (emphasis added).

Plaintiff does not plausibly allege facts stating an excessive-bail claim. Based on the facts he alleges, it is not plausible to infer that his detention was excessive to achieve the valid interests of the State of California in protecting its residents from the risk of violence, enforcing its courts' orders, and preventing parental child abduction. Although he downplays his threatening statements as not "prosecutable" (Complaint at 3), he alleges having disclosed to the FBI in December 2022 that if the state authorities continued insisting that he follow the family court's custody orders, "[t]here's going to be a huge . . . problem," and that Plaintiff "know[s] [his] Second Amendment right." Complaint at 4. Plaintiff also alleged in a related case that the judge who denied him bail cited a letter from Plaintiff's sister that led the judge to believe that Plaintiff was not "prepared to stand down," and that Plaintiff's family felt "they need[ed] to be on alert to notify the authorities if [Plaintiff was] ready to go off again." *Emert v. Vena*, No. 3:23-cv-00230-RSH-AHG (S.D. Cal. Feb. 7, 2023), Dkt. 1, Complaint at 15:13-14 (¶ 45).

Plaintiff also alleges having announced to authorities (via email to attorneys, members of the District Attorney's office, District Attorney Summer Stephan, and San Diego Mayor Todd Gloria) that it was "absurd," "illegal," and "unethical" to expect him to follow the family court's orders under circumstances that he claimed were fundamentally unfair to him. Complaint at 49. Indeed, Plaintiff still alleges that his flouting of custody orders was "legally protecting [his] child" (Complaint at 3). These alleged circumstances show that it was reasonable for state authorities to conclude that, if they had attempted to enforce the court orders and remove Plaintiff's son, they would have run a substantial risk of being shot in the act by Plaintiff.

### b. The Fourteenth Amendment Right to Due Process

Plaintiff alleges that his due-process rights were violated when Defendants Balerio and Peña "fabricated a threat and committed perjury on the arrest warrant . . . despite

knowing that there was no credible threat or probable cause to support Plaintiff's arrest." Complaint at 63. He alleges that his statements did not meet the "legal definition of a credible threat under California Penal Code § 422" because he "repeatedly denied making threats, sought intervention to de-escalate . . . and lacked the specific intent to commit violence." *Id.* He also alleges that Defendants Balerio and Peña withheld critical exculpatory evidence such as transcripts, interviews, and findings that would have shown his "innocence" and that he "was not a threat." *Id.* at 64. He alleges that the conduct of these Defendants "undermined the fairness of the criminal proceedings." *Id.*

"[T]he requirements of due process are 'flexible and cal[l] for such procedural protections as the particular situation demands.'" *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (second alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In upholding the federal Bail Reform Act, which authorized pretrial detention based on an accused's likelihood of future dangerousness, the Supreme Court held that various procedural safeguards, including, among others, a right to counsel, a right to cross-examine adverse witnesses, a clear-and-convincing-evidence standard of proof, and an ultimate determination guided by statutorily enumerated factors and set forth in a written statement of findings and reasons, provided due process. *See United States v. Salerno*, 481 U.S. 739, 752 (1987).

To the extent Plaintiff's due-process claim involves only the pretrial detention discussed above, it fails for the same reasons his excessive-bail claim does: his allegations establish lawful grounds for his pretrial detention. He announced to authorities that he would continue to resist the family court's custody orders—in effect announcing that he would continue to commit the crime of felony child abduction—and that if authorities expected him to comply with those orders, he knew his Second Amendment right. His own alleged conduct presents the "obvious alternative explanation" for Defendants' actions, *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009), compared to which a retaliatory conspiracy driven by divorce-court insiders and aided by state-court judges is not a plausible conclusion.

