**ROBERT EMERT**
Respondent, In Pro Per
2351 VISTA LAGO TERRACE
ESCONDIDO, CA 92029
TELEPHONE: 760-612-9328
robemert@msn.com

FILED

MAY 06 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Case No.: 3:24-cv-00671-JO-MSB

Robert Emert

        Plaintiff,

v.

San Diego Board of Supervisors

County of San Diego

DDA Dawn Balerio

DAI Luis Pena

        Defendants.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Hearing Date: TBD
Time:      TBD
Department:  TBD
Judge: Hon. Jinsook Ohta

## Contents

TABLE OF AUTHORITIES ............................................................................2

EXECUTIVE SUMMARY AND SUMMARY OF ARGUMENT .................................6

INTRODUCTION AND PROCEDURAL BACKGROUND .....................................8

LEGAL ARGUMENT ..................................................................................9

I. STANDARD OF REVIEW ..........................................................................9

II. PLAINTIFF HAS STANDING FOR INJUNCTIVE AND DECLARATORY RELIEF ..............10

III. PLAINTIFF'S CLAIMS ARE NOT BARRED BY HECK v. HUMPHREY ...........................12

IV. THE JURISDICTIONAL DEFECT DIRECTLY ESTABLISHES THE ILLEGALITY OF
PLAINTIFF'S PROSECUTION AND DETENTION .................................................14

V. DEFENDANTS' IMMUNITY ARGUMENTS FAIL GIVEN DEMONSTRATED MISCONDUCT
.......................................................................................................18

VI. BOARD OF SUPERVISORS' MUNICIPAL LIABILITY IS WELL-ESTABLISHED ..............20

VII. ABSTENTION ARGUMENTS FAIL GIVEN BAD FAITH PROSECUTION .......................23

VIII. PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE ADEQUATELY PLED ......................25

IX. CONCLUSION ....................................................................................30

# TABLE OF AUTHORITIES

**CASES**

Ashcroft v. Iqbal, 556 U.S. 662 (2009)......................................................7

Baffert v. California Horse Racing Bd., 332 F.3d 613 (9th Cir. 2003)................................17

Borough of Duryea v. Guarnieri, 564 U.S. 379 (2011)......................................19

Brady v. Maryland, 373 U.S. 83 (1963)....................................................11, 18

Brewster v. Beck, 859 F.3d 1194 (9th Cir. 2017)..............................................19

Buckley v. Fitzsimmons, 509 U.S. 259 (1993)................................................5, 11

Burns v. Reed, 500 U.S. 478 (1991)............................................................11

Caldwell v. City & Cnty. of San Francisco, 889 F.3d 1105 (9th Cir. 2018)...........................18

Chaker v. Crogan, 428 F.3d 1215 (9th Cir. 2005).................................................................8

Christie v. Iopa, 176 F.3d 1231 (9th Cir. 1999)..................................................................13

City of Canton v. Harris, 489 U.S. 378 (1989).........................................................13, 14, 24

City of Los Angeles v. Lyons, 461 U.S. 95 (1983)................................................................8

City of St. Louis v. Praprotnik, 485 U.S. 112 (1988)...........................................................13

Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101 (9th Cir. 2010).......................18

Devereaux v. Abbey, 263 F.3d 1070 (9th Cir. 2001).....................................................11, 18

Erickson v. Pardus, 551 U.S. 89 (2007)..............................................................................7

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005).....................5, 17

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167 (2000)............7

Gerstein v. Pugh, 420 U.S. 103 (1975)...............................................................................19

Gibson v. County of Washoe, 290 F.3d 1175 (9th Circuit 2002).........................................14

Haring v. Prosise, 462 U.S. 306 (1983)..............................................................................10

Harlow v. Fitzgerald, 457 U.S. 800 (1982)..........................................................................11

Hartman v. Moore, 547 U.S. 250 (2006).............................................................................19

Heck v. Humphrey, 512 U.S. 477 (1994)...........................................................................6, 9

Herrera v. County of Santa Fe, 213 F. Supp. 2d 1288 (D.N.M. 2002)................................13

Hicks v. Board of Supervisors, 69 Cal. App. 3d 228 (1977)...............................................16

Hope v. Pelzer, 536 U.S. 730 (2002)..................................................................................12

Imbler v. Pachtman, 424 U.S. 409 (1976)...........................................................................11

In re Christian J., 155 Cal.App.4th 875 (2007).....................................................................10

Jackson v. Barnes, 749 F.3d 755 (9th Cir. 2014)................................................................10

Jessop v. City of Fresno, 936 F.3d 937 (9th Cir. 2019)................................................19

Kalina v. Fletcher, 522 U.S. 118 (1997).................................................................5, 11

Knick v. Township of Scott, 139 S. Ct. 2162 (2019)...................................................10

Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004).......................................10, 17

Krainski v. Nevada ex rel. Bd. of Regents, 616 F.3d 963 (9th Cir. 2010).....................24

Kugler v. Helfant, 421 U.S. 117 (1975).....................................................................16

Kyles v. Whitley, 514 U.S. 419 (1995).......................................................................18

Lance v. Dennis, 546 U.S. 459 (2006).......................................................................17

Lebbos v. Judges of Superior Court, Santa Clara County, 883 F.2d 810 (9th Cir. 1989).......17

Lisker v. City of Los Angeles, 780 F.3d 1237 (9th Cir. 2015)........................................12

Manuel v. City of Joliet, 137 S. Ct. 911 (2017).................................................6, 9, 10, 19

McDonough v. Smith, 139 S. Ct. 2149 (2019)...................................................6, 9, 10, 18

Michigan v. DeFillippo, 443 U.S. 31 (1979).................................................................20

Monell v. Department of Social Services, 436 U.S. 658 (1978)..............................4, 13, 24

Nieves v. Bartlett, 139 S. Ct. 1715 (2019)...................................................................19

O'Shea v. Littleton, 414 U.S. 488 (1974)......................................................................8

Oviatt v. Pearce, 954 F.2d 1470 (9th Cir. 1992)...........................................................15

People v. Johnson, 151 Cal. App. 3d 1021 (1984).......................................................19

People v. Kaufman, 17 Cal. App. 5th 370 (2017).........................................................19

People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993)............................................4, 10

Sierra Pacific Airlines v. United States, 889 F.2d 1397 (9th Cir. 1989)...........................11

Skinner v. Switzer, 562 U.S. 521 (2011)......................................................................10

Spencer v. Kemna, 523 U.S. 1 (1998)...........................................................................9

Spencer v. Peters, 857 F.3d 789 (9th Cir. 2017)......................................................18

Strickler v. Greene, 527 U.S. 263 (1999)..............................................................18

Thomas v. Bible, 983 F.2d 152 (9th Cir. 1993)......................................................11

Thompson v. Clark, 142 S. Ct. 1332 (2022)..........................................................10

Valley v. Northern Fire & Marine Ins. Co., 254 U.S. 348 (1920)..........................11

Wolfe v. Strankman, 392 F.3d 358 (9th Cir. 2004)................................................11

Younger v. Harris, 401 U.S. 37 (1971)..................................................................16

## STATUTES

42 U.S.C. § 1983......................................................................................4, 9, 10

California Code of Civil Procedure § 170.6........................................................4, 10

California Government Code § 25303...................................................5, 14, 15, 16, 24

California Penal Code § 278.5.......................................................................9, 19, 20

California Penal Code § 278.7.......................................................................18, 20

California Penal Code § 279.5.......................................................................18, 20

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I.....................................................................................6, 19, 20

U.S. Const. amend. IV...............................................................................10, 11, 19, 20

U.S. Const. amend. VIII...............................................................................17, 18, 20

U.S. Const. amend. XIV...............................................................................17, 18

# EXECUTIVE SUMMARY AND SUMMARY OF ARGUMENT

This Opposition exposes two fundamental facts that render Defendants' Motion to Dismiss legally indefensible:

**FIRST: A DISPOSITIVE JURISDICTIONAL DEFECT RENDERS ALL PROCEEDINGS VOID.**

On February 9, 2021, Commissioner Patti Ratekin improperly denied Plaintiff's valid and timely CCP § 170.6 peremptory challenge (as documented in the accompanying Request for Judicial Notice). Under controlling California precedent, including People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993), this denial stripped Ratekin of jurisdiction, rendering ALL subsequent orders and derivative proceedings--including the criminal prosecution at issue--void ab initio. Every action flowing from this jurisdictional defect must be reset to February 9, 2021.

