ROBERT EMERT
Respondent, In Pro Per
2351 VISTA LAGO TERRACE
ESCONDIDO, CA 92029
TELEPHONE: 760-612-9328
robemert@msn.com

FILED
MAY 0 6 2025
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ MJU _____DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert Emert<br><br>    Plaintiff,<br>v.<br><br>San Diego Board of Supervisors<br><br>County of San Diego<br><br>DDA Dawn Balerio<br><br>DAI Luis Pena<br><br>    Defendants. | Case No.: 3:24-cv-00671-JO-MSB<br><br>**ROB EMERT DECLARATION IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date: TBD<br>Time: TBD<br>Department: TBD<br>Judge: Hon. Jinsook Ohta |

I, Robert Emert, declare as follows:

# 1. PERSONAL BACKGROUND AND CONTEXT

I am the Plaintiff in this action, proceeding pro se. I submit this declaration in support of my Opposition to Defendants' Motion to Dismiss.

Prior to the events at issue in this litigation, I was a respected member of the San Diego community for over 54 years. I hold deep ties to San Diego, including pursuing higher education at the University of San Diego.

For the first two years of separation, custody arrangements were reasonably managed, with me initially granted 60% custody and later transitioning to an approximately 50/50 arrangement based on two judges' determinations, three Family Court Services reports, and two child interviews.

This family stability dramatically deteriorated upon Commissioner Patti Ratekin's assignment to the case in Feb 2021. Within just one month of her appointment--and contrary to multiple prior judicial findings--Commissioner Ratekin abruptly stripped me of my parental rights without the clear and convincing evidence required for such an extreme measure and alarmingly was so desperate to relieve Emert of his parental rights that she based her decision on a witness affidavit that was simply informing the court of fraud upon the court. If anyone looks at the order it is worthy of Ratekin being disbarred.

It subsequently came to my attention that Commissioner Ratekin's supervising judge's wife (Wittney Hauck-Wood, wife of Judge Woods) maintained a professional relationship and friendship with my ex-wife, Andrea Schuck, creating an undisclosed conflict of interest. Further compounding these irregularities, Commissioner Ratekin later retired to work at Signature Resolution--located adjacent to the offices of Schulman and Moore, where my ex-wife's attorney Dave Schulman practices.

My attempts to challenge these procedural irregularities through proper legal channels were systematically thwarted. My properly filed peremptory challenge against Commissioner Ratekin was unlawfully denied. My subsequent efforts to secure due process were further derailed when I suffered a life-threatening heart attack with only a "6-12% survival rate according to the American Heart Association." Despite proper filings for

ADA accommodations and continuances, I was denied remote participation in my own hearings, resulting in default judgments that permanently affected my parental rights.

## 2. TIMELINE OF KEY EVENTS

### 2020-Early 2021

Prior to Feb 2021, I maintained 50/50 custody of my son Bryce based on multiple judicial determinations and Family Court Services reports.

### Feb 2021

In Feb 2021, Commissioner Patti Ratekin was assigned to my family court case (San Diego Superior Court Case No. 19FL010852N).

On February 4, 2021, Commissioner Ratekin held an initial status conference in my divorce case. The transcript of this hearing confirms that no substantive orders were issued at this hearing. Commissioner Ratekin merely "trailed" the case, stating she was "not ready to do this case right now" (p. 15 of transcript).

On February 9, 2021, I properly filed a peremptory challenge against Commissioner Ratekin under California Code of Civil Procedure § 170.6. This challenge was timely as no substantive proceedings had yet occurred, no order were made and no arguments were even heard as of yet.

Despite the challenge being properly filed and timely, Commissioner Ratekin improperly denied it and continued to preside over the case.

Within one month, Commissioner Ratekin began process of stripping me of my parental rights without clear and convincing evidence.

### January 14, 2022

I sent a formal claim against the County of San Diego titled "CORRUPTION IN THE PRESIDING JUDGES OFFICE OF SAN DIEGO" addressed to the District Attorney, Child Protective Services, and County officials. This detailed email specifically alleged "blatant fraud and willful neglect within my family law trial case has deprived me and my children of basic human rights held under many state and federal laws."

### January 23, 2022

I sent a follow-up communication specifically and explicitly titled "MONELL CLAIM (436 U.S. 658) AGAINST CITY OF SAN DIEGO; CITIZENS ARREST OF LORNA ALKSNE." This document directly invoked Monell by name and case citation, putting the County on formal

notice of potential municipal liability. The communication specifically stated: "A Monell claim (436 U.S. 658) and other suits will hold Presiding Judge Alksne, and others, accountable to the law and more importantly, to the spirit of law."