Moreover, the procedural protections Plaintiff enjoyed in his criminal case were similar to those held sufficient in *Salerno*: Article I, section 12(c) of the California Constitution establishes a clear-and-convincing-evidence standard of proof. It and section 279.5 of the California Penal Code provide factors to guide the court's ultimate bail determination. And Plaintiff was represented by counsel at the hearings where he was ordered detained without bail. *See* RJN, Ex. 2 (represented by public defender D. Lowe at arraignment on Jan. 6, 2023); RJN, Ex. 3 (represented by retained counsel C. Ryan at bail review on Jan. 13, 2023); RJN, Ex. 4 (represented by retained counsel J. Badillo at preliminary examination on Feb. 10, 2023). These hearings afforded Plaintiff a sufficient opportunity to inform the court about the context that he claims Defendants misrepresented to illegally detain him.

On the other hand, to the extent Plaintiff's due-process claim can be construed to extend to other alleged irregularities in his criminal prosecution, such as the alleged fabrication of evidence or failure to disclose exculpatory evidence, the claim is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). Under that doctrine, a section 1983 claim that necessarily undermines the validity of a plaintiff's criminal conviction is not cognizable unless and until the conviction has been overturned or invalidated. Indeed, Plaintiff appears to anticipate the *Heck* doctrine when he twice cites the decision and alleges that his claim "does not challenge the validity of [his] guilty plea, but rather the constitutionality of [his] pre-trial detention." Complaint at 3, 8. However, he misapprehends how the doctrine operates. His section 1983 claim for deliberately fabricating evidence could succeed only by proving that the defendants knew or should have known that the plaintiff was factually innocent but deliberately proceeded to fabricate evidence of guilt. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). His section 1983 claim for withholding exculpatory evidence also, if "successful postconviction," would "necessarily yield[] evidence undermining a conviction." *Skinner v. Switzer*, 562 U.S. 521, 536 (2011); *see also id.* ("*Brady* claims ///

have ranked . . . outside the province of § 1983."). Hence, any claim based on these allegations is barred by the *Heck* doctrine.

Additionally, Plaintiff does not plausibly allege that Defendants engaged in any unconstitutional fabrication or withholding of evidence. Deliberate fabrication of evidence may serve as a basis for a due-process claim where: "(1) Defendants continued their investigation of [a plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076. For example, a plaintiff stated a due-process claim by alleging that investigators "ignored the initial autopsy findings, the inconsistencies in the lab test results, [and] the opinion of several independent forensic toxicologists," all of which indicated that the victim was not poisoned with arsenic. *Sommer v. United States*, 713 F. Supp. 2d 1191, 1199 (S.D. Cal. 2010). The allegations stated a claim because the plaintiff "made specific, non-conclusory allegations that, if proven, would be sufficient to establish that [investigators] continued to investigate [her] despite knowing or having sufficient evidence that . . . [the victim] was not murdered." *Id.* at 1201. In contrast, a plaintiff failed to state a due-process claim where he alleged that his spouse, who accused him of domestic violence, "fooled [investigators] with her convincing allegations against Plaintiff." *Masody v. Klopot*, No. 14-4562, 2015 WL 1264852, at *3 (N.D. Cal. Mar. 19, 2015). Ultimately, the fact that investigators believed the spouse's version of events over his did not suffice to state a due-process claim. *Id.* at *4.

Here, Plaintiff does not allege facts plausibly suggesting that Defendants knew or should have known he was innocent of child abduction or that they used coercive and abusive investigative techniques on him that would be expected to yield false information. *See Devereaux*, 263 F.3d at 1076. At most, Plaintiff alleges that Defendants believed a version of events that differed from his regarding whether it was legally ///

24cv00671

necessary for him to deprive his ex-wife of the right to custody of their son as established by the orders of the state court.

Finally, Plaintiff does not plausibly allege that Defendants withheld exculpatory evidence. For evidence to be "exculpatory," it must generally be favorable to the accused and material to his guilt or innocence. *Tatum v. Moody*, 768 F.3d 806, 820 (9th Cir. 2014). However, to give rise to a due-process claim, the evidence withheld must "not merely [be] material but *strongly* indicative of the plaintiff's innocence." *Id.* (recognizing cognizable claim but emphasizing its narrowness; finding claim arose in case of mistaken identity).