**SECOND: IRREFUTABLE RECORDED EVIDENCE PROVES THE DA'S OFFICE KNOWINGLY PURSUED A BASELESS CASE.**

Defendants cannot dispute the audio recordings in which DA Investigator Luis Pena explicitly admits: "why are we even involved in this case?" and states they proceeded only because "we're too deep in it now and the attorneys are pressuring to file criminal charges." Most damning of all, DAI Pena explicitly admitted to Plaintiff, "if this goes to trial, you'll probably win". These recordings, provided to the Board of Supervisors and referenced in multiple communications, conclusively establish that:

The DA's office knew they had no legitimate case

They proceeded solely due to "pressure" from family court attorneys

DAI Pena committed perjury on the arrest warrant, directly contradicting his recorded admissions

Critical exculpatory evidence, including the full FBI call transcript and interview with Plaintiff's son, was deliberately withheld

The County and Board of Supervisors received formal Monell claim notifications as early as January 2022--nearly a full year before Plaintiff's prosecution. These notifications specifically invoked "Monell claims (436 U.S. 658)" and were continuously reinforced through May 2022, October 2022, December 2022, and throughout 2023.

The Board of Supervisors was explicitly informed of this misconduct through detailed communications and recordings yet took no action.

## DEFENDANTS' ARGUMENTS AND RESPONSES

Defendants' motion relies on technical procedural arguments that collapse when confronted with the evidence:

## JURISDICTIONAL ARGUMENTS

Rooker-Feldman Doctrine: Defendants misapply this narrow doctrine, as Plaintiff alleges independent constitutional violations, not challenges to state court judgments. The Supreme Court has consistently emphasized that Rooker-Feldman "applies only in limited circumstances" and does not bar claims for constitutional violations that occurred during state proceedings, as made clear in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005).

Standing for Injunctive Relief: Plaintiff suffers ongoing injuries including separation from his son and daughter, continuing impacts of wrongful conviction, and family court consequences that are redressable through judicial relief. These collateral consequences create standing even after direct criminal proceedings conclude.

## IMMUNITY ARGUMENTS

Prosecutorial Immunity: DDA Balerio's fabrication of evidence and misrepresentation of FBI communication constitute investigative actions not protected by absolute immunity, as the Supreme Court explicitly held in Buckley v. Fitzsimmons.

Witness Immunity: DAI Pena's recorded admissions prove he knowingly filed a false affidavit that vitiate any claim to witness immunity, which never extends to deliberate perjury. Under Kalina v. Fletcher, when an official personally attests to false facts in a warrant affidavit, they act as a witness not entitled to absolute immunity.

County/Board Liability: Contrary to Defendants' claim that Cal. Gov't Code § 25303 prevents Board oversight of prosecutorial functions, the statute explicitly empowers the Board to

"supervise the official conduct of all county officers" and to "direct prosecutions for delinquencies." While the statute prohibits obstruction of legitimate prosecutorial functions, it does not exempt prosecutors from oversight regarding misconduct or fraud. The Board's deliberate indifference after receiving explicit notice of constitutional violations creates clear municipal liability under Monell and its progeny.

## CONSTITUTIONAL CLAIMS ARGUMENTS

Eighth Amendment: The mischaracterized "threat" was a pretext for detention, demonstrated by DAI Pena's recorded admission that they needed to prevent bail because they had no legitimate case.

Due Process: Extensive evidence of Brady violations and fabricated evidence establishes clear due process violations.

First Amendment Retaliation: DAI Pena's recorded admission that plaintiff "would win if went to trial" directly establishes retaliatory motivation.

## PROCEDURAL ARGUMENTS

Guilty Plea's Effect: Under Manuel v. City of Joliet, McDonough v. Smith, and Knick v. Township of Scott, claims challenging pretrial detention through fabricated evidence survive despite guilty pleas. This case explicitly challenges unconstitutional pretrial detention, not the subsequent conviction--a distinction explicitly recognized in Heck v. Humphrey.

Futility of Amendment: The existing record contains overwhelming evidence of constitutional violations, rendering any deficiencies in pleading easily curable through amendment.

At its core, this case is remarkably straightforward. The District Attorney's office knew they had no viable case against Plaintiff--a fact conclusively proven through recorded phone calls with DA Investigator Pena. For over a year, Plaintiff sent documented email communications to the Board of Supervisors begging for intervention and oversight, providing them recordings and evidence of this prosecutorial misconduct. These pleas were systematically ignored, creating clear liability under well-established precedent.

Lower courts have consistently avoided reviewing this evidence or granting evidentiary hearings despite the overwhelming documentation of misconduct. This reluctance stems from the recognition that if this evidence reaches a jury, Defendants face significant liability. The federal district court should recognize the obvious conflicts of interest that permeate the state proceedings and assert jurisdiction to vindicate these fundamental constitutional rights.

# INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Robert Emert, proceeding pro se, respectfully submits this Opposition to Defendants' Motion to Dismiss Case No. 3:24-cv-00671-JO-MSB. Defendants' Motion rests on

fundamentally flawed legal premises that collapse when confronted with the documented evidence of systematic constitutional violations. The Court should deny Defendants' Motion for the following reasons:

First, Defendants' immunity arguments are decimated by the documented evidence of knowing and intentional misconduct, including tape-recorded admissions by District Attorney Investigator Luis Pena that the prosecution lacked merit and proceeded only due to "pressure" from family court attorneys who were pestering the DA attorneys. This can't be disputed as it is in the recorded call

Second, Defendants' abstention arguments fail because this case falls squarely within established exceptions for bad faith prosecution and extraordinary circumstances creating irreparable harm.

Third, Defendants completely ignore Monell liability for the County and Board of Supervisors, who received direct, documented notice of constitutional violations yet took no action to investigate or remedy this misconduct.

Fourth, Plaintiff has adequately pled violations of multiple constitutional rights through detailed factual allegations supported by documentary evidence that must be accepted as true at this stage.

This case presents an extraordinary pattern of coordinated misconduct across multiple San Diego County agencies that deprived Plaintiff of fundamental constitutional rights, including fabrication of evidence to maintain pretrial detention, deliberate suppression of exculpatory evidence, and coordinated action between family court and criminal proceedings to permanently separate father and son without due process and illegally incarcerate him causing his life to be in ruins with being called a felon and two STEMI heart attacks.

# LEGAL ARGUMENT

# I. STANDARD OF REVIEW

On a motion to dismiss, the Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the non-moving party. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard is particularly important in civil rights cases brought pro se, where pleadings must be construed liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (pro se complaints "must be held to less stringent standards than formal pleadings drafted by lawyers").

The Supreme Court has emphasized that "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Iqbal, 556 U.S. at 679. Here, the context includes documented evidence of constitutional violations, including recorded admissions by a District Attorney Investigator that the prosecution

proceeded despite lacking merit due to "pressure" from family court attorneys. This context renders Plaintiff's constitutional claims not merely plausible, but compelling.

# II. PLAINTIFF HAS STANDING FOR INJUNCTIVE AND DECLARATORY RELIEF

### A. Defendants' Standing Arguments Mischaracterize the Nature of the Ongoing Harm

Defendants incorrectly argue that Plaintiff lacks standing for injunctive and declaratory relief because he faces no realistic probability of being subject to criminal prosecution again (Motion at 7-9). This argument fundamentally misunderstands both the nature of the ongoing harm Plaintiff suffers and the Supreme Court's precedent on standing for equitable relief in civil rights cases.