May 11, 2022

I sent a follow-up communication regarding the Monell claim and citizens arrest documents previously sent to County officials.

October 21, 2022

I sent a formal notification to the Board of Supervisors detailing family court irregularities.

October-November 2021

In October 2021, I suffered a life-threatening heart attack with only a "6-12% survival rate according to the American Heart Association."

Despite proper filings for ADA accommodations and continuances with appropriate medical documentation, I was denied remote participation in my own hearings.

While I was medically incapacitated, default judgments were entered stripping me of parental rights. I was unable to present evidence or be heard due to my medical condition.

October 2021-December 2022

Between October 2021 and December 2022, I provided extensive documentation to the District Attorney's office demonstrating the applicability of Penal Code § 278.7 defense (taking custody to protect a child from harm).

During this period, I made multiple attempts to resolve custody matters through family court.

I also filed complaints regarding court misconduct with oversight agencies.

Sept 2022

In Sept 2022, I had a recorded conversation with District Attorney Investigator Luis Pena in which he acknowledged the lack of merit in the criminal prosecution.

On December 12, 2022, I sent a detailed email to the San Diego Board of Supervisors describing the systematic denial of due process rights. In this email, I stated: "Over the course of about six months, a few officers of the family court denied me access to my own hearings/trial and where I was not even properly notified of hearings where ALL my rights were snaked away with no hearing, due process, burden of proof or clear and convincing evidence."

In this email I further stated: "I tried to turn to the District Attorney's office in North County as I had ample Telephone recordings of my son suffering emotional abuse by his mother.

January 3, 2023-April 4, 2023

On January 3, 2023, I was arrested and held without bail based on DDA Balerio's mischaracterization of my communication with the FBI as a "threat."

I was incarcerated pretrial for 90 days without bail based on this mischaracterization. I was never charged with making criminal threats despite this being the sole basis for denying bail.

DDA Balerio misrepresented my FBI communication as a "threat" while deliberately withholding its full context, which would have shown it was a plea for assistance regarding corruption I had documented.

April 2023

On April 4, 2023, after 90 days of pretrial detention based on fabricated evidence, I was coerced into accepting a guilty plea with the promise that my son would be allowed to return home--a promise that was not fulfilled.

I was not informed that my guilty plea could permanently impact my parental rights.

July 18, 2023

On July 18, 2023, I sent a comprehensive email to all San Diego Board of Supervisors members, the State Auditor, District Attorney's office, and California Attorney General documenting prosecutorial misconduct and civil rights violations. This email included specific details about DAI Pena's recorded statements and links to the audio files themselves, providing the Board with direct access to the evidence of misconduct.

I further informed the Board: "Now the most bizarre twist comes in. When being investigated by the DA's Family Protection Unit (FPU), the DA investigator, Luis Pena, tells me that some 'family court lawyers', in my case, which Dave Schulman is, are pressing the DA's office to prosecute me for a charge the DA investigator himself, Luis Pena, tells me the DA should never have taken" and if it went to trail, I would win.

August 2023

In August 2023, the Public Defender provided only "limited scope representation" despite substantial evidence of prosecutorial misconduct.

In communications with the Public Defender's office, they explicitly stated that "our office has been appointed for the sole purpose of evaluating whether you have a legal basis to

withdraw your guilty plea. We have not been appointed to evaluate the specific facts of your criminal case."

On August 12, 2023, I submitted a formal Penal Code 1424 petition to the Board of Supervisors to disqualify DDA Balerio, including damning recorded statements from DAI Luis Pena who, after reviewing eight months' worth of evidence, admitted: "why are we even involved in this case...well just finish the damn warrant and don't worry about it..."were like too deep into now" and the attorneys are pressuring to file criminal charges...so we can't turn around now.

2023-Present

Despite multiple documented constitutional violations, the Board of Supervisors has taken no action to investigate or remedy obvious misconduct.

I continue to be separated from my son, who has repeatedly expressed his desire to live with me. My son will be 18 in about a month. For some reason, my daughter will not talk to me. She is 16 and up until the divorce, we had a great father/daughter bond.

## 3. THE JURISDICTIONAL DEFECT

The foundation of this case rests on a clear jurisdictional defect that nullifies all subsequent proceedings. On February 9, 2021, I filed a valid and timely peremptory challenge under California Code of Civil Procedure § 170.6 against Commissioner Patti Ratekin.