Here, the items Plaintiff alleges Defendants withheld were "the full transcript of the alleged threat . . . [his] son's interview with DDA Balerio . . . and DAI Peña['s] . . . interview with [him] . . . where [Peña] says more than two dozen times in a round about way that the DA should have never taken this case and this case does not belong in criminal court." Complaint at 7. Plaintiff does not plead any facts to show that these items were strongly indicative of his innocence of the crime of child abduction, which has three elements: (1) taking, enticing away, keeping, withholding, or concealing a child (2) who is under the age of 18; and (3) maliciously depriving a lawful custodian of her right to custody. *See People v. Jo*, 15 Cal. App. 5th 1128, 1141 n.2.

Finally, Plaintiff alleges that his minor son repeatedly expressed a preference for remaining with Plaintiff as opposed to Plaintiff's ex-wife. However, under California law, the child's "consent" to remain with the person withholding the child from a lawful custodian is "irrelevant," because "the crime [of child abduction] is committed against the parent, not the child." *People v. Grever*, 211 Cal. App. 3d Supp. 1, 7 (App. Dep't Super. Ct. 1989) (citing *People v. Moore*, 67 Cal. App. 2d 789, 792 (1945)).

       c.    **The First Amendment Right to Be Free from Retaliation for Protected Speech**

Plaintiff also alleges that Defendants acted to retaliate against him for having filed

///

24cv00671

a public corruption complaint against certain judges and having engaged in other "whistleblowing activities." Complaint at 65.

As a general matter, "'the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). In retaliatory prosecution cases, plaintiffs are required to "plead . . . the absence of probable cause for the underlying criminal charge." *Id.* at 400 (citing *Hartman*, 547 U.S. at 256).

Here, however, Plaintiff's allegations defeat his claim. He alleges facts establishing that probable cause existed for the underlying charge of child abduction: he alleges that he told the authorities that he was keeping his son and not returning his son to his ex-wife, and that it was "absurd" to expect him to follow court orders to the contrary. Complaint at 49.

## C. Leave to Amend Is Not Warranted.

A district court should not dismiss a *pro se* complaint without leave to amend unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted). Yet if Plaintiff opposes this motion and stands on his Complaint that is exactly what this Court should do. Plaintiff's allegations and matters subject to judicial notice make it absolutely clear that any amendment would not cure the deficiencies raised above. While there are at least five factors to consider in exercising discretion over whether to grant or deny leave to amend (see *Foman v. Davis*, 371 U.S. 178, 182 (1962)), one of those factors, futility of amendment, "can, by itself, justify the denial of a motion for leave to amend." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (citation omitted). Courts consider amendment futile if "no amendment would allow the complaint to withstand dismissal as a matter of law." *Id.*

Here, it is absolutely clear that Plaintiff can add nothing to establish this Court's jurisdiction over his claims or his standing for injunctive or declaratory relief. It is

24cv00671

equally clear that no new details added by amendment would allow Plaintiff to establish the liability of immune Defendants or state cognizable claims against them. Accordingly, the Court should dismiss the Complaint without leave to amend.

## V.     CONCLUSION

For the reasons above, the Court should grant this motion, dismiss the Complaint without leave to amend, and close this case.

DATED: January 13, 2025          CLAUDIA G. SILVA, County Counsel

                                 By:     s/Austin M. Uhler
                                         AUSTIN M. UHLER, Senior Deputy
                                 Attorneys for Defendants Franciesca D. Balerio,
                                 Luis Peña, County of San Diego, and Board of
                                 Supervisors of the County of San Diego
                                 E-mail: austin.uhler@sdcounty.ca.gov

24cv00671