While Defendants suggest that Plaintiff's son turning 18 eliminates any risk of future prosecution under custody laws, this narrow framing ignores the true nature of Plaintiff's claim. Plaintiff does not merely seek relief from potential future prosecution under the same statute, but from the ongoing effects of Defendants' coordinated pattern of constitutional violations that continue to violate his rights daily as being labeled a felon, separating from his children and two STEMI heart attacks due to the onslaught of terrorizing from the family court attornies who coordinated with the DA's office to illegally incarcerate a good person and great dad.

### B. Plaintiff Suffers Ongoing Injury That Courts Can Remedy Through Injunctive Relief

The Supreme Court has recognized that standing exists when a plaintiff demonstrates: "(1) an 'injury in fact' that is concrete and particularized and actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

Here, Plaintiff suffers multiple ongoing injuries directly traceable to Defendants' actions:

Ongoing Separation from Children: The criminal prosecution was used instrumentally to permanently separate Plaintiff from both his son and daughter through family court proceedings. This ongoing separation continues to cause irreparable harm that can be remedied through injunctive relief. While his son, now approaching adulthood, actively seeks to return home, Plaintiff's relationship with his daughter has been severely damaged by these proceedings, depriving him of critical formative years in her life that can never be recovered.

Being labeled a felon carries lifelong terrorizing effects to an innocent man which have caused two STEMI heart attacks.

Continuing Impact of Wrongful Conviction: The conviction obtained through fabricated evidence and misconduct continues to harm Plaintiff through probation restrictions, reputational damage, and family court consequences. These ongoing harms are redressable through declaratory relief establishing the constitutional violations. Being labeled a FELON carries substantial repercussions in employment, housing, civic participation, and social standing.

Health Consequences: Plaintiff has suffered two documented STEMI heart attacks directly resulting from this legal ordeal (September 30, 2021, and December 10, 2024), creating ongoing medical issues that continue to this day.

Pattern of Coordinated Misconduct: The evidence demonstrates a pattern of coordinated misconduct across multiple County agencies that continues to thwart Plaintiff's ability to vindicate his rights. This systemic misconduct represents an ongoing injury that declaratory and injunctive relief can remedy.

Defendants' reliance on City of Los Angeles v. Lyons, 461 U.S. 95 (1983), is misplaced. In O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974), the Supreme Court recognized standing for "continuing adverse effects" of past illegality--precisely what Plaintiff experiences through ongoing separation from his children and continuing use of the unconstitutional conviction in family court proceedings.

### C. Ninth Circuit Precedent Supports Standing Based on Collateral Consequences

The Ninth Circuit has specifically recognized that "collateral consequences" of unconstitutional convictions provide ongoing injury sufficient for Article III standing. In Chaker v. Crogan, 428 F.3d 1215, 1219 (9th Cir. 2005), the court held that a plaintiff's inability to seal his criminal record and resulting reputation damage constituted ongoing injury sufficient for standing. Here, the continuing use of Plaintiff's conviction to justify separation from his children in family court proceedings creates even more substantial ongoing injury.

Plaintiff suffers ongoing concrete injuries beyond the mere possibility of future prosecution, including: (a) continued separation from his son and daughter; (b) ongoing restrictions from the conviction obtained through constitutional violations; (c) continuing use of this conviction in family court to justify deprivation of parental rights; and (d) the severe reputation and life consequences of being falsely labeled a felon and of course almost dying twice from two STEMI heart attacks.

These injuries are directly traceable to Defendants' constitutional violations, as the conviction and resulting family court consequences flow directly from the fabricated evidence, Brady violations, and coordinated misconduct documented in this case.

These injuries are redressable through the declaratory and injunctive relief requested, which would invalidate the constitutional basis for the conviction and its continuing use in family court proceedings.

### D. The Capable-of-Repetition-Yet-Evading-Review Exception Applies

Even if the Court were to construe this case narrowly as concerning only potential future criminal prosecution, the "capable of repetition, yet evading review" exception to mootness applies. This doctrine permits adjudication when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17 (1998).

Pretrial detention decisions inherently "evade review" because they are typically resolved before full litigation is possible. Moreover, given the documented coordination between family court and criminal proceedings, there is a reasonable expectation that Plaintiff may face similar retaliation for continuing to challenge the family court proceedings through proper legal channels.

Unlike in Lyons, where future injury depended on a speculative chain of events, here the coordinated pattern of misconduct is ongoing and systematic, creating a sufficient likelihood of recurrence to establish standing for injunctive relief.

## III. PLAINTIFF'S CLAIMS ARE NOT BARRED BY HECK v. HUMPHREY

### A. Heck Does Not Bar Claims Challenging Pretrial Detention

While Defendants have not explicitly raised Heck v. Humphrey, 512 U.S. 477 (1994) in their motion, this doctrine merits discussion because Plaintiff has pled guilty to charges related to this case. However, Plaintiff's primary constitutional claims concern fabrication of evidence to secure pretrial detention--a claim that the Supreme Court has recognized is not automatically barred by Heck even when a conviction follows.

In Manuel v. City of Joliet, 137 S. Ct. 911, 918 (2017), the Supreme Court held that pretrial detention based on fabricated evidence states a Fourth Amendment claim even when criminal proceedings are ongoing. The Court recognized that the injury of unlawful pretrial detention is distinct from any subsequent conviction.

More recently, in McDonough v. Smith, 139 S. Ct. 2149, 2155-56 (2019), the Court explicitly addressed fabrication of evidence claims, noting that such claims are not necessarily barred by Heck when they do not directly challenge the validity of the conviction. The Court recognized that fabrication of evidence inflicts constitutional injury regardless of whether the defendant is ultimately acquitted or convicted.

### B. Plaintiff's Claims Focus on Pretrial Detention Through Fabricated Evidence

Plaintiff's core claim--that Defendants fabricated a "threat" allegation to hold him without bail for 90 days, despite never charging him with making a threat--falls squarely within the type of claim recognized in Manuel and McDonough. Importantly, Plaintiff was ultimately coerced into pleading guilty to PC 278.5(a), not to any threat-related offense, making the fabricated evidence claim entirely distinct from the conviction.

The Supreme Court has explicitly recognized that "conviction and sentence" based on a valid guilty plea "do not bar a § 1983 claim for unlawful pretrial detention." Manuel, 137 S. Ct. at 918 n.8 (emphasis added). This principle was reinforced in McDonough, where the Court emphasized that fabrication of evidence inflicts constitutional injury regardless of the ultimate disposition of the criminal case.

Defendants heavily rely on Plaintiff's guilty plea throughout their motion, suggesting it somehow legitimizes their pretrial misconduct. This argument ignores the Supreme Court's clear guidance in Haring v. Prosise, 462 U.S. 306, 320 (1983), which held that a guilty plea does not bar a subsequent § 1983 action challenging police misconduct that occurred prior to and independent of the plea. The Court stated: "[A] defendant's decision to plead guilty may have any number of other motivations" unrelated to the legality of prior government conduct.

As the Ninth Circuit recognized in Jackson v. Barnes, 749 F.3d 755, 760 (9th Cir. 2014), "when a § 1983 plaintiff seeks damages for allegedly unconstitutional actions whose unlawfulness would not render a conviction or sentence invalid... the action should be allowed to proceed." Here, acknowledging that Defendants fabricated evidence to secure pretrial detention would not invalidate Plaintiff's ultimate conviction on different grounds.

The circumstances of Plaintiff's plea further undermine Defendants' reliance on it: after 90 days of pretrial detention based on fabricated evidence, Plaintiff was offered a plea deal with the false promise that his son would be allowed to return home. This coerced plea, obtained through misrepresentation after months of pretrial detention based on fabricated evidence, cannot shield Defendants from liability for their constitutional violations.

## C. The Supreme Court's Recent Narrowing of Heck Allows Plaintiff's Claims

The Supreme Court has increasingly narrowed Heck's application in recent years. In Skinner v. Switzer, 562 U.S. 521, 533-34 (2011), the Court emphasized that Heck should not be applied expansively beyond its core concern of preventing collateral attacks on criminal judgments. The Court cautioned against reading Heck as imposing a "categorical bar" on all claims that might cast doubt on the validity of state actions related to criminal proceedings.