The court transcript from February 4, 2021 conclusively proves no substantive orders were issued or arguments heard prior to this challenge--Ratekin merely "trailed" the case, stating she was "not ready to do this case right now" (p. 15 of transcript).

Under binding California precedent, when a timely peremptory challenge is improperly denied, the judge loses jurisdiction, and all subsequent orders are void. People v. Superior Court (Lavi), 4 Cal.4th 1164, 1171 (1993); Estate of Eskra, 51 Cal.3d 943 (1991).

The California Supreme Court has unequivocally held that "once a motion to disqualify under section 170.6 has been properly and timely filed, the court loses jurisdiction to proceed." Lavi at 1171.

This jurisdictional defect cannot be waived, cured, or overlooked. As the Court of Appeal emphasized in In re Christian J., 155 Cal.App.4th 875 (2007), orders made after an improper denial of a § 170.6 challenge are "void for want of jurisdiction and of no legal force or effect."

The criminal proceedings against me—which form the basis of this lawsuit—are direct derivatives of Ratekin's void orders. After losing jurisdiction on February 9, 2021, Ratekin continued to issue custody orders that I was legally entitled to disregard as void. The prosecution for alleged violation of these void orders was itself void, constituting a fundamental miscarriage of justice.

## 4. RECORDED ADMISSIONS BY DA INVESTIGATOR LUIS PENA

I have audio recordings of multiple conversations with District Attorney Investigator Luis Pena that conclusively establish the bad faith nature of the prosecution. I specifically shared these recordings with the Board of Supervisors in my July 18, 2023 and August 12, 2023 communications, providing direct evidence of prosecutorial misconduct. These recordings include the following verbatim statements:

"I'm like, why are we even involved in this case? I'm like, we don't take anything over 14.... you're homeschooling him, right?" (December 7, 2022 recording, timestamp 00:11:00)

"The big question to me was why did we take this case anyways? It had nothing to do, but if the child was 14, I was 15. It's like, why are we taking this? Like, I don't see why, and I'm just told like well, we're like too deep in it now and the attorneys are pressuring to file charges criminal charges." (December 7, 2022 recording, timestamp 00:19:44)

"Well, just finish the damn warrant and don't worry about it.... You [Pena Supervisors or Balerio] asked me [Pena] not to reach out to him [Plaintiff]" (December 7, 2022 recording, timestamp 00:27:07)

"And I get you about the Age, because that was my first question. Like, why are we? Involved, they're like well. We're too deep in it. So we can't, we can't turn around now." (December 7, 2022 recording, timestamp 00:10:57)

In a second recorded conversation on December 12, 2022, DAI Pena explicitly stated: " if this goes to trial, you'll probably win.

DAI Pena's recorded admissions directly contradict his sworn statements in the arrest warrant affidavit, constituting clear evidence of perjury. In the warrant, Pena claimed there was probable cause to believe I had committed a crime, yet in the recordings, he explicitly states: "why are we even involved in this case?" and acknowledges they proceeded only because "we're too deep in it now."

This contradiction is direct evidence of knowing and willful perjury in a sworn affidavit. The Supreme Court has held that "the Constitution prohibits a criminal defendant from being convicted based on deliberately fabricated evidence." McDonough v. Smith, 139 S. Ct. 2149, 2155 (2019).

Despite having possession of these recordings since July 2023 at the latest, the Board of Supervisors took no action to investigate this clear evidence of prosecutorial misconduct and perjury by a District Attorney Investigator. This failure to act occurred despite the Board having supervisory authority over county officers under California Government Code § 25303.

## 5. DELIBERATE SUPPRESSION OF EXCULPATORY EVIDENCE

The record demonstrates a pattern of deliberately withholding critical exculpatory evidence:

During my pretrial detention, DDA Balerio interviewed my son Bryce but deliberately withheld this interview from both my defense counsel and the court. In this recorded interview (referenced as "Bryce emert recording of DA animated v4 (1).mp4"), Bryce clearly expressed his competency and desire to live with me, directly contradicting the prosecution's theory. Specifically, Bryce stated:

"I want to live with my dad. He's the only one who listens to me"

"I'm old enough to decide where I want to live"

As I documented in my June 23, 2023 complaint about DDA Balerio, I identified specific exculpatory evidence that was deliberately withheld, including this interview between DDA Balerio and my son that demonstrated his competency and desire to live with me. The DA's office's legal obligation to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83, 87 (1963) was deliberately violated.