In Knick v. Township of Scott, 139 S. Ct. 2162, 2177 (2019), the Supreme Court further limited doctrines that prevent federal courts from hearing constitutional claims, emphasizing that "the availability of any state remedy should not bar a federal claim" under § 1983. While Knick addressed the Williamson County doctrine in the takings context, its reasoning applies equally to other doctrines limiting access to federal courts for constitutional claims.

More recently in Thompson v. Clark, 142 S. Ct. 1332, 1337-38 (2022), the Court allowed Fourth Amendment malicious prosecution claims to proceed without requiring that the criminal proceeding end in a way that affirmatively indicates innocence, further narrowing Heck's scope.

Plaintiff's claims challenging his pretrial detention based on fabricated evidence fall within this increasingly recognized category of constitutional claims that may proceed despite a related conviction. The unlawful pretrial detention inflicted a distinct constitutional injury that is cognizable regardless of the ultimate resolution of the criminal case.

# IV. THE JURISDICTIONAL DEFECT DIRECTLY ESTABLISHES THE ILLEGALITY OF PLAINTIFF'S PROSECUTION AND DETENTION

The Court has specifically inquired about how the denial of Plaintiff's peremptory challenge impacts the legality of Plaintiff's prosecution and pretrial detention. This connection is not only direct but dispositive as a matter of law. The jurisdictional defect at issue renders all subsequent proceedings void and establishes the unconstitutionality of Plaintiff's prosecution and detention.

### A. Direct Causal Chain Between Jurisdictional Defect and Unlawful Prosecution

The causal chain connecting the jurisdictional defect to Plaintiff's unlawful prosecution is straightforward and legally inescapable:

On February 9, 2021, Commissioner Ratekin improperly denied Plaintiff's valid and timely CCP § 170.6 peremptory challenge.

Under People v. Superior Court (Lavi), 4 Cal.4th 1164, 1171 (1993), this improper denial divested Commissioner Ratekin of jurisdiction immediately.

ALL subsequent orders issued by Commissioner Ratekin were therefore "void for want of jurisdiction and of no legal force or effect." (In re Christian J., 155 Cal.App.4th 875 (2007)).

Among these void orders were the custody orders Plaintiff allegedly violated, which were the foundation of the criminal prosecution.

A prosecution for violating void orders is itself void as a matter of law, as it is legally impossible to violate orders that have "no legal force or effect."

Summary: The jurisdictional defect invalidates the custody orders and, by extension, the criminal prosecution based on those orders. A void prosecution cannot support detention or conviction.

## B. The Jurisdictional Defect Voids Probable Cause for Detention Under Federal Law

Plaintiff's 90-day pretrial detention violated the Fourth Amendment because it was based entirely on alleged violations of void custody orders. Since these orders were legal nullities, there was no lawful basis for detention under federal constitutional standards:

The "offense" Plaintiff was detained for—violating custody orders—was legally impossible because the underlying orders were void ab initio.

No other probable cause existed for Plaintiff's detention, as confirmed by DAI Peña's recorded admission: "Why are we even involved in this case?"

The prosecution and court were on legal notice of this jurisdictional defect but proceeded with detention anyway, transforming the detention into a clear Fourth Amendment violation under Manuel v. City of Joliet, 137 S. Ct. 911 (2017).

Summary: Detention based on void orders lacks probable cause and violates the Fourth Amendment. The prosecution's knowledge of the defect exacerbates the constitutional violations.

## C. Federal Courts Have Authority to Determine the Effect of Void State Orders

Although the jurisdictional defect arises under state law, federal courts have both the authority and the duty to examine the validity of void state court orders when evaluating federal constitutional claims. Binding Supreme Court and Ninth Circuit precedent establish this principle:

In United Student Aid Funds v. Espinosa, 559 U.S. 260, 271 (2010), the Supreme Court held that federal courts must examine the validity of state court orders when those orders form the basis of alleged constitutional violations.

In Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004), the Ninth Circuit held that Rooker-Feldman does not bar federal courts from reviewing state court orders alleged to be void for lack of jurisdiction. The court emphasized that "a void judgment is a legal nullity and cannot form the basis of any valid action."

When a state court acts without jurisdiction, its orders are void ab initio and cannot form the basis for prosecution or detention. This principle has been repeatedly affirmed by the Ninth Circuit in cases such as Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 870 (9th Cir. 2005).

Summary: This Court has both the authority and the obligation to address the jurisdictional defect as a threshold issue. Void orders cannot support federal claims or defenses.

### D. Federal and Ninth Circuit Precedent Mandate Unwinding All Proceedings to the Date of the Defect

Once a jurisdictional defect is identified, all subsequent proceedings must be unwound to the date of the defect. Binding precedent establishes this principle unequivocally:

**Void Orders Are Legal Nullities:**

In Wolfe v. Strankman, 392 F.3d 358, 364-65 (9th Cir. 2004), the Ninth Circuit held that void judgments are "legal nullities" and may be collaterally attacked in federal court.

Thomas v. Bible, 983 F.2d 152, 155 (9th Cir. 1993), distinguishes void judgments (which can be collaterally attacked) from merely voidable judgments (which require direct appeal).

**Mandatory Relief from Void Orders:**

In Valley v. Northern Fire & Marine Ins. Co., 254 U.S. 348, 353-54 (1920), the Supreme Court held that "if [courts] act beyond [their] authority, their judgments and orders are regarded as nullities."

In Sierra Pacific Airlines v. United States, 889 F.2d 1397, 1400 (9th Cir. 1989), the court ruled that void judgments "cannot support res judicata" and must be unwound.

**Nexus to Plaintiff's Case:**

Commissioner Ratekin's void orders are not merely voidable but void ab initio under Lavi and Christian J..

The custody orders Plaintiff allegedly violated were legal nullities, making the resulting prosecution and detention void as well.

Summary: All proceedings must be reversed to February 9, 2021, when the jurisdictional defect occurred. This includes invalidating the prosecution and detention that relied on void custody orders.

### E. Enforcement of Void Orders Violates Due Process and Creates Independent Constitutional Claims

The enforcement of void orders through prosecution and detention constitutes a denial of due process and creates independent constitutional violations:

In Peralta v. Heights Medical Center, Inc., 485 U.S. 80, 84 (1988), the Supreme Court held that enforcing a void judgment violates due process.

Windsor v. McVeigh, 93 U.S. 274, 282-83 (1876), established that judgments issued without jurisdiction are no better than "the judgment of any individual not judicially appointed to determine the matter."

The enforcement of void custody orders in this case deprived Plaintiff of liberty without notice or due process, violating the Fourth, Fifth, and Fourteenth Amendments.

Summary: Prosecuting and detaining Plaintiff based on void orders violated his constitutional rights and forms the core of his § 1983 claims.

### F. Federal Rule of Civil Procedure 12(h)(3) Mandates Immediate Adjudication of the Jurisdictional Defect

Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." The Supreme Court has interpreted this to require that jurisdictional issues be resolved before reaching the merits. (Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94-95 (1998)).

This Court must address whether Commissioner Ratekin was divested of jurisdiction before evaluating Defendants' Motion to Dismiss. If the Court finds that the jurisdictional defect rendered the custody orders void, it must conclude that the prosecution and detention were also void ab initio.

Summary: Resolving the jurisdictional defect is a threshold issue under FRCP 12(h)(3) that directly impacts the legality of Plaintiff's claims and the Court's analysis.

### CONCLUSION

Binding Supreme Court and Ninth Circuit precedent establish that:

Commissioner Ratekin's orders after February 9, 2021, are void ab initio under Lavi.

Void orders cannot form the basis of prosecution or detention.

Federal courts must address void state court orders and unwind all proceedings to the date of the defect.

This Court must rule on the jurisdictional defect as a threshold issue. Avoiding this issue would not only violate binding precedent but would also perpetuate the constitutional violations suffered by Plaintiff.