DDA Balerio deliberately mischaracterized my FBI communication as a "threat" while withholding the full context that demonstrated it was a plea for assistance regarding corruption I had documented. Specifically, Balerio claimed I had made threats when the full context showed I was simply seeking federal intervention regarding documented corruption and stating I would pursue all legal remedies available. The full transcript would have shown I explicitly stated I would work through proper legal channels.

The prosecution never provided the complete transcript of the FBI communication to my defense counsel or the court, despite its clearly exculpatory value.

What this case fundamentally comes down to is that the DA knew it did not have a case and they did nothing for a year. I have audio recordings and email exchanges that show the DA knew I had a valid defense and did nothing, so they created a "threat" to hold me on no bail to coerce a guilty plea. Because DAI Pena acknowledged to me on a recorded line that I would win if this case went to trial, DDA Balerio fabricated the threat and withheld the full transcript of the FBI call that would have shown no threat was made. She knew I would be released on bail and win per her own investigator, so she manufactured the threat after a year of investigation and withheld the full transcript that would have shown no threat was made.

## 6. ONGOING HEALTH AND FAMILY CONSEQUENCES

The constitutional violations in this case have caused severe and ongoing health and family consequences:

On September 30, 2021, I suffered a life-threatening STEMI heart attack with a "6-12% survival rate according to the American Heart Association." Medical records confirm this was triggered by the extreme stress of the family court proceedings.

On December 10, 2024, I suffered a second STEMI heart attack, which medical records attribute to the continued stress of these legal proceedings and separation from my children. This second heart attack has caused permanent cardiac damage that requires ongoing medical treatment.

The prosecution's actions have permanently damaged my relationship with my daughter. Prior to these events, we maintained a close relationship, but the false characterizations and separation have created psychological barriers that continue to this day. She is now almost years old, and I have lost critical formative years of her development that can never be recovered.

My son Bryce, now approaching adulthood in a month, continues to express his desire to return to my home but remains separated from me due to the consequences of these proceedings. He has repeatedly stated both in court interviews and private communications that he wishes to live with me, yet the void orders and their consequences continue to prevent this reunification.

I have suffered significant professional and reputational damage from being falsely labeled a felon, including loss of employment opportunities and standing in the community where I had been respected for over 50 years.

These health and family consequences are direct results of the constitutional violations and continue to cause irreparable harm despite the conclusion of the criminal proceedings.

# 7. BOARD OF SUPERVISORS' DIRECT KNOWLEDGE AND LIABILITY

The San Diego Board of Supervisors was directly informed of these constitutional violations through a comprehensive 22-month campaign of communications beginning in January 2022, creating direct liability for their failure to intervene. These communications include:

January 14, 2022 formal claim against the County of San Diego explicitly alleging constitutional violations in the family court process.

January 23, 2022 communication specifically and explicitly invoking "MONELL CLAIM (436 U.S. 658)" by both name and citation, putting the County on direct notice of its potential municipal liability.

May 11, 2022 follow-up communication regarding the previously submitted claims.

October 21, 2022 formal notification to the Board of Supervisors detailing family court irregularities.

December 12, 2022 email describing systematic denial of due process rights. This email was sent to board@sdcounty.ca.gov and individually to supervisors Fletcher, Anderson, Lawson-Remer, Vargas, and Desmond.

July 18, 2023 email to all Board members detailing the prosecutorial misconduct and civil rights violations. This comprehensive email included direct links to the audio recordings themselves, not merely descriptions, providing the Board with actual audio evidence of DAI Pena admitting the prosecution lacked merit and proceeded only due to "pressure" from family court attorneys.

Direct notice that "the DA investigator, Luis Pena, tells me that some 'family court lawyers', in my case, which Dave Schulman is, are pressing the DA's office to prosecute me for a charge the DA investigator himself, Luis Pena, tells me the DA should never have taken."

August 12, 2023 formal submission of Penal Code 1424 petition with DAI Pena's damning recorded statements. This petition was sent via both email and certified mail to each Board member individually.

Despite providing detailed notifications with specific, actionable evidence of misconduct to the San Diego Board of Supervisors spanning from January 2022 through August 2023, no meaningful oversight action was taken. My notifications were not vague allegations but included:

a. Direct quotes from recorded conversations with DA personnel admitting improper prosecution

b. Links to the actual audio recordings themselves, providing the Board with first-hand evidence of DAI Pena's admissions

c. Links to recordings of withheld interviews that constituted Brady violations

d. Documentation of being denied access to my own hearings where parental rights were terminated

e. Evidence of a coerced guilty plea obtained after 90 days of pretrial detention based on what I documented as "manufactured taken out of context garbage"

The Board's duty of oversight is not discretionary but mandatory, requiring investigation of credible allegations of misconduct within the District Attorney's office. The failure of oversight allowed the prosecution's misconduct to continue unchecked, resulting in ongoing violations of my constitutional rights and further separation from my son.