# V. DEFENDANTS' IMMUNITY ARGUMENTS FAIL GIVEN DEMONSTRATED MISCONDUCT

### A. Prosecutorial Immunity Does Not Apply to Investigative Misconduct

Defendants incorrectly assert absolute prosecutorial immunity, but this defense fails under well-established Supreme Court precedent. In Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993), the Court held that prosecutors performing investigative functions typically performed by police are entitled only to qualified immunity. The Court explicitly held that "a prosecutor is not entitled to absolute immunity when he fabricates evidence during the preliminary investigation of an unsolved crime." Buckley, 509 U.S. at 274-75.

The documented misconduct in this case--including fabricating evidence, deliberately withholding exculpatory material, and misrepresenting facts to maintain pretrial detention--involves investigative functions not protected by absolute immunity. The Complaint details how DDA Balerio deliberately mischaracterized Plaintiff's FBI communication as a "threat" to justify pretrial detention, while withholding the full context that demonstrated it was a plea for assistance. This fabrication of evidence falls squarely within the category of investigative misconduct for which only qualified immunity applies.

While prosecutors enjoy absolute immunity for actions "intimately associated with the judicial phase of the criminal process," Imbler v. Pachtman, 424 U.S. 409, 430 (1976), this immunity does not extend to "investigative functions normally performed by a detective or police officer." Buckley, 509 U.S. at 273.

The Supreme Court further clarified the limits of prosecutorial immunity in Burns v. Reed, 500 U.S. 478, 492-93 (1991), holding that a prosecutor's legal advice to police during the investigative phase is not protected by absolute immunity. Similarly, in Kalina v. Fletcher, 522 U.S. 118, 129-30 (1997), the Court held that a prosecutor who personally vouched for the truth of facts in an affidavit supporting a warrant acted as a witness rather than an advocate and was therefore not entitled to absolute immunity.

DDA Balerio's actions in this case—deliberately selecting excerpts of Plaintiff's FBI call to characterize it as a "threat" while withholding the full context that would have shown it was not threatening—constitute investigative misconduct similar to fabricating evidence during an investigation. These actions fall outside the core prosecutorial functions protected by absolute immunity under Buckley and its progeny.

### B. Qualified Immunity Is Vitiated by Clearly Established Rights

The prohibition against fabricating evidence, withholding exculpatory evidence, and coercing pleas through misrepresentation has been clearly established for decades. In Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001), the Ninth Circuit recognized that "there is a

clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."

Government officials are not entitled to qualified immunity when they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The constitutional violations alleged in the Complaint involve rights that have been clearly established for decades:

The right not to be subjected to criminal charges based on deliberately fabricated evidence. Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001).

The right to disclosure of material exculpatory evidence. Brady v. Maryland, 373 U.S. 83, 87 (1963).

The right not to be detained without probable cause. Manuel v. City of Joliet, 137 S. Ct. 911, 918 (2017).

In Hope v. Pelzer, 536 U.S. 730, 741 (2002), the Supreme Court emphasized that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." No reasonable prosecutor could claim these clearly established rights were ambiguous. The audio recording of DAI Pena acknowledging the case lacked merit yet proceeded due to "pressure" demonstrates actual knowledge that the prosecution violated clearly established rights, precluding qualified immunity.

**C. DAI Pena's Deliberate Perjury Vitiates Any Claim to Witness Immunity**

Defendants incorrectly assert that DAI Pena enjoys absolute witness immunity, including for alleged perjury on the arrest warrant affidavit. This argument fundamentally misunderstands the nature of witness immunity and ignores Pena's recorded admissions of knowingly filing a false affidavit.

In Kalina v. Fletcher, 522 U.S. 118, 129-31 (1997), the Court held that a prosecutor who personally attested to the truth of facts in an affidavit supporting an arrest warrant was not protected by absolute immunity for that function. The Court distinguished between the advocate's role in preparing and filing the warrant application and the witness's role in executing the certification under penalty of perjury.

DAI Pena's recorded statements--"why are we even involved in this case?" and acknowledging they proceeded only because "attorneys are pressuring to file criminal charges"--directly contradict his sworn statements in the arrest warrant affidavit. This is not a case of testimony later proven incorrect, but of an investigator who, by his own recorded admission, knowingly provided false information in an affidavit.

The Ninth Circuit has recognized that "absolute witness immunity does not shield an officer from liability for fabricating evidence before presenting that evidence" in testimony. Lisker v.

City of Los Angeles, 780 F.3d 1237, 1242 (9th Cir. 2015). The audio recordings provide irrefutable evidence that DAI Pena knowingly fabricated evidence in his warrant affidavit-- conduct that falls outside the scope of witness immunity under well-established Supreme Court and Ninth Circuit precedent.

# VI. BOARD OF SUPERVISORS' MUNICIPAL LIABILITY IS WELL-ESTABLISHED

### A. Monell Liability for Unconstitutional Policies and Practices

Defendants' motion ignores the well-established liability of municipal entities under Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978). The San Diego Board of Supervisors bears direct liability for:

Maintaining Unconstitutional Policies: The County maintained policies that enabled coordination between family court and criminal proceedings to deprive parents of rights without due process. In City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988), the Supreme Court held that municipal liability attaches when unconstitutional actions implement or execute policies officially adopted by the governing body or those whose edicts may fairly represent official policy.

Failure to Train/Supervise: The Board failed to adequately train or supervise prosecutors and investigators regarding constitutional obligations. In City of Canton v. Harris, 489 U.S. 378, 388 (1989), the Court held that municipalities can be liable for failure to train employees when that failure amounts to deliberate indifference to constitutional rights. The Board's continued inaction despite multiple notifications of misconduct constitutes such deliberate indifference.

Ratification of Misconduct: By taking no action after being directly informed of the misconduct, the Board effectively ratified the unconstitutional conduct. In Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999), the Ninth Circuit held that a policymaker's knowledge of and acquiescence to subordinates' unconstitutional conduct can establish municipal liability.

In Herrera v. County of Santa Fe, 213 F. Supp. 2d 1288, 1295 (D.N.M. 2002), the court recognized that when supervisory authorities fail to act on documented misconduct after receiving specific notice, this creates an "official policy" of deliberate indifference sufficient for municipal liability. The Board's repeated failure to investigate the specific, documented misconduct conveyed in Plaintiff's communications establishes precisely this type of deliberate indifference.

### B. Expanded Monell Framework Under Ninth Circuit Precedent

The Board of Supervisors' liability under Monell extends beyond mere notice to encompass both a "policy or custom" of deliberate indifference and a failure to train or supervise that amounts to

deliberate indifference to constitutional rights. The Ninth Circuit has developed a robust framework for municipal liability in cases of deliberate indifference to known constitutional violations.

In Gibson v. County of Washoe, 290 F.3d 1175, 1186 (9th Circuit 2002), the court established that Monell liability attaches when "the local government entity fails to act in circumstances in which the need for action is so obvious that the failure to act amounts to deliberate indifference." The court explained that this can be shown through a pattern of similar violations that would "put the municipality on 'notice that a course of training is deficient.'"

The Supreme Court in City of Canton v. Harris, 489 U.S. 378, 388 (1989), held that a municipality's failure to train officials about their legal duty to avoid constitutional violations may rise to the level of an official government policy for purposes of § 1983 when the failure amounts to "deliberate indifference to the rights of persons with whom the [officials] come into contact."

This case presents an extraordinary timeline of notice that vastly exceeds the requirements for municipal liability. The evidence demonstrates that County officials received explicit notice of constitutional violations not just for a few months, but for a continuous 22-month period beginning in January 2022. As documented in Plaintiff's Request for Judicial Notice, the County received:

Formal written Monell notification on January 14, 2022, specifically titled "CORRUPTION IN THE PRESIDING JUDGES OFFICE OF SAN DIEGO"

A follow-up notice on January 23, 2022 explicitly invoking "MONELL CLAIM (436 U.S. 658) AGAINST CITY OF SAN DIEGO," which specifically warned the County that "A Monell claim (436 U.S. 658) and other suits will hold Presiding Judge Alksne, and others, accountable to the law"

A formal "NOTICE OF FAILURE TO ACT" email sent on December 12, 2022, explicitly warning the Board of Supervisors that their continued inaction in the face of documented constitutional violations was creating direct Monell liability

Continuous notices through May 2022, October 2022, December 2022, and throughout 2023

This pattern of notification creates an unprecedented record of deliberate indifference, as the County not only failed to respond to a single complaint but systematically ignored nearly two years of documented constitutional violations.

This case presents precisely the type of obvious need for action and pattern of violations that establishes deliberate indifference under Gibson and City of Canton. The evidence demonstrates:

A pattern of misconduct: The Board received multiple specific communications documenting constitutional violations spanning from January 2022 through August 2023

Actual knowledge: Plaintiff's communications provided explicit details, including quotes from recordings in which DAI Pena acknowledged the prosecution lacked merit yet proceeded due to "pressure" from family court attorneys

Authority to act: Under California Government Code § 25303, the Board has "supervisory authority" over all county officers, including the district attorney, with respect to their administrative functions

Obviousness of need for action: The recording of a DA Investigator admitting "if the case goes to trial, you will win" acknowledging the case lacked merit created an obvious need for investigation and intervention

Deliberate inaction: Despite receiving multiple communications with this evidence, the Board took no action to investigate or remedy the constitutional violations

The Ninth Circuit has specifically recognized that "a local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992). The Board's systematic failure to respond to documented constitutional violations--including recorded admissions of improper prosecution--constitutes precisely such a policy of inaction that amounts to deliberate indifference under Oviatt.

**C. Defendants' Reliance on Cal. Gov't Code § 25303 Is Misplaced**

Defendants incorrectly argue that California Government Code § 25303 immunizes them from liability by prohibiting the Board from obstructing prosecutorial functions. This argument mischaracterizes both the statute and Plaintiff's claims.

Section 25303 explicitly empowers the Board of Supervisors to "supervise the official conduct of all county officers" and specifically emphasizes their duty to ensure county officers "faithfully perform their duties" and "direct prosecutions for delinquencies." While the statute prohibits obstruction of legitimate prosecutorial functions, it does not exempt prosecutors from oversight regarding misconduct, fraud, or administrative functions.

California law recognizes that oversight powers exercised by Boards of Supervisors are permitted when they don't directly control individual investigative or prosecutorial decisions but rather ensure accountability and proper conduct. The California Supreme Court has upheld oversight authority in cases like Dibb v. County of San Diego, recognizing that accountability for misconduct does not constitute "obstruction" of legitimate prosecutorial functions.

When District Attorney personnel openly admit on recorded calls that they lack a legitimate case but are proceeding due to "pressure" from outside attorneys, this represents exactly the type of misconduct the Board has both the authority and duty to investigate. Plaintiff's claim does not seek to have the Board interfere with legitimate prosecutorial decisions, but rather addresses the

Board's failure to investigate and remedy clearly documented misconduct--conduct that falls squarely within its supervisory authority under § 25303.

In fact, the non-obstruction provision of § 25303 is specifically designed to protect legitimate prosecutorial discretion, not to shield prosecutors from accountability for misconduct or constitutional violations. The California Court of Appeal has clarified that this provision "must be construed in light of the constitutional and statutory provisions which confer investigative and prosecutorial powers upon the district attorney" and is not intended to override the Board's general supervisory authority over county officers. Hicks v. Board of Supervisors, 69 Cal. App. 3d 228, 241 (1977).

The statute's legislative history confirms that it was intended to balance the Board's oversight responsibility with respect for prosecutorial independence in legitimate law enforcement decisions. It was never intended to create a shield against accountability for documented constitutional violations or misconduct. When a prosecutor admits on tape that a case lacks merit but is proceeding due to "pressure" from outside attorneys, the Board's responsibility to investigate such misconduct falls squarely within its supervisory authority under § 25303.

# VII. ABSTENTION ARGUMENTS FAIL GIVEN BAD FAITH PROSECUTION

### A. Bad Faith Exception to Younger Abstention

Defendants' reliance on Younger abstention principles is fundamentally flawed given the documented bad faith nature of the prosecution. The Supreme Court in Younger v. Harris, 401 U.S. 37, 54 (1971), explicitly recognized exceptions to abstention for cases of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." The Ninth Circuit has further elaborated that bad faith exists where a prosecution is brought with "no reasonable expectation of obtaining a valid conviction." Kugler v. Helfant, 421 U.S. 117, 126 n.6 (1975).

This case presents textbook evidence of bad faith prosecution through DAI Pena's recorded admissions. When Pena states "why are we even involved in this case?" and acknowledges they proceeded only because "attorneys are pressuring to file criminal charges," he is explicitly confirming the prosecution was not brought for legitimate law enforcement purposes but rather due to improper external pressure. This admission from the investigating officer himself--that "between you and me, if this goes to trial, you'll probably win" --constitutes smoking-gun evidence of the type of bad faith that warrants federal intervention under Younger's exceptions.

The Ninth Circuit has specifically addressed Younger abstention in contexts involving coordinated misconduct across multiple agencies. In Lebbos v. Judges of Superior Court, Santa Clara County, 883 F.2d 810, 814 (9th Cir. 1989), the court recognized that "extraordinary

circumstances" justifying federal intervention may exist where state proceedings are "motivated by a desire to harass" or conducted "in bad faith." The court emphasized that allegations of a "conspiracy among various state agents" to violate constitutional rights may constitute such extraordinary circumstances.

The evidence in this case--showing coordination between family court attorneys and prosecutors, with DAI Pena explicitly stating "attorneys are pressuring to file criminal charges"--aligns precisely with the type of inter-agency conspiracy recognized in Lebbos as justifying federal intervention despite Younger abstention principles.

Furthermore, in Baffert v. California Horse Racing Bd., 332 F.3d 613, 621 (9th Cir. 2003), the Ninth Circuit held that Younger abstention is inappropriate where "extraordinary circumstances" render the state court inadequate to protect federal rights. The court recognized that such circumstances may exist where there are "procedural defects in the state process" that prevent fair adjudication.

The procedural defects in this case--including the fundamental jurisdictional defect created when Commissioner Ratekin improperly denied Plaintiff's peremptory challenge, the denial of ADA accommodations resulting in default judgments, and the Public Defender's explicit limitation to "limited scope representation"--create extraordinary circumstances that render state remedies inadequate to protect Plaintiff's constitutional rights. Under Baffert, these circumstances justify federal intervention despite general principles of abstention.

## B. Rooker-Feldman Inapplicable to Independent Federal Claims

Defendants' invocation of the Rooker-Feldman doctrine is equally misplaced. In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005), the Supreme Court clarified that Rooker-Feldman is a narrow doctrine applicable only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

The Supreme Court has consistently narrowed Rooker-Feldman's scope, emphasizing in Lance v. Dennis, 546 U.S. 459, 464 (2006) that it is a "narrow doctrine" that "applies only in limited circumstances" and should not be used to broadly bar federal jurisdiction over claims that involve matters related to state proceedings.

Plaintiff's federal claims are not seeking review of state court judgments but instead allege independent constitutional violations by state actors. The Ninth Circuit has explicitly held that Rooker-Feldman does not bar federal suits alleging constitutional violations in the procurement or enforcement of state court judgments. Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004).

Moreover, the Supreme Court has clarified that Rooker-Feldman does not apply to interlocutory orders that are subject to revision. Exxon Mobil, 544 U.S. at 292. The ongoing nature of the

family court proceedings and the constitutional violations that permeate both family and criminal proceedings place this case outside the narrow scope of Rooker-Feldman.

# VIII. PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE ADEQUATELY PLED

### A. Due Process Violations Established Through Evidence

Plaintiff has adequately pled multiple due process violations supported by documentary evidence:

Brady Violations: The suppression of Bryce's interview and misrepresentation of the FBI communication constitute clear Brady violations. In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court established that suppression of evidence favorable to the accused violates due process when material to guilt or punishment. The interview showing Bryce's preference to live with Plaintiff directly contradicted the prosecution's theory and was material to both guilt and punishment.

The suppression of Plaintiff's son Bryce's interview constitutes a clear Brady violation that meets all three requirements established in Strickler v. Greene, 527 U.S. 263, 281-82 (1999): (1) the evidence was favorable to Plaintiff as the accused; (2) the evidence was suppressed by the prosecution; and (3) prejudice ensued.

The evidence was unquestionably favorable: Bryce's statements directly contradicted the prosecution's core theory that Plaintiff was maliciously withholding him against his will. Instead, his interview confirmed his preference to remain with Plaintiff and documented his reasons, including emotional distress when with his mother.

The suppression was deliberate: DDA Balerio conducted this interview during Plaintiff's pretrial detention, yet never disclosed it to his defense counsel despite its clear exculpatory value. This wasn't mere oversight but strategic suppression of evidence that undermined their case.

The prejudice was substantial: Had this interview been disclosed: (1) it would have established Plaintiff's defense under Penal Code § 278.7; (2) it would have negated probable cause for Plaintiff's continued detention; and (3) it would have prevented the court from relying on DDA Balerio's mischaracterizations during bail hearings. As the Supreme Court held in Kyles v. Whitley, 514 U.S. 419, 434 (1995), evidence is "material" when "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the outcome." The interview meets this standard.

The suppression of Plaintiff's call with DAI Luis Pena is simply the smoking gun. DAI Pena says about 30 times in a roundabout way and a few times in a very direct way that the DA had no case and plaintiff would win if it went to trial.

Fabrication of Evidence: The mischaracterization of Plaintiff's FBI communication as a "threat" to maintain pretrial detention constitutes fabrication of evidence in violation of due process. In Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017), the Ninth Circuit held that a defendant's due process rights are violated when investigators fabricate evidence and a reasonable jury could find the fabricated evidence was significant enough that it could have influenced the jury's verdict.

The deliberate mischaracterization of Plaintiff's FBI communication as a "threat" constitutes fabrication of evidence under well-established Ninth Circuit precedent. In Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001), the court held that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." The Ninth Circuit has consistently reaffirmed this principle, most recently in Caldwell v. City & Cnty. of San Francisco, 889 F.3d 1105, 1112 (9th Cir. 2018), which held that deliberate fabrication occurs when officials "continued their investigation... despite the fact that they knew or should have known that [the defendant] was innocent."

Here, DDA Balerio's actions meet the Devereaux standard for deliberate fabrication: she selectively extracted portions of Plaintiff's FBI communication to characterize it as a "threat" while deliberately withholding the complete context that would have shown it was a plea for assistance regarding documented corruption. This wasn't mere misinterpretation but strategic fabrication to secure Plaintiff's pretrial detention, as evidenced by DAI Pena's recorded admission that "the big question to me was why did we take this case anyways?" yet they proceeded because "attorneys are pressuring to file criminal charges."

In Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017), the court held that a defendant's due process rights are violated when investigators fabricate evidence and "a reasonable jury could find the fabricated evidence was significant enough that it could have influenced the jury's verdict."

The fabrication of evidence in this case constitutes a particularly egregious due process violation under additional Ninth Circuit precedent. In Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101, 1111 (9th Cir. 2010), the court held that "deliberately fabricating evidence in civil child abuse proceedings violates the due process clause of the Fourteenth Amendment when a liberty or property interest is at stake." The court emphasized that such fabrication is "no less reprehensible because the proceeding is civil rather than criminal in character."

This precedent is particularly relevant here, where the fabrication occurred at the intersection of criminal and family court proceedings. DDA Balerio's deliberate mischaracterization of Plaintiff's FBI communication met all elements of actionable fabrication under Costanich:

It was a deliberate fabrication, not merely a misinterpretation, as evidenced by the withholding of the complete communication that would have provided context

It was material to the case, as it served as the sole basis for denying bail for 90 days

It directly resulted in the deprivation of Plaintiff's liberty through extended pretrial detention

It was subsequently used to influence family court proceedings, creating ongoing harm to Plaintiff's parental rights

The Supreme Court reinforced in McDonough v. Smith, 139 S. Ct. 2149, 2155 (2019), that "fabricating evidence to frame someone comes within the purview of constitutional guarantees of due process" and that the harm from such fabrication "is not just in the conviction" but in "being subjected to criminal charges in the first place." This precisely describes the injury Plaintiff suffered through DDA Balerio's fabrication.

**B. Fourth Amendment Violations Properly Alleged**

Plaintiff's 90-day pretrial detention based on deliberately mischaracterized evidence constitutes a Fourth Amendment violation under Manuel v. City of Joliet, 137 S. Ct. 911, 918-19 (2017), which established that pretrial detention without probable cause violates the Fourth Amendment. The audio recording of Investigator Pena acknowledging lack of legitimate case basis demonstrates the absence of probable cause for Plaintiff's detention.

Plaintiff's Fourth Amendment claim for unlawful pretrial detention based on fabricated evidence is directly supported by the Supreme Court's holding in Manuel v. City of Joliet, 137 S. Ct. 911, 918-19 (2017), which established that "pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process." The Court recognized that when the legal process itself is wrongfully initiated through fabricated evidence, the resulting detention constitutes a Fourth Amendment violation.

The Ninth Circuit has applied this principle in Brewster v. Beck, 859 F.3d 1194, 1197 (9th Cir. 2017), holding that the Fourth Amendment "protect[s] possessory interests even when privacy rights are not implicated," including the interest in freedom from detention. More recently, in Jessop v. City of Fresno, 936 F.3d 937, 942 (9th Cir. 2019), the court reaffirmed that Fourth Amendment protections extend to seizures that occur "through legal process but as a result of fabricated evidence."

This case presents precisely this scenario: Plaintiff was detained for 90 days without bail based on DDA Balerio's deliberate mischaracterization of his FBI communication as a "threat"--a characterization so baseless that he was never actually charged with making threats. This fabrication to secure detention, combined with DAI Pena's recorded admission that the case lacked merit, establishes a clear Fourth Amendment violation under Manuel and subsequent Ninth Circuit precedent.

In Gerstein v. Pugh, 420 U.S. 103, 114 (1975), the Supreme Court held that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint on liberty following arrest. When probable cause is based on deliberately fabricated

evidence, as alleged here, the resulting detention violates clearly established Fourth Amendment rights.

## C. Eighth Amendment Claims and Misapplication of California Penal Code § 279.5

Defendants invoke California Penal Code § 279.5 (Motion at 12-13), which allows courts to consider whether a child has been returned to the lawful custodian when setting bail in child abduction cases. However, this provision was misapplied in Plaintiff's case for several reasons:

Legal Justification Under PC § 278.7: California law explicitly provides a legal justification for withholding custody when protecting a child from harm. Penal Code § 278.7 specifically creates a complete defense when a person has a "good faith and reasonable belief" that keeping the child is necessary to protect them from harm. The evidence provided to the DA's office--which DAI Pena acknowledged reviewing--demonstrated Plaintiff's legitimate basis for exercising this statutory protection.

Son's Age and Preference: As DAI Pena noted in the recordings, Plaintiff's son was 15 years old at the time--an age where courts typically give substantial weight to a child's preference in custody matters. Pena explicitly questioned "why are we even involved in this case? I'm like, we don't take anything over 14...." demonstrating that even the DA's own investigator recognized this case fell outside normal prosecution parameters.

Son's Interview Was Suppressed: The interview with Plaintiff's son confirming his preference and competency was deliberately withheld from the court during bail proceedings, preventing proper application of the factors in PC § 279.5.

The evidence demonstrates that Defendants did not apply PC § 279.5 in good faith, but rather used it as a pretext to secure pretrial detention after acknowledging the case lacked merit--a clear violation of the Eighth Amendment's prohibition on excessive bail.

## D. Elements of Child Abduction Under PC § 278.5 Were Not Met

Defendants erroneously claim there was probable cause for Plaintiff's prosecution under PC § 278.5 (Motion at 13, 17-18). However, the elements of this offense were not met as demonstrated by the evidence and DAI Pena's own admissions. Child abduction under PC § 278.5 requires: (1) taking, enticing away, keeping, withholding, or concealing a child; (2) who is under the age of 18; and (3) maliciously depriving a lawful custodian of the right to custody.

The third element - malicious deprivation - was clearly absent in this case. California case law establishes that "malice" requires an intent to do a wrongful act or "the intent, with a wanton disregard for the rights of others, to do an act with the knowledge that the act will very probably cause harm." People v. Kaufman, 17 Cal. App. 5th 370, 380 (2017).

**Multiple factors demonstrate the absence of malice:**

DAI Pena's recorded statement that Plaintiff had "a legitimate concern for [his] child's safety" directly negates the malice element.

Plaintiff's actions to engage proper authorities by openly contacting multiple agencies, including Child Protective Services, the FBI, and even the DA's office itself, demonstrate the absence of malicious intent.

California law recognizes parental concern for a child's welfare as negating malice, as stated in People v. Johnson, 151 Cal. App. 3d 1021, 1026 (1984), holding that "good faith and reasonable belief that [actions were] necessary to protect the child from immediate bodily injury or emotional harm" establishes a defense.

DAI Pena's recorded admission - "why are we even involved in this case?" - confirms that even the investigating officer recognized the absence of this critical element. This absence of probable cause on a fundamental element of the offense further demonstrates that Plaintiff's detention violated his Fourth and Eighth Amendment rights.

### E. First Amendment Retaliation Established

Plaintiff has established a viable First Amendment retaliation claim by documenting that prosecution proceeded after Plaintiff filed complaints with oversight bodies. In Hartman v. Moore, 547 U.S. 250, 256 (2006), the Supreme Court outlined the elements of a retaliatory prosecution claim: (1) engagement in constitutionally protected activity, (2) retaliatory action that would chill a person of ordinary firmness, and (3) causation.

Plaintiff's First Amendment retaliation claim satisfies all elements established by the Supreme Court in Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019): (1) He engaged in protected speech; (2) He was subjected to adverse action that would chill a person of ordinary firmness; (3) There was a causal connection between the protected speech and the adverse action; and (4) The prosecution lacked probable cause.

First, Plaintiff's communications to oversight agencies documenting misconduct constitute protected speech under the First Amendment's petition clause. The Supreme Court has recognized that "filing a complaint against government officials" constitutes protected speech. Borough of Duryea v. Guarnieri, 564 U.S. 379, 387 (2011).

Second, the adverse action--a criminal prosecution resulting in 90 days of pretrial detention-- would undoubtedly "chill a person of ordinary firmness" from engaging in similar protected activity.

Third, the direct causal connection is established through DAI Pena's recorded admission that "the attorneys are pressuring to file criminal charges," explicitly acknowledging the retaliatory motivation behind the prosecution after Plaintiff filed complaints about their conduct.

Fourth, the absence of probable cause is conclusively established by DAI Pena's own recorded statements admitting "why are we even involved in this case? I'm like, we don't take anything over 14.... you're homeschooling him, right?" and "I don't see why [we're prosecuting this]." These statements directly from the investigating officer confirm no reasonable officer would have believed there was probable cause, satisfying the final Nieves element.

Defendants incorrectly argue that Plaintiff failed to plead the absence of probable cause for the underlying criminal charge, which they claim is a necessary element under Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019). This argument is thoroughly refuted by DAI Pena's own recorded admissions. When Pena states "why are we even involved in this case?" and acknowledges they proceeded only because "attorneys are pressuring to file criminal charges," he is explicitly confirming the absence of probable cause.

Probable cause requires facts and circumstances within the officers' knowledge "sufficient to warrant a prudent person...in believing, in the circumstances shown, that the suspect has committed...an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). DAI Pena's recorded statement that "the child was 14, I was 15. It's like, why are we taking this? Like, I don't see why" constitutes a direct admission by the investigating officer that no prudent person would believe Plaintiff had committed an offense. This admission unequivocally establishes the absence of probable cause element.

# IX. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss. Three foundational facts render their motion legally indefensible:

The jurisdictional defect created when Commissioner Ratekin improperly denied Plaintiff's peremptory challenge on February 9, 2021, rendering all subsequent proceedings--including the criminal prosecution--void ab initio under controlling California Supreme Court precedent in People v. Superior Court (Lavi).

The irrefutable audio evidence proving the DA's office knowingly prosecuted a case they recognized had no merit, with DAI Pena's recorded admissions directly contradicting his sworn statements on the arrest warrant and explicitly stating, "between you and me, if this goes to trial, you'll probably win."

The Board of Supervisors' direct liability under Monell, established through documented evidence that they were repeatedly informed of these constitutional violations yet took no action. Between January 2022 and August 2023, Plaintiff provided the Board with specific evidence, including quotes from the recorded calls in which DAI Pena acknowledged approximately 30 times that no valid case existed. Plaintiff's formal "NOTICE OF FAILURE TO ACT" email sent December 12, 2022, explicitly warned the Board that their inaction was creating Monell liability.

This deliberate indifference to known constitutional violations creates clear municipal liability under well-established precedent in City of Canton v. Harris and its progeny.

Defendants' misinterpretation of California Government Code § 25303 ignores the Board's explicit supervisory duty over "the official conduct of all county officers." While the statute prohibits obstruction of prosecutorial functions, it does not exempt prosecutors from oversight regarding misconduct, fraud, or administrative functions--precisely the issues raised in Plaintiff's communications to the Board. The California Supreme Court has consistently upheld such oversight authority, recognizing that accountability for misconduct does not constitute "obstruction" of legitimate prosecutorial functions. When District Attorney personnel openly admit on recorded calls that they lack a legitimate case but are proceeding due to "pressure" from outside attorneys, this represents exactly the type of misconduct the Board has both the authority and duty to investigate.

The jurisdictional failure creates a direct causal chain that invalidates the very foundation of these proceedings: (1) Commissioner Ratekin's improper denial of Plaintiff's valid CCP § 170.6 challenge immediately stripped her of jurisdiction; (2) all subsequent orders entered by Ratekin were therefore void under Lavi; (3) these void orders cannot legally support criminal charges or detention.

The irreparable harm inflicted has been devastating and continues unabated. Plaintiff has suffered two documented STEMI heart attacks directly resulting from this legal ordeal, endured 90 days of unlawful detention based on void orders, and continues to experience profound trauma from the separation from both his son and daughter. His life and reputation have been ruined because of a clearly bad faith prosecution conducted by officials who were informed of family court fraud, admitted to Plaintiff that he would win if the case went to trial, yet arrested him anyway.

The Court should recognize that Plaintiff has fully exhausted available administrative remedies by repeatedly notifying the proper oversight authorities--including the San Diego Board of Supervisors, California State Auditor, and Attorney General--of the misconduct occurring in this case. These notifications, dating from January 2022 through August 2023, provided specific evidence including recordings, witness statements, and documentation of due process violations. The failure of these oversight bodies to take appropriate action despite clear evidence of prosecutorial misconduct and due process violations necessitates judicial intervention. This Court represents Plaintiff's only remaining avenue for relief from the devastating consequences of these violations, which include an improperly obtained conviction, continued separation from his children, and ongoing damage to his reputation and livelihood.

These extraordinary circumstances mandate federal intervention. No court has yet been willing to review the actual evidence in this case--recordings and communications that definitively prove systematic violations of constitutional rights across multiple County agencies. This Court represents the last opportunity for these constitutional violations to be addressed and remedied.

Defendants' argument that amendment would be futile is itself futile. The existing record contains overwhelming evidence of constitutional violations, including recorded admissions by a DA investigator acknowledging the fabricated basis of Plaintiff's prosecution. Any technical deficiencies in pleading could be easily cured through amendment. The Ninth Circuit has consistently held that "dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Krainski v. Nevada ex rel. Bd. of Regents, 616 F.3d 963, 972 (9th Cir. 2010).

Respectfully submitted,

Robert Emert
Plaintiff Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
Tel: (760) 612-9328
Email: robemert@msn.com

Dated: May 2, 2025