In addition to the specific communications described above, I sent a voluminous number of documented emails to various officials at the Board of Supervisors and District Attorney's office between October 2021 and December 2022. This extensive record of communication includes:

a. More than 20 emails to the District Attorney's office describing my efforts to protect my son from emotional abuse, providing evidence supporting my Penal Code § 278.7 defense, and documenting my ongoing compliance with legal requirements

b. More than 10 emails to the Board of Supervisors seeking intervention regarding procedural irregularities in family court proceedings and coordination between family court and criminal proceedings

c. Multiple direct communications with DAI Pena confirming my willingness to cooperate with any investigation and providing additional evidence

d. Comprehensive emails to both the Board of Supervisors and DA's office documenting all evidence collected and steps taken through proper legal channels

e. Repeated emails to the DA's Office documenting evidence of emotional abuse against my son and my legal efforts to protect him

Each of these communications created an official record directly contradicting DAI Pena's characterization of me in the arrest warrant affidavit. While Pena swore under penalty of perjury that I was evading authorities and refusing cooperation, these emails prove I was maintaining consistent contact with legal authorities, providing evidence, and seeking resolution through proper legal channels.

It is particularly significant that many of these communications went directly to the District Attorney's office itself, which means DAI Pena either deliberately ignored this documented history of cooperation when preparing his affidavit or was instructed to misrepresent the facts despite the office's own records contradicting his sworn statements.

These communications not only establish my diligent efforts to work within the legal system, but also prove that both the DA's office and Board of Supervisors had actual knowledge that the characterizations in the arrest warrant were false.

## 8. COORDINATED ACTION BETWEEN FAMILY COURT AND DISTRICT ATTORNEY

Court records demonstrate improper relationships between Commissioner Patti Ratekin, Judge Lorna Alksne, and attorney Dave Schulman. These connections create, at minimum, an appearance of impropriety that undermines the fairness of proceedings in both family and criminal courts.

Court records also confirm that default judgments stripping me of parental rights were entered while I was recently hospitalized following a life-threatening heart attack. Despite proper filing of ADA accommodation requests, medical documentation, and motions for continuance or remote hearing, I was denied access to my own hearings.

Additionally, court records confirm I properly filed a peremptory challenge against Commissioner Patti Ratekin that was unlawfully denied, violating California Code of Civil Procedure § 170.6 and my right to an impartial tribunal. This procedural irregularity is part of a pattern of due process violations that permeate both family and criminal proceedings.

## 9. COERCED GUILTY PLEA THROUGH MISREPRESENTATION AND DURESS

After being held without bail for 90 days based entirely on the fabricated "threat" allegation—for which I was never actually charged—I was coerced into accepting a guilty plea under extreme duress. Despite DDA Balerio repeatedly using the alleged "threat" to deny bail in three separate hearings, no threat charges were ever filed, confirming the pretextual nature of this allegation used solely to justify pretrial detention.

I was induced to enter a guilty plea based on false representations that my son would be permitted to return to my custody and that the matter could be resolved in family court. As I documented in my email to the Board of Supervisors on July 18, 2023: "I was told flat out to take the deal so my kid could come home and was not told all my parental rights could be taken by taking the deal to being with. This is insanity."

Public Defender records show provision of only "limited scope representation" despite the complexity of the case and substantial evidence of prosecutorial misconduct. Emails document the Public Defender's explicit statement that "our office has been appointed for the sole purpose of evaluating whether you have a legal basis to withdraw your guilty plea. We have not been appointed to evaluate the specific facts of your criminal case."

As evidenced in my communications with the Public Defender's office in August 2023, my right to effective counsel was compromised when they admitted they had been instructed to provide only "limited scope representation" focused solely on plea withdrawal rather than investigating the substantive due process violations and exculpatory evidence. My August 8, 2023 email to Ms. Mignon Hilts specifically referenced California Supreme Court precedent that "a defendant has a right to a full factual investigation of his case by his attorney, even after they have pleaded guilty," yet this right was deliberately curtailed.

I specifically requested the Public Defender's office to investigate DAI Pena's recorded statements on August 8, 2023, but Ms. Hilts responded on August 10, 2023, stating they were "unable to investigate these allegations as they fall outside the scope of our limited appointment."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 6, 2025, at Escondido, California.

Robert Emert

13

ROB EMERT DECLARATION IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS